IN THE UNITED STATES DISTRICT COURT
FOR THE ALABAMA MIDDLE DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM C. CARN, III | ) | CASE NO. |
| CHAPTER 7 TRUSTEE, | ) | 1:07-cv-00369-WHA |
| | ) | |
| Plaintiff, | ) | USBC-MDAL CASE NO. |
| | ) | 06-01057-WRS |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC. | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATIONS ISSUED BY THE BANKRUPTCY COURT

Defendant Medical Data Systems, Inc. ("MDS") respectfully submits this Reply Brief in support of its Objections To The Report And Recommendation issued by the Bankruptcy Court ("Objections"). In this case, Plaintiff William C. Carn ("Plaintiff") alleged various violations of the Fair Debt Collection Practices Act ("FDCPA") by MDS.

## I.    INTRODUCTION

In his response, Plaintiff attempts to avoid the issues raised by MDS's Objections by mischaracterizing MDS's arguments and then groundlessly asserting that the Bankruptcy Court's proposed order was correct, without offering any reason why. Rather than address MDS's argument that the language in its letter did not constitute a threat, Plaintiff completely avoided addressing this argument all together in his response and instead, tried to confuse and call into question the case law cited by MDS. However, the fact remains that MDS's letter was merely informative and sought only to verify whether James Cambron's ("Mr. Cambron") debt was collectible, a purpose clearly expressed in MDS's letter. Plaintiff does not contest that MDS's

letter did not establish a timeline for repayment or otherwise create a sense of urgency. Nor does MDS's letter state or imply that legal action against Mr. Cambron was imminent in any way. Because MDS's letter did not constitute a threat within the meaning of the FDCPA, MDS's letter cannot violate § 1692e(5) as a matter of law.

Plaintiff also failed to address MDS's argument that it has the right under Kimber to seek to collect upon a time-barred debt and therefore, did not violate either 1692e(5) or e(10) in attempting to do so. This argument presents a significant issue that must be addressed in order to fully decide this case because the Bankruptcy Court expressly acknowledged there was nothing deceptive or misleading in MDS's letter and that the only justification for a violation of § 1692e(10) was that MDS's alleged purpose in sending the letter to Mr. Cambron (as determined by the Bankruptcy Court and in direct contradiction to the stated purpose of the letter and Gary Ball's testimony), was to collect upon an illegal debt. However, subsequent cases interpreting and applying Kimber make it clear that MDS may seek to collect upon a time-barred debt using means that do not threaten legal action, such as voluntary repayment by Mr. Cambron. As there is no mention of any legal action of any type being taken against Mr. Cambron in MDS's letter, it was not deceptive or misleading under § 1692e(10) for MDS to attempt to collect upon Mr. Cambron's debt.

Neither the Bankruptcy Court nor Plaintiff are able to articulate specifically why and how MDS's letter violated the FDCPA but rather, simply assert that it did and expect MDS and this Court to accept that determination without question. This Court has the opportunity to engage in a de novo review and determine for itself whether MDS's letter, which did not threaten any legal action whatsoever against Mr. Cambron, violated the FDCPA. MDS's position is that its letter did not contain any threats of legal action or threaten other adverse consequences against Mr.

Cambron if he did not pay his debt and that MDS was entirely justified in seeking to collect upon Mr. Cambron's debt by seeking voluntary repayment from Mr. Cambron. Such actions do not violate the FDCPA as a matter of law.

MDS's reply argument will proceed as follows. First, MDS will reiterate its objection to the Bankruptcy Court's proposed findings of fact because MDS's letter did not "demand payment" and the Bankruptcy Court's characterization dramatically overstates the effect of the letter. Second, MDS will argue that Plaintiff's claims under § 1692e(5) and e(10) are interrelated because both causes of action rely upon the same statements and if those statements do not impermissibly threaten Mr. Cambron, then they cannot also be misleading and deceptive. Third, MDS will address Plaintiff's §1692e(5) argument independently and explain that MDS's letter was merely informative and therefore, could not constitute a threat under the FDCPA. Fourth, MDS will independently address Plaintiff's § 1692e(10) claim. In its proposed order, the Bankruptcy Court expressly stated that MDS's letter was not false or misleading on its face and that MDS's alleged liability under § 1692e(10) arose because MDS sought to collect upon a time-barred debt. However, as argued in MDS's Objections and not contested by Plaintiff in his response, MDS may seek voluntary repayment from Mr. Cambron even if his debt is time-barred.

