IN THE UNITED STATES DISTRICT COURT
FOR THE ALABAMA MIDDLE DISTRICT

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WILLIAM C. CARN, III ) | CASE NO. |
| CHAPTER 7 TRUSTEE, ) | 1:07-cv-00369-WHA |
| ) | |
| Plaintiff, ) | USBC-MDAL CASE NO. |
| ) | 06-01057-WRS |
| v. ) | |
| ) | |
| MEDICAL DATA SYSTEMS, INC. ) | |
| ) | |
| Defendant, ) | |
| ) | |

**DEFENDANT'S MOTION FOR LEAVE TO RESPOND TO PLAINTIFF'S SECOND RESPONSE OF WILLIAM C. CARN**

Defendant Medical Data Systems, Inc. ("MDS") respectfully moves this Court for leave to file a short response to Plaintiff's Surreply.[1] MDS did not have an opportunity to oppose Plaintiff's request for leave to file a Surreply, and therefore, in the interest of fairness, this Court should grant MDS the opportunity to respond to Plaintiff's Surreply in support of MDS's Objections to the Bankruptcy Court's Proposed Findings and Recommendations. See American Energy Solutions v. Alabama Power Co., 16 F. Supp. 2d 1346, 1348 (M.D. Ala. 1998) (granting the defendant's motion after considering the plaintiff's surreply and the defendant's response thereto). If granted, MDS would file the response brief attached hereto as Exhibit A.

---

[1] Plaintiff requested leave to file his Surreply from this Court on May 30, 2007. In that motion, Plaintiff requested through June 15, 2007 to reply to MDS's Reply Brief, submitted in response to Plaintiff's Response to MDS's Objections to the Proposed Findings of the Bankruptcy Court. However, Plaintiff failed to sign his pleading on June 15, 2007 and therefore, did not properly file his Surreply until June 18, 2007.

LEGAL_US_E # 75497689.1

Respectfully submitted, this 19th day of June, 2007.

_____  
John G. Parker  
(Georgia Bar No. 562425)  
Stefanie H. Jackman  
(Georgia Bar No. 335652)  

*Co-Counsel for Defendant*  
*Medical Data Systems, Inc.*  

PAUL, HASTINGS, JANOFSKY &  
WALKER LLP  
600 Peachtree Street, N.E.  
Suite 2400  
Atlanta, Georgia  30308-2222  
Tel. (404) 815-2400  
Fax (404) 815-2424  

_____  
Russel A. McGill (MCG009)  
BRUNSON & ASSOCIATES, Attorneys P.A.  
301 Broad Street  
P.O. Box 1189  
Gadsden, AL 35902-1189  

*Counsel for Defendant*  
*Medical Data Systems, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE ALABAMA MIDDLE DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM C. CARN, III | ) | CASE NO. |
| CHAPTER 7 TRUSTEE, | ) | 1:07-cv-00369-WHA |
| | ) | |
| Plaintiff, | ) | USBC-MDAL CASE NO. |
| | ) | 06-01057-WRS |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC. | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of **DEFENDANT'S MOTION FOR LEAVE TO RESPOND TO PLAINTIFF'S SECOND RESPONSE OF WILLIAM C. CARN** electronically and by depositing the same in the United States mail in a postage prepaid envelope addressed to:

> David G. Poston, Esq.
> Michael Brock, Esq. and
> Gary Stout, Esq.
> Post Office Drawer 311167
> Enterprise, Alabama 36330

This 19th day of June, 2007.

[Signature page to follow]

- 3 -

LEGAL_US_E # 75497689.1

_____
Russell A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189

*Counsel for Defendant*
*Medical Data Systems, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE ALABAMA MIDDLE DISTRICT

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WILLIAM C. CARN, III ) | CASE NO. |
| CHAPTER 7 TRUSTEE, ) | 1:07-cv-00369-WHA |
| ) | |
| Plaintiff, ) | USBC-MDAL CASE NO. |
| ) | 06-01057-WRS |
| v. ) | |
| ) | |
| MEDICAL DATA SYSTEMS, INC. ) | |
| ) | |
| Defendant, ) | |
| ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND RESPONSE OF WILLIAM C. CARN

