A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

    *Rev.: 4/04*

2.      **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)      **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)      **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)      **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)      **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)      **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.      **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.      **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:                              )
                                    )          1:07-cv-00369-WHA
JAMES R. CAMBRON and                )
WENDY L. CAMBRON                    )          Case No. 05-11879
                                    )          Chapter 7
                                    )
            Debtors.                )
---------------------------------------------- )
WILLIAM C. CARN, III,               )
BANKRUPTCY TRUSTEE,                 )          Adv. Pro. 06-1057
                                    )
            Plaintiff,              )
                                    )
     v.                             )
                                    )
MEDICAL DATA SYSTEMS, INC.,         )
                                    )
            Defendant.              )
---------------------------------------------- )

## MEMORANDUM OPINION AND ORDER

### I. PROCEDURAL HISTORY

These causes are before the court on a Report and Recommendation ("R&R") of the

Chief United States Bankruptcy Judge pursuant to 28 U.S.C. § 157(c)(1)(2006):

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is
> otherwise related to a case under title 11. In such proceeding, the bankruptcy judge
> shall submit proposed findings of fact and conclusions of law to the district court,
> and any final order or judgment shall be entered by the district judge after
> considering the bankruptcy judge's proposed findings and conclusions and after
> reviewing de novo those matters to which any party has timely and specifically
> objected.

The bankruptcy judge consolidated and heard two non-core adversary proceedings which were

related to a case under Title 11 pending in his court. Following an evidentiary hearing, he

entered his Report and Recommendation, with proposed findings of fact and conclusions of law.

Objections were filed by the Defendant.

The court has considered the proposed findings and conclusions and has reviewed de

novo those matters to which the Defendant has timely and specifically objected. The court finds

no reason to take additional evidence, and has conducted the de novo review upon the record,

including a review of a transcript of the hearing before the bankruptcy judge. FED. R. BANKR. P.

9033(d);

## II. <u>FACTS</u>

On April 19, 2005, Medical Data Systems, Inc., d/b/a Medical Revenue Services

(hereinafter "MDS"), wrote James R. Cambron a letter regarding his medical debt totaling

$1,875.59. (Pl's. Ex. A). Two of the five debts listed were for services allegedly rendered at

Flowers Hospital in March 1997, more than eight years prior to the date of the letter. The statute

of limitations for collection of unsecured debt in Alabama is only six years. ALA. CODE § 6-2-34

(1975). Of the $1,875.59 allegedly owed, over 90% of the total debt was time-barred by the

statute of limitations. On May 24, 2005, MDS sent an almost identical collection letter to Wendy

L. Cambron regarding her medical debt of $175.00 for services allegedly rendered at Flowers

Hospital on August 27, 2003. (Pl's Ex. B).

Both letters contained the same opening paragraph:

Medical Revenue Service is a collection agency, retained to represent the below
named creditor. Since you have failed to pay this obligation in full, we now must
determine your ability to repay this debt. The information we may be seeking, if
available, to determine what further collection effort to take is:
1.) Real estate ownership/equity        4.) Your source of income
2.) Personal property assets            5.) Automobile ownership
3.) Saving, checking balances           6.) Verification of employment

2

(Pl.'s Exs. A, B).[1]

The sole issue decided today is whether this language violates the Fair Debt Collection Practices Act ("FDCPA"), which prohibits, *inter alia*, the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e then enumerates an expressly non-exhaustive list of examples, including "[t]he threat to take any action that cannot be legally taken or that is not intended to be taken," § 1692e(5), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10). Plaintiff contends that the language violates subsections 1692e(5) and e(10), and therefore, as to each debtor, plaintiff seeks statutory damages in the amount of $1,000.00, plus attorney's fees and costs, for each violation. § 1692k.

The Report and Recommendation found that the letters deceptively implied to the "least sophisticated consumer" that "the debtors' assets and wages may be in jeopardy" and therefore they violated § 1692e(10). *R&R* at 7-8. It found as a fact the defendants intended to take no action other than telephone calls to the Cambrons. It further found that the same language suggested action which could not lawfully be taken, which constituted a threat violating § 1692e(5). *Id.* at 9-10 (*citing Mailloux v. Arrow Fin. Servs., LLC*, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001)).