## II.    ARGUMENT

### A.    MDS's Letter Did Not Demand Payment And Therefore, The Bankruptcy Court's Findings Of Fact Should Not Be Adopted By This Court

MDS reiterates its objection to the Bankruptcy Court's characterization of MDS's letter to Mr. Cambron as "demanding payment" in its proposed findings of fact. As Plaintiff argued in its response to MDS's Objections, "demand" is defined as "to ask or call for with authority . . . to call for urgently, peremptorily, or insistently . . . to require to come . . . [or] to call for as useful

LEGAL_US_E # 75253877.1

or necessary." [See Plaintiff's Response Brief, p. 9].  In no way did MDS's letter "demand"
payment from Mr. Cambron.  In contrast, the letter merely informed Mr. Cambron of a debt,
which MDS believed Mr. Cambron legitimately owed, and informed Mr. Cambron of how to
repay voluntarily that debt or, in the alternative, contest its validity.  The letter did not express
any indication that Mr. Cambron's debt was absolutely due and immediately owing.  Instead, the
letter expressly stated that Mr. Cambron had 30 days to contest the debt and require MDS to
prove its validity.  Nor did MDS's letter call for Mr. Cambron to pay his debt by any specific
deadline.  Therefore, MDS's letter did not "demand payment" in accordance with how the term
"demand" is commonly understood and such a characterization dramatically overstates the effect
of MDS's letter.

> **B.    Plaintiff's § 1692e(10) Claim Does Not Arise As A Separate And Distinct
> Cause Of Action From Plaintiff's § 1692e(5) Claim Because The Two Are
> Interrelated**

In his response, Plaintiff argued that he asserted two independent theories of recovery
under the FDCPA – one under § 1692e(10), arguing that the letter "created the perception that
[MDS] might seize real property or personal property assets if [Plaintiff] refused to pay the
debt," and another independent claim under § 1692e(5), arguing that the letter "threatened an
action that was illegal or not intended." [See Plaintiff's Response, p. 10].  In doing so, Plaintiff
argues that this is enough to distinguish this case from the facts of Robinson v. Transworld
Systems, Inc., 876 F. Supp. 385 (N.D.N.Y. 1995).

MDS recognizes that § 1692e(5) and e(10) may, on their face, constitute independent
causes of action under the FDCPA.  However, the problem arises when the *same statements* are
asserted as violating *both* code sections.  In Robinson, the plaintiff argued for violations of both
§ 1692e(10) and § 1692e(5), arguing that the *same statements* allegedly violated *both* sections of

-4-

the FDCPA. Id. at 392-93. After concluding that the plaintiff did not threaten actions it did not

intend to take, the court expressly held that having already ruled that there was no § 1692e(5)

violation, "[t]herefore, these same statements cannot violate Section 1692e(10) as false

representations or deceptive practices." Id. at 393.

Similarly to Robinson, Plaintiff contends that the language listing the possible

information sources that MDS may look to in order to determine Mr. Cambron's ability to repay

his debt constituted a violation of both § 1692e(5) and e(10). [See Plaintiff's Complaint ¶¶ 8-

10]. Plaintiff does not contend that any other language in MDS's letter violated either of these

code sections. Therefore, if this Court agrees with MDS that this language cited by Plaintiff in

MDS's letter did not constitute a threat under the FDCPA but was merely informative, or, in the

alternative, did not threaten an action that could not be legally taken, then under the express

holding of Robinson, Plaintiff's § 1692e(10) must also fail because these same statements cannot

be deceptive or misleading if they did not violate § 1692e(5).

### C. The Bankruptcy Court Erroneously Held That MDS's Letter Violated § 1692e(5) Of The FDCPA Because The Letter Was Merely Informative and Did Not Constitute A Threat

A "threat" is defined by Black's Law Dictionary as a "communicated intent to inflict

harm or loss on another or on another's property . . . [or] an indication of an approaching menace

[such as] the threat of bankruptcy." Ferguson v. Credit Mgmt Control, Inc., 140 F. Supp. 2d

1293, 1299 n.11 (M.D. Fla. 2001) (citing BLACK'S LAW DICTIONARY 1489-90 (7th ed. 1999)).