I. INTRODUCTION

Defendant Medical Data Systems, Inc. ("MDS") respectfully submits this response to Plaintiff's Surreply, filed by Plaintiff William C. Carn on June 18, 2007, and in further support of MDS's pending Objections to the Bankruptcy Court's Proposed Report and Recommendations. In his Surreply, Plaintiff merely reiterates previous arguments and relies upon factually dissimilar cases in an attempt to confuse the issues and convince this Court that MDS's letters, which contain no threatening language whatsoever, somehow violate the Fair Debt Collection Practices Act ("FDCPA"). Neither the Bankruptcy Court nor Plaintiff are able to articulate specifically why and how MDS's letters violate the FDCPA but rather, simply assert that they do, while ignoring relevant and important aspects of this case, such as the import of Kimber to the Bankruptcy Court's holding that MDS allegedly violated § 1692e(10).

However, the fact remains that MDS's letters do not contain any threats of legal action or any other adverse consequences against Mr. Cambron if he failed to pay his debts. Furthermore, MDS was entirely justified in attempting to collect upon Mr. Cambron's debt by seeking

voluntary repayment from Mr. Cambron. MDS merely attempted to secure repayment by contacting Mr. Cambron to discuss his ability to repay his debts. Such actions do not violate the FDCPA as a matter of law.

II. ARGUMENT AND CITATION TO AUTHORITY

### A. This Court Should Not Consider Plaintiff's Surreply Because Plaintiff Failed To Properly File Within The Allotted Time Period Afforded By This Court

In Plaintiff's Motion for Leave, Plaintiff sought through June 15, 2007 to file a Surreply in this matter. This Court granted Plaintiff up to and including June 15, 2007 to file his Surreply. However, Plaintiff failed to properly file within the express time frame extended by this Court and therefore, this Court should not consider Plaintiff's Surreply because it was not filed in a timely manner.

### B. Robinson stands for the proposition that if the statements in MDS's letter do not violate § 1692e(5), then those same statements cannot violate § 1692e(10)

In contrast to Plaintiff's assertions to the contrary, MDS does not contend that § 1692e(5) and e(10) are always mutually exclusive. MDS acknowledges that a debt collector can violate both Code Sections. However, as previously discussed on page four of MDS's Reply Brief, MDS maintains that Robinson v. Transworld Systems, Inc., 876 F. Supp. 385 (N.D.N.Y. 1995) stands for the proposition that despite the ability of a debt collector to concurrently violate both § 1692e(5) and e(10), if certain statements are held not to violate specific § 1692e sections, such as § 1692e(5), then those *same statements* also do not violate § 1692e(10). Therefore, if this Court agrees that the statements in MDS's letters do not violate § 1692e(5), Robinson precludes any argument that those same statements violate § 1692e(10).[1]

---

[1] This interpretation of § 1692e(10) comports with the Comments to § 1692e(10) which envision that Code Section as serving as a comprehensive, catch-all provision for cases where a specific statement is found to be deceitful or misleading but which does not fit neatly into one of the
(continued...)

### C. Neither the express language or tone of MDS's letters violated the FDCPA

#### 1. Plaintiff cannot provide a specific example of any threat in MDS's letters

Plaintiff is unable to provide a single example of any threat in the letters at issue in this case. This is because, as the Bankruptcy Court acknowledged, "[t]here was nothing in [MDS's] letters that is demonstrably false" and "[a]s the letters in question do not, strictly speaking, threaten anything, there is no express violation of [§ 1692e(5)]." See Proposed Order, pp. 4, 9. Therefore, because Plaintiff cannot dispute the lack of any express threat in MDS's letters, Plaintiff tries in vain to argue that the "overall tone" of MDS's letters violated the FDCPA.