The Defendant filed timely Objections to the Report and Recommendation, to which the Plaintiff timely responded. FED. R. BANKR. PRO. 9003(b). The Defendant then filed a Reply to the Plaintiff's Response to the Defendant's Objections (hereinafter "Defendant's Reply") at which time the Plaintiff asked for leave to respond to the Defendant's Reply. Rather than strike Defendant's Reply for exceeding the number of filings provided for under Rule 9003(b), the court accepted the

---

[1]The complete letters are attached as an Appendix to this Memorandum Opinion and Order.

3

Defendant's Reply and granted Plaintiff leave to file its second response (hereinafter "Plaintiff's Surreply"). Defendant's motion for leave to file an additional response to the Plaintiff's Surreply was denied.

For the reasons stated below, upon an independent evaluation and *de novo* review, the court finds that the bankruptcy judge's Recommendation is due to be adopted as modified herein.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 157(c)(1), "any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1)*; see also Williford v. Funderburk (In re Williford),* 22 Fed. Appx. 843, 844 (11th Cir. Mar. 13, 2007) (per curiam).

## III. DISCUSSION

### A. Legal Background and Applicable Standards

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), noting that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." § 1692(a); *see also Jeter v. Credit Bureau, Inc.*, 760 F. 2d 1168, 1173-74 (11th Cir. 1985); *Ferguson v. Credit Management Control, Inc.*, 140 F. Supp. 2d 1293, 1297 (M.D. Fla. 2001). The FDCPA is a strict liability statute. *Ferguson,* 140 F. Supp. 2d at 1297; *Kaplan v. Assetcare, Inc.* 88 F. Supp. 2d 1355, 1361-62 (S.D. Fla. 2000); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993). Further, a single violation of § 1692e is sufficient to establish civil liability. *See 15 U.S.C. § 1692k(a).*

Plaintiff alleges that the identical language in defendant's debt collection letters violates both 15 U.S.C. § 1692e(5) ("e(5) violation") and 15 U.S.C. § 1692e(10) ("e(10) violation").  As noted earlier, subsection e(5) prohibits "[t]he threat to take any action that cannot legally be taken *or* that is not intended to be taken," whereas subsection e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(5) (emphasis added), 1692e(10) respectively.

In *Jeter*, the Eleventh Circuit adopted the "least sophisticated consumer" standard for determining "deception" under the FDCPA, including e(10) and one of two enumerated e(5) violations. 760 F.2d at 1175.  In other words, courts should make FDCPA determinations in accordance with its purpose, "made [not] for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking and the credulous." *Id.* at 1172-73 (internal citations omitted).  The lens of the "least sophisticated consumer" still "preserve[s] the concept of reasonableness" for an individual who can "possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).  Nevertheless, the fact that "a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Jeter* at 1173 (internal citations and quotations omitted).

The *Jeter* court carved an exception from the "least sophisticated consumer" standard for the second "unintended action" prong of e(5):

> The . . . issue is simply whether or not [defendant] *intended* to take the action threatened . . . requir[ing] proof of a fact which amounts to a *per se* violation of § 1692e.  The sophistication, or lack thereof, of the consumer is [therefore] irrelevant

5

to whether [defendant] 'threat[ened] to take any action . . . that [was] not intended to be taken.'

*Id.* at 1175.

District courts within the Eleventh Circuit have confirmed the application of the "least sophisticated consumer standard" to the first ("illegal threats") but not second ("unintended threats") prong of § 1692e(5). *Compare Ferguson*, 140 F. Supp. 2d at 1299 (applying standard to threats which "could not legally be taken") *with Rivera v. Amalgamated Debt Collection Servs.*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006) (noting application of standard for e(10) violations but citing *Jeter* for "unintended action" threats exception). In the Eleventh Circuit, therefore, the "least sophisticated consumer" standard shall be applied when determining violations of e(10) and threats of illegal action under e(5), but not threats of unintended action under e(5), because the existence of the intent to perform the action threatened is a question of fact, and threatening action with no intent to take it is a *per se* violation.