For example, for a collection notice to impermissibly threaten legal action, it must falsely

communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action

is either imminent or has already been made. Combs v. Direct Marketing Credit Services, Inc.,

1998 U.S. App. LEXIS 32670, *5 (7th Cir. Dec. 29, 1998) (internal citations omitted).

Additionally, while MDS recognizes that threats can be made indirectly or obliquely, they still must indicate that "legal action is underway or contemplated in the near future," a standard which is simply more likely to be satisfied by an express threat that a specific action will be taken. See id.; accord Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22 (2d Cir. 1989) (holding that the clear import of language in a series of collection letters stating that "Notice Is Hereby Given That This Item Has Already Been Referred for Collection Action;" "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full;" and "Pay This Amount Now If Action Is To Be Stopped" was that *some* type of legal action had already been or was about to be initiated and could be averted from running its course only by payment) (emphasis in original).

MDS's letter did not threaten to take any specific action against Mr. Cambron but rather, indicated that a variety of information *may* be sought, *if available,* to determine whether Mr. Cambron *could* pay his debts without mentioning or implying that any specific action had or would be taken against him. In fact, Gary Ball testified that MDS's purpose for seeking this information was to determine if collection efforts were even possible. The Bankruptcy Court's rather bold statement that the purpose and effect of MDS's letter was to coerce payment by making Mr. Cambron believe that his wages and assets would be seized strains any reasonable and credible interpretation of MDS's letter.

Both Plaintiff and the Bankruptcy Court wrongfully interpreted MDS's letter as impliedly threatening to seize Mr. Cambron's assets and garnish his wages, despite the fact that the true purpose of MDS's asset investigation was clearly stated in the express language of the letter to Mr. Cambron. In the letter, MDS expressly stated that the information would be used to determine Mr. Cambron's ability to repay his debt while also affording Mr. Cambron the

- 6 -

opportunity to contest the validity of the debt, not that MDS was preparing to take any action against Mr. Cambron's assets and wages. It is wholly unreasonable to interpret MDS's letter in a manner that directly contradicts the express, written purpose of the letter in order to create an implied threat by MDS.

A review of the case law cited by MDS in its Objections reveals that threatening language used in various debt collection letters that were found to violate the FDCPA contained much more concrete assertions of intent to take or recommend specific actions against the debtor. [See MDS's Objections pp. 5-9].

Plaintiff attempts to distinguish Wade v. Regional Credit Assoc., 87 F.3d 1098 (9th Cir. 1996) by confusing MDS's argument as to the implications of this case. For one, in contrast to Plaintiff's assertion, MDS did not assert in its Objections that Wade stood for the proposition that if a letter does not contain any explicit threats, it must be found to be informative.[1] Instead, MDS asserted that Wade stands for the proposition that a letter that does not contain any threats, express or implied, is merely informative. See id. at 1100 (holding that the collection notice was not a threat to take action that could not legally be taken in violation of § 1692e(5) because the least sophisticated debtor would construe the notice as a prudential reminder, not as a threat to take action). Plaintiff also failed to elaborate on the alleged "drastic factual differences" existing between Wade and this case because, if anything, the letter at issue in Wade that was held not to violate the FDCPA contained much stronger language than that contained in MDS's letter and expressly demanded immediate payment.

---

[1] Specifically, in its Objections, MDS argued that "[i]f a letter does not contain any threatening language, it is deemed merely informative and therefore, cannot violate [the FDCPA]." [See MDS's Objections p. 6].

LEGAL_US_E # 75253877.1

Furthermore, in contrast to Plaintiff's assertions, <u>Beiber v. Associated Collection Service,</u> <u>Inc.</u>, 631 F. Supp. 1410 (D. Kan. 1986) is not inapposite to the facts of this case. The fact that a third party eventually filed suit in <u>Beiber</u> was only one of many factors considered by that court in determining that a series of letters sent by the defendant, a debt collection agency, to the plaintiff did not violate the FDCPA. <u>See id</u>. at 1416. The court held that one of the letters sent by the defendant did not constitute a threat and was not otherwise deceptive under the FDCPA because it simply advised the plaintiffs that the defendant had requested suit be filed if the debt was not paid and did not expressly state that suit *would* be filed. <u>Id</u>. Similarly, the fact that an interoffice memo sent by the defendant to the plaintiff did not say legal action *would* be taken, but rather, only that permission had been given to legal counsel to take that action meant that the memo was not a threat and also did not violate the FDCPA. <u>Id</u>. While obviously an important factor for some of the letters, in no way was the fact that suit was filed dispositive on whether all of the letters sent to the plaintiff in <u>Beiber</u> violated the FDCPA. Two were rejected outright as not constituting threats at all and both contained much stronger language than MDS's letter.