MDS previously articulated why the language in its letters did not violate the FDCPA in its Objections to the Bankruptcy Court's Proposed Report and Recommendation, as well as in MDS's Reply to Plaintiff's Response to MDS's Objections. However, a brief recap of the four main aspects of that argument is appropriate here. First, MDS's letters did not threaten to take any action against Mr. Cambron. Second, the letters expressly disclosed why MDS might possibly seek certain information from Mr. Cambron. Third, Mr. Cambron was not left to wonder if his assets would be seized or his wages garnished. These thoughts were expressly dispelled by MDS's statement in its letters that the information would be used, if available, solely to determine if Mr. Cambron could afford to pay his debts, not to take his home and other assets. Fourth, MDS's letters were not deceptive because MDS was justified in attempting to collect upon Mr. Cambron's debt by seeking voluntary repayment from Mr. Cambron.

---

(...continued)

sixteen delineated sections of the FDCPA. See 53 Fed. Reg. 50106 (1988) ("[Section 1692e(10)] . . . is particularly broad and encompasses virtually every violation, including those not covered by the other subsections.").

2.  **The case law offered by Plaintiff in support of his argument that the tone of MDS's letters violated the FDCPA is readily distinguishable**

The three cases cited by Plaintiff to support his "overall tone" argument only further highlight why MDS's letters do not violate the FDCPA. The relevant facts of the cases cited by Plaintiff in support of this argument are wholly distinguishable and involve much more direct and egregious statements.

First, Plaintiff's interpretation of <u>Bentley v. Great Lakes Collection Bureau</u>, 6 F.3d 60 (2d Cir. 1993) is not appropriate or accurate as the court's holding that the "disclaimer" in that case did not prevent the letters at issue from violating the FDCPA cannot be interpreted out of context. Instead, the court in <u>Bentley</u> held that the disclaimer was not enough to overcome the tone created in the defendant's letters due to the defendant's express references to various legal remedies in conjunction with a statement that the defendant had authority to take whatever means were necessary to collect upon the plaintiff's debt. <u>Id</u>. at 63.

The express language contained in two dunning letters sent by the defendant to the plaintiff in <u>Bentley</u> is not even remotely comparable to MDS's letters. The relevant text of the first letter at issue in <u>Bentley</u> is as follows:

> YOUR CREDITOR IS NOW TAKING THE NECESSARY STEPS TO RECOVER THE OUTSTANDING AMOUNT OF $ 483.43. THEY HAVE INSTRUCTED US TO PROCEED WITH WHATEVER LEGAL MEANS IS [sic] NECESSARY TO ENFORCE COLLECTION.

<u>Id</u>. at 61. In a second follow up letter, the defendant in <u>Bentley</u> threatened as follows:

> THIS OFFICE HAS BEEN UNABLE TO CONTACT YOU BY TELEPHONE, THEREFORE YOUR DELINQUENT ACCOUNT HAS BEEN REFERRED TO MY DESK WHERE A DECISION MUST BE MADE AS TO WHAT DIRECTION MUST BE TAKEN TO ENFORCE COLLECTION.
>
> WERE OUR CLIENT TO RETAIN LEGAL COUNSEL IN YOUR AREA, AND IT WAS DETERMINED THAT SUIT SHOULD BE FILED AGAINST YOU, IT COULD RESULT IN A JUDGMENT. SUCH JUDGMENT MIGHT, DEPENDING UPON THE LAW IN YOUR STATE, INCLUDE NOT ONLY

> THE AMOUNT OF YOUR INDEBTEDNESS, BUT THE AMOUNT OF ANY STATUTORY COSTS, LEGAL INTEREST, AND WHERE APPLICABLE, REASONABLE ATTORNEY'S FEES.
>
> AGAIN, DEPENDING UPON THE LAW IN YOUR STATE, IF SUCH JUDGMENT WERE NOT THEREUPON SATISFIED, IT MIGHT BE COLLECTED BY ATTACHMENT OF AN EXECUTION UPON YOUR REAL AND PERSONAL PROPERTY. GARNISHMENT MAY ALSO BE AN AVAILABLE REMEDY TO SATISFY AN UNSATISFIED JUDGMENT, IF APPLICABLE IN THE STATE IN WHICH YOU RESIDE.
>
> WE THEREFORE SUGGEST YOU CALL OUR OFFICE IMMEDIATELY TOLL FREE AT 1-800-874-7080 TO DISCUSS PAYMENT ARRANGEMENTS OR MAIL PAYMENT IN FULL IN THE ENCLOSED ENVELOPE.
>
> NO LEGAL ACTION HAS BEEN OR IS NOW BEING TAKEN AGAINST YOU.