One final dispute with respect to standards involves the interrelationship between § 1692e(5) and § 1692e(10). Defendant MDS claims that e(10) is dependent on e(5), such that finding no illegal or unintended threat under e(5) precludes the possibility of finding deception under e(10). *See Obj. to R&R* at 3 (*citing Robinson v. Transworld Systems, Inc.*, 876 F. Supp. 385, 393 (N.D.N.Y. 1995) ("We already have ruled that there are no Section 1692e(5) violations because [defendant] has not threatened action that it did not intend to take. Therefore, these same statements cannot violate Section 1692e(10) as false representations or deceptive practices."). The holding of *Robinson*, however, is more limited. The facts and circumstances of *Robinson* rendered e(10) dependent on e(5) because the court found that the defendant had clearly threatened both legal and intended action, and the plaintiff's basis for deception under e(10) was

that the same statement threatened action it did not intend to take. *Id.* Because the same action

was legal, intended, and indeed clearly threatened, the *Robinson* court was quickly noting in

shorthand that there was no possibility of misleading, and thus no need for discussion of e(10).

*Id.*

This holding does not, however, render e(10) dependent on e(5) in every situation, and

they should be evaluated separately and independently. One could conceivably use "deceptive

means to collect or attempt to collect any debt" under e(10) without making any threats under

e(5), or any threats whatsoever. That the Eleventh Circuit applies a different standard, discussed

*supra*, for e(10) and half of e(5) only bolsters this conclusion. So does the fact that many other

cases evaluate the two claims separately and distinctly. *See United States v. Nat'l Financial

Services, Inc.* 98 F.3d 131, 135-39 (4th Cir. 1996); *Withers v. Eveland*, 988 F. Supp. 942, 946-47

(E.D.Va. 1997); *Davis v. Commercial Check Control, Inc.*, No. 98 C 631, 1999 WL 89556, at

*3-4 (N.D. Ill. 1996); *Raimondi v. McAllister & Associates, Inc.*, 50 F. Supp. 2d 825, 827 (N.D.

Ill. Feb. 16, 1999); *Ferguson*, 140 F. Supp. 2d at 1299-1303 (M.D. Fla. 2001). Finally, further

evidence of the separate nature of the two claims lies in the FTC commentary, which states that §

1692e(10) is "particularly broad and encompasses virtually every violation, including those not

covered by the other subsections." Statements of General Policy or Interpretation Staff

Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50105 (December

13, 1988). Although the two subsections therefore warrant independent analyses under different

standards, this court adopts the bankruptcy judge's findings of violations of both e(5) and e(10),

as modified herein.

**B. 15 U.S.C. § 1692e(5) violation**

MDS argues that its letters did not constitute "threats." The FDCPA does not define a "threat" for purposes of § 1692e(5). The court in *Ferguson* notes its definition as "a communicated intent to inflict harm or loss on another or on another's property . . . [or] an indication of an approaching menace [such as] the threat of bankruptcy." 140 F. Supp. 2d at 1293 n.11 (*quoting* Black's Law Dictionary 1289-90 (7th ed. 1999)). It then lists several examples of communications that courts have found to be "threatening communications" under the statute, including among them (1) threats to sue, (2) threats to garnish wages and/or seize assets, (3) threats to contact the debtor's neighbors and/or employer, and (4) threats to investigate the debtor's employment. *See id.* at 1299-1300 (internal citations omitted).

The bankruptcy judge, while noting that the letters "do not, strictly speaking, threaten anything," correctly noted that "the overarching problem . . . is one of deception and not of *express* threats to take action." *R&R* at 9 (emphasis added). While e(10) may prohibit general deception, e(5) more specifically prohibits threats, express or implied, of illegal or unintended action. In *Nance v. Friedman,* for example, the Northern District of Illinois denied summary judgment for the defendant under e(5), holding that even if the letter correctly indicated that the attorney was authorized to sue, and did not expressly threaten litigation, the letters falsely suggested that litigation was imminent, and that an "unsophisticated consumer -- indeed even a sophisticated one -- would regard this letter [as an implication] both that the attorney had been authorized to file a lawsuit and as actually threatening imminent litigation." No. 98 C 6720, 2000 WL 1700156, at *2 (N.D. Ill. Nov. 8, 2000); *see also Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1380 (E.D. Cal. 1995) (letter *suggesting* that suit was imminent violated § 1692e(5) because sender was not in position to file suit imminently).