Moreover, Plaintiff is inaccurate in suggesting that MDS's letter did not state why MDS may seek certain information about Mr. Cambron's assets and instead left Mr. Cambron to wonder why MDS may seek that information, therefore implying some sort of amorphous threat against Mr. Cambron. In truth, MDS's letter expressly stated the exact reason it might seek such information, if available – to determine whether Mr. Cambron could pay his debt. It is simply not a reasonable interpretation of MDS's letter to claim that it left Mr. Cambron to wonder why MDS may seek the information listed in the letter. This is an important factor for this Court to consider as Plaintiff is not necessarily correct that the least sophisticated consumer standard never applies to § 1692e(5) claims. <u>See, e.g.</u>, <u>Wade v. Regional Credit Assoc.</u>, 87 F.3d 1098,

1099-1100 (9th Cir. 1996) (applying the least sophisticated consumer standard to all claims

arising under § 1692e, including § 1692e(10) and e(5)); Clomon v. Jackson, 988 F.2d 1314, 1318

(2d. Cir. 1993) (same).[2] While Plaintiff wants this Court to understand the least sophisticated

consumer to be "ignorant" and "unthinking," this understanding is not accurate. Instead, courts

have carefully preserved the concept of reasonableness when applying the least sophisticated

consumer standard. Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993) (citing Rosa v.

Gaynor, 784 F. Supp. 1, 3 (D. Conn. 1989) (holding that the FDCPA does not extend to every

bizarre or idiosyncratic interpretation of a collection notice but does reach a reasonable

interpretation of a notice by even the least sophisticated). "Indeed, courts have consistently

applied the least sophisticated consumer standard in a manner that protects debt collectors

against liability for unreasonable misinterpretations of collection notices." Clomon, 988 F.2d at

1319. Even the "least sophisticated consumer" can be presumed to possess a rudimentary

amount of information about the world and a willingness to read a collection notice with some

care. Id. Therefore, it is not reasonable for Plaintiff or the Bankruptcy Court to interpret the

purpose of MDS's letter in direct contradiction to the expressed purpose in the letter. Also, it is

inappropriate for Plaintiff and the Bankruptcy Court to read the letter as threatening to garnish

wages and seize assets when the letter expressly stated it first needed to determine if Mr.

Cambron had sufficient assets to cover his debt before beginning any collection efforts.

Additionally, Plaintiff's assertion that Mailloux v. Arrow Financial Services, Inc., 204

F.R.D. 38 (E.D.N.Y. 2001) is not essential to the Bankruptcy Court's proposed order is

ludicrous. [See Plaintiff's Response p. 16-17]. This case provided the sole justification for the

---

[2] This is especially so in light of Plaintiff arguing that the "least sophisticated consumer" would
be confused by the letter and find it "threatening", acknowledging the applicability of this
standard as a consideration in § 1692e(5) claims. [See Plaintiff's Response p. 16].

Bankruptcy Court's determination that MDS violated § 1692e(5). As discussed in MDS's Objections, this case is completely inappropriate to be relied upon in this manner. In addition to the lack of legal reasoning by the court in <u>Mailloux</u> and its lack of precedential value, the court in <u>Mailloux</u> was asked only to determine if class certification in a FDCPA case was appropriate. Plaintiff's contention that the court would not have granted class certification "had there been no FDCPA violation" is utterly ridiculous. In <u>Mailloux</u>, the court specifically acknowledged that it must take the plaintiff's allegations as true and would not inquire into the underlying merits of the plaintiff's complaint for the purposes of class certification. 204 F.R.D. at 40. Instead, the court noted that class certification looks only to whether the proposed class is sufficiently numerous, whether the class claims involved common questions of law or fact, whether the class claims are typical in that they arise from the same course of events and involve the same legal arguments, and whether the class representative will fairly and adequately represents the interests of the class. <u>Id.</u> at 40- 43. The <u>Mailloux</u> court's "determination" of whether the defendant violated § 1692e(5) was in the context of determining whether the typicality requirement was satisfied, and while taking the plaintiff allegations as true for the purposes of class certification only. <u>Id.</u> at 42. Therefore, this case hardly presents a factually similar circumstance as asserted by Plaintiff and cannot provide the sole substantiation for the Bankruptcy Court's holding that MDS violated § 1692e(5).