Id. at 61-62. In these two letters, the court held that the tone of the letters violated the FDCPA because the defendant expressly threatened to file suit and seek all available legal action against the plaintiff, seize the plaintiff's real property, and garnish the plaintiff's wages, none of which the defendant could legally do at the time the defendant sent the letters. Id. Therefore, not only was the disclaimer not effective to overcome the tone set by the defendant's express threats of possible legal action, it actually had the opposite effect of strengthening the plaintiff's argument that the letters falsely implied that actions could and would be taken by the defendant. Id. at 63.

In contrast, MDS letter did not threaten any sort of legal action against Mr. Cambron. Moreover, MDS's letter did not falsely threaten to take any action against Mr. Cambron that MDS did not intend to take. As Gary Ball testified both during his deposition and at the Bankruptcy Court's hearing on this matter, MDS did attempt to gather the information that MDS's letter said it might seek, if available, by placing various phone calls to Mr. Cambron. Mr. Ball further stated that the policy of MDS was to seek the information described in its letters primarily through this method. See Transcript, pp. 24, 35; Ball Dep. pp. 60, 66, 68, 73, 87. Mr.

Ball stated that this method was preferred because MDS found that a conciliatory approach of working with the debtor directly was a more effective method of pursuing a debt. See Ball Dep. p. 79; Transcript, p. 35. Whether Plaintiff approves of the method used by MDS to investigate Mr. Cambron's ability to repay his debts or thinks it is the most efficient method for obtaining certain information is irrelevant. In this case, MDS acted in accordance with its internal corporate policy of seeking the information listed in its letters through conciliatory efforts. See Transcript p. 24; Ball Dep. pp. 60, 66, 68, 73, 87.[2]

In addition, MDS did not threaten to take any action that could not legally be taken against Mr. Cambron. As previously detailed to this Court (and still unopposed by Plaintiff), MDS is entitled to seek to collect upon a time-barred debt so long as MDS seeks only voluntary repayment. Instead of addressing this argument, Plaintiff merely asserts that Kimber is not applicable to this case, despite the fact that Kimber provided the justification for the Bankruptcy Court's finding that MDS's letter was deceptive under § 1692e(10) of the FDCPA. See Proposed Order pp. 7-9 (stating that MDS's alleged failure to seek the information listed in Mr. Cambron's letter indicated that the letter was merely a pretext for MDS's true purpose of trying to unlawfully coerce payment of a time barred debt).

The two remaining cases cited by Plaintiff in support of his argument that the tone of MDS's letters violated the FDCPA are similarly inapposite to the facts of this case. First, in Becker v. Montgomery, Lynch, the district court for the Northern District of Ohio held that the tone of the defendant's letter violated the FDCPA because it implied that the failure to pay the debt would cause plaintiff to be humiliated and/or incur extra costs. 2003 U.S. Dist. LEXIS

---

[2] Additionally, this evidence directly contradicts Plaintiff's argument that there is no evidence that MDS ever intended to seek information about the assets listed in the letter to Mr. Cambron. See Plaintiff's Surreply, p. 8.

24992, at *5 (N.D. Ohio, Feb. 26, 2003). The full text of the letter, originally all caps except for the validation section, is as follows:

> Please be advised that above client has retained this office in a claim against you, and has further authorized us to employ the quickest means available in order to secure full liquidation of this obligation.
>
> Experience has shown us that when the proper attitude is displayed by all parties concerned, a rapid disposition of such matters can be arranged, and no extra cost, humiliation, or hard feelings need arise.
>
> Accordingly all action on your account will be suspended for 72 hours. I urge that you remit the balance in full or talk this matter over with me at once.

Id. at *2. The court held that the defendant's letter violated the FDCPA because, in addition to not including the statutorily required language stating, "this is an attempt to collect a debt and any information obtained will be used for that purpose", the tone of the letter implied that the failure to pay the debt would cause humiliation and additional costs to the plaintiff. Id. at *5. The court held that naturally, the least sophisticated consumer would be upset and concerned at the prospect of both and therefore, a damages award was justified. Id.