8

The defendant's citation of *Robinson* for the proposition that "[g]enerally the threat to take an action that will not or cannot be taken must be explicit" is both unpersuasive and an overstatement. *Obj. to R&R* at 4. (*citing Robinson*, 876 F. Supp. at 392). *Robinson* quoted a series of letters[2], holding that "[n]one of these statements threatens action that could not be taken legally." *Robinson*, 876 F. Supp. at 392. "Thus, it is necessary to examine whether they threaten action which [defendant] did not intend to take." *Id.* The *Robinson* court distinguished its decision from *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22 (2d Cir. 1989), in that the language in *Pipiles* clearly stated that the item "had been referred for collection action" when the defendant had conceded that legal action was not taken for such small accounts. *Id.* at 392-93.  In contrast, the language in the *Robinson* letters did "not contain[] a *clear* threat similar to that found in *Pipiles*" and the *Robinson* defendant testified that they do indeed recommend legal action depending on the individual facts and circumstances of the case. *Id.* at 393 (emphasis added).  The *Robinson* court therefore granted summary judgment because the "record [was] entirely devoid of proof that [defendant] threatened to initiate a lawsuit or that it did not intend to commence a lawsuit." *Id.* To read the *Robinson* holding as requiring an "express" threat, as opposed to a clearly implied one, thus misinterprets the circumstances of the case.

The defendant cites *Wade v. Regional Credit Assoc.*, in which the Ninth Circuit held that "[i]f a letter does not contain any threatening language, it is deemed merely informative and therefore, cannot violate § 1692e(5) of the FDCPA." 87 F.3d 1098, 1099 (9th Cir. 1996)(finding no violation)).  To read *Wade* as requiring expressly threatening language, however, would create

---

[2]The letters warned of a "PROTRACTED AND UNPLEASANT COLLECTION EFFORT"due to the "PROBLEMS AND POSSIBLE CONSEQUENCES CONNECTED WITH NON-PAYMENT OF A LEGITIMATE DEBT." *Robinson,* 876 F. Supp. at 392.

a mere exercise in circular logic, stating that "if it doesn't threaten, it doesn't violate the

prohibition against threatening," and ignores the very real possibility that some threats can be

implicit.[3]  The language in *Wade* merely noted that "failure to pay could adversely affect

[plaintiff's] credit reputation," devoid of any threat to sue, garnish wages, or seize assets.  In

contrast, MDS's letter implied that it would seek any available information on practically all of

debtor's assets to "determine what further collection effort to take," if the debt was not paid.  The

court therefore interprets *Wade* as allowing for the possibility that contents of a debt collection

notice, in context, may impose a threat even when the express language does not.

MDS's reliance on the *Bieber* case is distinguishable.  *Bieber v. Assoc. Collection Servs.,*

631 F. Supp. 1410, 1416 (D. Kan. 1986).  The plaintiffs in *Bieber* claimed "illegal" threats based

on the indication that "defendant had the authority to take legal action." *Id.*  The language,

however, indicated only that legal action "may be filed against you," and that legal action would

be "recommended." *Id.*  Legal action was, in fact recommended and the creditor sued; these were

not illegal or unintended threats because they truly occurred. *Id.*

Here, MDS held on to the account for four years, and its chief operating and financial

officer testified that they intended to do so indefinitely, without ever meaningfully returning the

account to creditor Flowers Hospital.  (Test. of Gary Ball 12:12-13:11; 22:7-9).  During those

four years, they never so much as ran a credit report, deeming it unprofitable to do so.  (*Id.* at

22:16-20; 24:7-12; 47:15-20).  Gary Ball testified that MDS had no intentions of taking legal

action against the Cambrons.  (*Id.* at 18:2-6; 28:18-29:10; *see also R&R* at 3 (stating that with

---

[3]For instance, if a debtor owed money to one of the more illegal and unsavory types of
debt collectors, such as a bookie or mobster, who then sent one of his goons over to tell him, "I
sure hope your automobile takes you safely home tonight," the lack of an express threat in such a
statement should not prevent the debtor from considering hailing a cab.

respect to the non-time barred debt, "the evidence showed that Medical Data had no intention to take that action."); *id.* ("[MDS's] efforts to collect debts appear to consist of two things. First, it sends a letter and then it follows up with telephone calls." )). Therefore, the letter's implication that assets might be seized, possible only through legally obtaining a judgment lien, was false and misleading, since MDS had no intention of even *investigating* their assets.