In the alternative, as discussed in MDS's objections, should this Court not agree that <u>Mailloux</u> should have no bearing on the outcome of this case, there is nothing "hyper-technical" about the distinctions between this case and <u>Mailloux</u>. The letter at issue in <u>Mailloux</u> imparted a sense of immediacy and urgency to pay that MDS's letter simply does not convey. MDS does not state that any investigation is imminent or that payment must be received by any specified

- 10 -

date. Instead, MDS merely alerted Mr. Cambron to the debt MDS believed he owed, how he could pay the debt at his convenience, and that MDS *may* act to determine if Mr. Cambron could pay his debt at all, depending on what assets MDS's investigation revealed, if any. This is a far cry from the letter in Mailloux, which stated the investigation into what actions will be necessary to recover the plaintiff's past due debt had already begun, that the decision to take adverse actions against the plaintiff already had been made, and that further collection efforts against the plaintiff were imminent. As discussed above, it is the lack of any sense of urgency or immediacy in MDS's letter which relieves it of any liability under the FDCPA. It is also this exact language which Plaintiff fails to contradict beyond merely stating that the Bankruptcy Court's "well-reasoned decision" found the letter to violate the FDCPA, and therefore, it must, regardless of the Bankruptcy Court's lack of support for its holding.

**D.    The Bankruptcy Court Erroneously Determined That MDS's Letter Violated § 1692e(10) Because The Letter Sought To Collect Upon A Time-Barred Debt**

In its proposed order, the Bankruptcy Court expressly stated that "[t]here was nothing in [MDS's] letters that is demonstrably false." [See Proposed Order p. 4]. Therefore, the Bankruptcy Court focused on the purpose of MDS's letter, which it determined was unlawfully to coerce payment of a time-barred debt. [See Proposed Order pp. 7-9]. However, as discussed at length in MDS's objections to the proposed order, under Kimber and its progeny, it is wholly permissible for a debt collector to seek voluntary repayment of a time-barred debt and doing so is not deceptive or misleading under the FDCPA.[3] [See MDS's Objections, § III.B). Therefore,

---

[3] Plaintiff utterly failed to address MDS's argument on this point in the response and instead, merely stated that Kimber was not an "integral part of the Bankruptcy Court decision" when in fact, it constitutes the entire basis for that court's holding that MDS's purpose of attempting to collect upon an allegedly time-barred debt violated § 1692e(10). In light of the fact that Kimber
(continued...)

even if Mr. Cambron would have felt that he needed to pay his debts in light of MDS's letter, as long as MDS sought only voluntary repayment and did not resort to legal action against Mr. Cambron, the letter did not violate § 1692e(10).

**III.    <u>CONCLUSION</u>**

Based on the foregoing, MDS respectfully requests that this Court amend the Bankruptcy Court's Proposed Order in accordance with the aforementioned arguments and enter an Order dismissing Plaintiff's claims against Defendant under the FDCPA, award Defendant its reasonable and necessary attorney's fees and litigation expenses against Plaintiff, and grant Defendant such other and further relief as this Court deems appropriate.

Submitted this 2❨️ᵗʰ day of May, 2007.

[Signature Page to Follow]

---

(...continued)

was one of only three cases cited by the Bankruptcy Court, it is difficult to understand Plaintiff's argument that this case is not important to the resolution of this dispute. [See Plaintiff's Response pp. 17-18].

LEGAL_US_E # 75253877.1

John G. Parker
(Georgia Bar No. 562425)
Stefanie H. Jackman
(Georgia Bar No. 335652)

*Co-Counsel for Defendant*
*Medical Data Systems, Inc.*

PAUL, HASTINGS, JANOFSKY &
WALKER LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia  30308-2222
Tel. (404) 815-2400
Fax (404) 815-2424

Russel A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189

*Counsel for Defendant*
*Medical Data Systems, Inc.*

- 13 -

## IN THE UNITED STATES DISTRICT COURT
### FOR THE ALABAMA MIDDLE DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM C. CARN, III | ) | CASE NO. |
| CHAPTER 7 TRUSTEE, | ) | 1:07-cv-00369-WHA |
| | ) | |
| Plaintiff, | ) | USBC-MDAL CASE NO. |
| | ) | 06-01057-WRS |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC. | ) | |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of **DEFENDANT'S REPLY TO**

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE REPORT AND**

**RECOMMENDATIONS ISSUED BY THE BANKRUPTCY COURT** by depositing the

same in the United States mail in a postage prepaid envelope addressed to:

David G. Poston, Esq.
Michael Brock, Esq. and
Gary Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330

This _____day of May, 2007.

Russel A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189

*Counsel for Defendant*
Medical Data Systems, Inc.

- 14 -