Similarly, in Rutyna v. Collection Accounts Terminal, Inc., 478 F. Supp. 980 (N.D. Ill. 1979), the court held that the tone of the defendant's letter violated the FDCPA because it expressly threatened embarrassing communications with the plaintiff's employer and neighbors. Id. at 982. The letter at issue in Rutyna read as follows:

> You have shown that you are unwilling to work out a friendly settlement with us to clear the above debt.
>
> Our field investigator has now been instructed to make an investigation in your neighborhood and to personally call on your employer.
>
> The immediate payment of the full amount, or a personal visit to this office, will spare you this embarrassment.

Id. at 981. The court held that the defendant's letter violated § 1692e(5) of the FDCPA because the defendant's letter expressly threatened to take actions that could not legally be taken against the debtor. Id. at 982.

In contrast to both Becker and Rutyna, MDS's letters made no statements as to any possible repercussions that could follow if Mr. Cambron did not act to repay his debts or otherwise threaten to embarrass Mr. Cambron. Additionally, in both of the cases discussed above, the letters at issue created a real sense of urgency and imminency by stating that the defendants would seek to embarrass the plaintiffs unless they paid their debts immediately. In contrast, not only did MDS not threaten to take any action against Mr. Cambron, MDS also did not demand immediate payment and instead, invited Mr. Cambron to contest the validity of the claimed debt. Even to the least sophisticated consumer, this language unequivocally expressed MDS's intention to conduct an initial, preliminary evaluation prior to taking any specific steps to collect upon Mr. Cambron's debts. The absence of any threat in MDS's letters, express or implied, means those letters are merely informative under the FDCPA and do not give rise to any liability.

### D. The statutorily required disclosure language in MDS's letter cannot be used to support any violation of the FDCPA

In the Eleventh Circuit, any argument that the inclusion of language disclosing that a collection letter is being sent in an attempt to satisfy a debt can support a finding of liability under the FDCPA must be rejected because the FDCPA mandates that this language appear in all communications from a debt collector to a debtor. See Ferguson v. Credit Mgmt. Control, Inc., 140 F. Supp. 2d 1293, 1302 (M.D. Fla. 2001). Therefore, Plaintiff's argument that this language is "akin to a demand for payment" must be rejected by this Court.

III. CONCLUSION

Based on the foregoing, MDS respectfully requests that this Court amend the Bankruptcy Court's Proposed Report and Recommendations in accordance with the aforementioned arguments and enter an Order dismissing Plaintiff's claims against MDS under the FDCPA, award MDS its reasonable and necessary attorney's fees and litigation expenses, and grant MDS such other and further relief as this Court deems appropriate.

Submitted this 19th day of June, 2007.

OF COUNSEL

_____
John G. Parker
(Georgia Bar No. 562425)
Stefanie H. Jackman
(Georgia Bar No. 335652)

*Co-Counsel for Defendant*
*Medical Data Systems, Inc.*

PAUL, HASTINGS, JANOFSKY
& WALKER LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia 30308-2222
Tel. (404) 815-2400
Fax (404) 815-2424

_____
Russel A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189
Tel. (256) 546-9205
Fax (256) 546-8091

*Counsel For Defendant*
*Medical Data Systems, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE ALABAMA MIDDLE DISTRICT

| | |
|---|---|
| IN RE: )<br>)<br>WILLIAM C. CARN, III )<br>CHAPTER 7 TRUSTEE, )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>MEDICAL DATA SYSTEMS, INC. )<br>)<br>        Defendant, )<br>_____ ) | CASE NO.<br>1:07-cv-00369-WHA<br><br>USBC-MDAL CASE NO.<br>06-01057-WRS |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of **DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND RESPONSE OF WILLIAM C. CARN** by electronically serving and depositing the same in the United States mail in a postage prepaid envelope addressed to:

> David G. Poston, Esq.
> Michael Brock, Esq. and
> Gary Stout, Esq.
> Post Office Drawer 311167
> Enterprise, Alabama 36330

This 19th day of June, 2007.

_____
Russel A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189

*Counsel for Defendant*
Medical Data Systems, Inc.