MDS insists that its "letter did not contain any threats to commence legal action or that Cambron's account would be referred to an attorney if they did not pay their debts in full, unlike the letters at issue in both *Pipiles* and *National Financial Servs., Inc.*" *Obj.* at 8. This may be true, but it misses the point. MDS's comparison to several cases to show stronger language specifically threatening legal action is of only limited comparative value, since e(5) is not limited to threats of legal action specifically, but more broadly prohibits threats "to take *any* action that . . . is not intended to be taken." § 1692e(5) (emphasis added). If MDS's letter sufficiently suggests that *some* type of action will be taken against plaintiff's assets when there is no intention of taking *any* action, it makes little difference that stronger language specifically implying *legal* action was found not violative in other cases.

Finally, MDS argues that the bankruptcy court erred in relying on *Mailloux v. Arrow Financial Services,, LLC,* 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001), claiming it to be distinguishable and of little merit to the case because the *Mailloux* court had found an e(5) violation in order to satisfy the typicality requirement of class certification. (*Obj.* at 2.) The bankruptcy judge cited *Mailloux* for the proposition that it violates e(5) to imply that certain action would be taken, when such action could not lawfully be taken. This would apply to the first prong of e(5). This court, however, finds it unnecessary to consider whether the first prong was violated by threatening either suit or other action on a debt as to which the statute of

11

limitations had run. To the extent that the Report and Recommendation would hold that either suit or collection efforts short of suit on a time-barred debt in Alabama would constitute a *per se* violation of the FDCPA, this court does not adopt it, as the court finds a violation of the second prong.

In sum, the language in MDS's debt collection letter implied that, due to plaintiff's failure to "pay this obligation in full," MDS would now begin seeking available information to determine which specific assets to go after. Contrary to MDS's attempts to paint the language in the following way, it never said: "what further collection effort, *if any*, to take." Instead, it said that it "*may* be seeking [information], *if available*, to determine what further collection effort to take." *Id.* The implications of the two phrases are quite different. Without deciding whether the former phrasing would have violated e(5) or not, it is clear that the latter phrasing, taken from the letter itself, implies that collection is certain, while the type of collection and the particular assets to be surely seized depend on the information available. This violates § 1692e(5) precisely because MDS suggested that investigation into available sources in order to locate assets would be undertaken, and that collection efforts against assets would be taken, unless the Cambrons paid the debts, when MDS had no intention of doing so. While the letter may not necessarily refer to the same kinds of legal actions that the cited cases do, it just as strongly implies what the statute plainly prohibits: "the threat to take *any* action . . . that is not intended to be taken." 15 U.S.C. § 1692e(5) (emphasis added).

This court finds from the record that the defendant's letter impliedly threatened to investigate the debtor's employment, contact others to find assets, garnish wages or seize assets, or take further collection efforts other than contacting the debtors, if they did not pay the debts, none of which it had any intention of doing. Accordingly, this court adopts the bankruptcy

judge's Recommendation to find a violation of § 1692e(5), but does so on that basis and not on

the basis that the letter threatened to take action that cannot legally be taken.[4] The court makes

no finding as to whether the letter threatened to take action that cannot legally be taken, it being

unnecessary to do so.

### C. 15 U.S.C. § 1692e(10) violation

Subsection (10) of 15 U.S.C. § 1692e prohibits "[t]he use of any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer." 15 U.S.C. § 1692e(10) (2006). MDS claims it did not violate e(10) because it did

not threaten legal action. Evaluating the letter independently from any e(5) analysis, as discussed

*supra*, this court finds the letter to violate e(10) as well.

As discussed in the e(5) analysis, the letter need not threaten legal action to constitute a

threat under e(5); simply threatening an unintended action is sufficient. Similarly, one need not

threaten anything to constitute an e(10) violation; mere deception, intentional or unintentional,

---

[4]This finding by the court is consistent with the Federal Trade Commission's "Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act," 53 Fed. Reg. 50097, 50106 (December 13, 1988):

> Section 807(5) prohibits the "threat to take any action . . . that is not intended to be taken."
>
> . . . .
>
> (3). *Statement of possible action.* A debt collector may not . . . imply that he or any third party may take any action unless . . . there is a reasonable likelihood, at the time the statement is made, that such action will be taken. A debt collector may state that certain action is possible, if it is true that such action . . . is frequently taken by the collector or creditor with respect to similar debts; however, if the debt collector has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.

While not binding, it has been held that the FTC's construction and interpretation of the FDCPA "should be accorded considerable weight." *Hawthorn v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1372 n.2 (11th Cir. 1998) (citing *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782-83 (1984)).

"to collect or attempt to collect any debt *or* to obtain information concerning a consumer" is sufficient to constitute a violation. § 1692e(10) (emphasis added). For purposes of argument, the court can assume, even though the letter did not ask the Cambrons to furnish any information about assets, but only asked for payment, that MDS's sole purpose in sending the letters was merely to obtain information about the Cambrons' assets in order to assess their likelihood of voluntary repayment, and consequently whether more phone calls and other non-legal actions were necessary. Their purpose is irrelevant – the language of the letter would still lead "the least sophisticated consumer" to believe that their assets were endangered due to some type of impending collection action. This deception alone constitutes a violation of e(10) under the strict liability of the FDCPA. *See Ferguson* at 1297; *Kaplan* at 1361-62; *Bentley* at 63.

MDS goes to great lengths over several pages to argue that the bankruptcy court failed to properly analyze and apply *Kimber v. Fed'l Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987). *See Obj.* at 12-17. Specifically, MDS argues that the bankruptcy court improperly relied on *Kimber* for the proposition that *any* attempt to collect on time-barred debt was deceptive under the FDCPA. *Id.* It argues that *Kimber* has been clearly limited, in states such as Alabama which interpret statutes of limitation as barring judicial remedies instead of extinguishing debts, to prohibit only legal actions, and not "any and all" collection efforts. Therefore, MDS claims, "it is significant that few courts interpret *Kimber* as the bankruptcy court did in its Proposed Order as barring any and all attempts to collect upon a time-barred debt." *Obj.* at 13.

The bankruptcy court never relied on *Kimber,* but instead cited it as a *see also* cite while discussing the well-supported "least sophisticated consumer standard." *R&R* at 7. Moreover, this court finds *Kimber* to be just as unnecessary to its e(10) determination, if not more so, than

14

*Mailloux* is to its e(5) determination.[5]  To the extent that MDS, or anyone else, should interpret the bankruptcy judge's Report and Recommendation to hold that any and all attempts to collect a debt in Alabama which would be barred by the statutes of limitations to be *per se* violations of the FDCPA, this court does not adopt such an interpretation, it being unnecessary to consider such issue.

Finally, MDS asserts that "the bankruptcy court expressly acknowledged there was nothing deceptive or misleading in MDS's letter." *Def's Reply* at 2.  "Therefore," MDS argues, "the Bankruptcy Court [erroneously] focused on the purpose of MDS's letter, which it determined was unlawfully to coerce payment of a time-barred debt." *Id.* at 11.  These two mischaracterizations take the judge's comments out of context.  The bankruptcy judge did state that "[t]here is nothing in the letters that is demonstrably false." *R&R* at 4; *Def's Reply* at 11.  The judge also stated that "it strains credibility to believe that the true purpose of the language in question is to obtain accurate information on a debtors' assets and wages," and that "it appears that the purpose, and surely the effect of these letters is to coerce payment by giving a false impression that the debtor's wages and assets are in jeopardy." *R&R* at 4.  As the bankruptcy judge continues to explain, however, "the issue here is whether the letters in question are deceptive." *Id.* at 7.  Although they may not have been "demonstrably false," the bankruptcy judge found the letters to be deceptive in their implications to the "least sophisticated consumer," and therefore a violation of § 1692e(10).  No more evaluation of MDS's purpose is necessary.  The statute of limitations and the proper extension of *Kimber* have nothing to do with any

---

[5]If this court had found that MDS had violated e(5) by making an "illegal" threat, then the proper interpretation of *Kimber* with respect to the appropriate pursuit of time-barred debt would be relevant. Because the court finds that MDS violated e(5) by making an unintended threat, however, any address of this issue would be dicta.

dispositive issues as far as this court is concerned. The FDCPA is a strict liability statute. If MDS truly intended, as it claims, merely to elicit information from the debtors about their assets in order to decide whether to make more phone calls or mail more letters, it should have been more clear and less deceptive in the way it made this request to the debtor.

## IV. CONCLUSION

As to the specific objections made by the defendant, the court finds as follows:

1. As to defendant's objection to the bankruptcy judge's characterization of the letters as "demanding payment," the objection is due to be overruled. A reasonable recipient of the letter, and certainly the "least sophisticated consumer," would understand the letter to demand payment in order to avoid an investigation into the debtor's assets and employment, and collection efforts which could jeopardize either or both.

2. As to defendant's objection to the bankruptcy judge's factual finding that MDS's letters sought to deceive the Cambrons into believing that their wages and property were in jeopardy, the objection is due to be overruled, for the reasons previously discussed in this opinion.

3. Defendant's objections to the conclusions of the bankruptcy judge are overruled for the reasons previously discussed in this opinion, and as modified by the opinion.

## V. __ORDER__

 For the reasons discussed, it is hereby ORDERED as follows:

1.  The Defendant's Objections to the Report and Recommendation of the bankruptcy

judge are OVERRULED.

2. Pursuant to the authority granted to this court by 28 U.S.C. § 157(c)(1),  the Report and

Recommendation of the Bankruptcy Judge is ADOPTED as Modified by this Opinion,

and damages are assessed at $1,000, plus costs and attorney's fees, for the plaintiff in

each case.  Judgment will be entered accordingly.

Done this 4th day of December, 2007.


/s/ W. Harold Albritton _____ ____ ___ _____
W. HAROLD ALBRITTON, III
SENIOR UNITED STATES DISTRICT JUDGE

17

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

**RETURN SERVICE REQUESTED**
04/19/2005

medPaxA12PPOAA07KE.0b4004

JAMES R CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464



| Reference | Total Amount Due |
|---|---|
| F9708100109 | $1874.59 |
| **Toll Free Number** | |
| (800) 315-6050 | |

CHECK CARD USING FOR PAYMENT

CARD NUMBER
AMOUNT                    EXP. DATE
SIGNATURE

**MAKE CHECK PAYABLE AND REMIT TO:**

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149



Page 1 of 1
▼ DETACH HERE ▼ AND RETURN TOP PORTION WITH YOUR PAYMENT

CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have
failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be
seeking, if available, to determine what further collection effort to take is:

    1.) Real estate ownership/equity    4.) Your source of income
    2.) Personal property assets      5.) Automobile ownership
    3.) Savings, checking balances    6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or
any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days
from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you
a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this
notice, this office will provide you with the name and address of the original creditor, if different from the current
creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to
your account, include the reference number with your payment. We also accept "check by telephone" for your
convenience. If you have any questions, you may contact an account representative at the above listed phone
number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt.
Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F9708500163 | Flowers Hospital | 03/26/1997 | 307.68 | Lehr, Timmy J |
| F9708100109 | Flowers Hospital | 03/22/1997 | 1386.55 | Lehr, Timmy J |
| F0307000545 | Flowers Hospital | 03/13/2003 | 58.77 | Cambron, James R |
| F0402500112 | Flowers Hospital | 01/25/2004 | 55.74 | Cambron, James R |
| F0402400129 | Flowers Hospital | 01/24/2004 | 65.85 | Cambron, James R |

**TOTAL BALANCE: $1874.59**



PLAINTIFF'S
EXHIBIT
4

PL1

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871



| Reference | Total Amount Due |
|---|---|
| F0323900637 | $175.00 |

Toll Free Number
(800) 315-6050

**RETURN SERVICE REQUESTED**
05/24/2005

CHECK CARD USING FOR PAYMENT

| CARD NUMBER | |
|---|---|
| AMOUNT | EXP. DATE |
| SIGNATURE | |

med9axA130XCA10DJV.00773b

WENDY L CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464



MAKE CHECK PAYABLE AND REMIT TO:

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149



CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Page 1 of 1

▼ DETACH HERE ▼ AND RETURN TOP PORTION WITH YOUR PAYMENT

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances
4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F0323900637 | Flowers Hospital | 08/27/2003 | 175.00 | Cambron, Wendy L |

TOTAL BALANCE: $175.00



PLAINTIFF'S EXHIBIT
B

PL1