## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| **WIILLIAM C. CARN, III,**<br>**CHAPTER 7 TRUSTEE,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**MEDICAL DATA SYSTEMS, INC.,**<br><br>      **Defendants.** | **CASE NO. 1:07-CV-00369-WHA** |
| **WIILLIAM C. CARN, III,**<br>**CHAPTER 7 TRUSTEE,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**MEDICAL DATA SYSTEMS, INC.,**<br><br>      **Defendants.** | **CASE NO. 1:07-CV-00370-WHA** |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ADDITIONAL ATTORNEY FEES AND COSTS

Defendant Medical Data Systems, Inc. ("MDS") respectfully objects to Plaintiff's Motion

for Additional Attorney Fees and Costs, filed December 18, 2007. In support of its objections,

MDS shows the Court the following:

### I.  PLAINTIFF FAILED TO FILE HIS MOTION FOR ADDITIONAL ATTORNEY'S FEES PRIOR TO MDS FILING ITS NOTICE OF APPEAL.

Plaintiff failed to file his motion for additional attorney's fees and costs with this Court

before MDS filed its notice of appeal. This means that Plaintiff's motion is not timely and

cannot be decided at this time. A court may consider a motion for attorney's fees only if the

motion has been made: (1) timely under FED. R. CIV. P. 54(d)(2); and (2) prior to the filing of a

timely and effective notice of appeal. FED. R. CIV. P. 58(e). After a notice of appeal has been

filed, the district court no longer has jurisdiction. *See Kirtland v. McDermott & Co.,* 568 F.2d

1166, 1170 (5th Cir. 1978) ("However, it is the filing of the appeal, not the entering of a final

judgment, that divests the district court of jurisdiction.").

On December 4, 2007, this Court entered its judgment and order in case numbers 1:07-

CV-369 (the "369 Case") and 1:07-CV-370 (the "370 Case"), in which the Court awarded

Plaintiff $2,000 in damages and attorney's fees. On December 14, 2007, MDS filed notices of

appeal to the Eleventh Circuit Court of Appeals in both the 369 Case and 370 Case. The

Eleventh Circuit docketed these appeals on December 20, 2007.[1] *See* Exhibit 1, Notices of

Docketing. Therefore, under FED. R. CIV. P. 58(e), this Court is divested of jurisdiction to hear

Plaintiff's motion for additional attorney's fees and costs because Plaintiff filed that motion after

MDS's timely filing of valid notices of appeal in both the 369 Case and 370 Case.

## II.    PLAINTIFF IS NOT ENTITLED TO RECOVER HIS REQUESTED ATTORNEY'S FEES BECAUSE PLAINTIFF IS NOT YET A PREVAILING PARTY AND BECAUSE THE AMOUNT OF FEES REQUESTED BY PLAINTIFF IS UNREASONABLE.

Courts in the Eleventh Circuit use a three-step process to determine whether a party is

entitled to attorney's fees. First, a court asks if the plaintiff "prevailed" in the action. *Dillard v.

City of Greensboro,* 213 F.3d 1347, 1353 (11th Cir. 2000) (internal citations omitted). Second,

the court calculates the "lodestar," which is the number of hours, tempered by billing judgment,

spent on the legal work on the case, multiplied by a reasonable market rate in the local area. *Id.*

---

[1] On December 12, 2007, Plaintiff filed a motion to amend this Court's December 4, 2007
judgment to include a previous award of attorney's fees by the Bankruptcy Court. This Court
retains jurisdiction over that motion under FED. R. CIV. P. 58(e) because Plaintiff filed the motion
to amend judgment prior to MDS filing its notices of appeal.

- 2 -

(internal citations omitted). Finally, the court has the opportunity to adjust the lodestar to account for other considerations that have not yet figured into the computation. *Id.* (internal citations omitted). As will be discussed below, this Court should decline to award Plaintiff any attorney's fees because Plaintiff is not yet a prevailing party entitled to such fees. Additionally, the amount of attorney's fees requested by Plaintiff is unreasonable due to a lack of billing discretion and the inclusion of duplicative and unnecessary work in Plaintiff's requested attorney's fee award.

## A.    This Court Should Refuse To Award Any Attorney's Fees To Plaintiff Until This Matter Is Resolved On Appeal Because Plaintiff May Not Remain A "Prevailing Party."

An absolute prerequisite for obtaining an award of attorney's fees is that the party seeking those fees be a "prevailing party." *See Hensley v. Eckhur*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983); *accord* 15 U.S.C. § 1692(k)(a)(3) (2007) (permitting an award of reasonable attorney's fees and costs, as determined by the Court, for a *successful* action to enforce liability under the FDCPA) (emphasis added); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000) (the first step in determining whether a party is entitled to attorney's fees is to ask whether that party is a prevailing party). Obtaining a favorable ruling that does not stand on appeal is not a victory for prevailing party purposes. *Dougan v. Moore*, Case No. 3:91-CV-11-J-10, 2000 U.S. Dist. LEXIS 22662, at \*10 (M.D. Fla. Jan. 25, 2000) (*quoting Webb v. Ada County, Idaho*, 195 F.3d 524, 527 (9th Cir. 1999) ("Where a party is not ultimately successful on a claim, its 'victory' at a preliminary stage of the litigation is only 'fleeting,' and does not justify a fee award"); *see also Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 121 S. Ct. 1835, 1839 (2001) (defining a prevailing party as "[a] party in whose favor a judgment is rendered, ... -- Also termed *successful party*.")

(emphasis in original) (*citing* BLACK'S LAW DICTIONARY 1145 (7th ed. 1999)). Therefore, if a previously victorious party does not prevail on appeal, that party is no longer a prevailing party and cannot recover its attorney's fees under the FDCPA.

While this Court ruled in Plaintiff's favor on Plaintiff's FDCPA claims in its December 4, 2007 order and judgment, MDS filed notices of appeal from that judgment on December 14, 2007. The Eleventh Circuit Court of Appeals docketed MDS's appeal on December 20, 2007. MDS also filed an amended notice of appeal on December 28, 2007 to incorporate this Court's December 18, 2007 Amended Order and Judgment into MDS's prior notices of appeal. Under *Dougan* and *Webb*, only if MDS's appeal is resolved by the Eleventh Circuit in favor of Plaintiff will Plaintiff remain a "prevailing party" and be entitled to recover his attorney's fees. However, should MDS prevail on appeal, Plaintiff will no longer be a prevailing party and therefore, will not be entitled to recover any attorney's fees. At the very least, this Court should delay determining whether Plaintiff is entitled to any additional attorney's fees pending the resolution of MDS's appeal by the Eleventh Circuit Court of Appeals in order to prevent the possibility of Plaintiff recovering fees, losing on appeal, and causing additional unnecessary briefing and expense to both parties. Furthermore, this course of action risks no prejudice to Plaintiff because, in the event that MDS is not successful on appeal, Plaintiff will still have the ability to seek its reasonable attorney's fees. Therefore, MDS asserts that it would be improper to grant any additional fees to Plaintiff at this point in this matter and respectfully requests this Court decline to do so until it is established that Plaintiff will or will not remain a "prevailing party" in light of MDS's pending appeal.

- 4 -

**B.      In The Alternative, Plaintiff's Requested Attorney's Fees Are Unreasonable In That The Number Of Hours Claimed Is Excessive.**

15 U.S.C. § 1692 (k)(a)(3) provides for an award of *reasonable* attorney's fees and costs, as determined by this Court, for a successful action to enforce liability under the FDCPA.  In defining what constitutes a reasonable amount of fees, courts have held that counsel is expected to exercise "billing judgment" and that courts "should exclude from th[e] initial fee calculation hours that were not reasonably expended" including "excessive, redundant, or otherwise unnecessary" work. *Hensley v. Eckhur*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983). Courts also reduce attorney's fee awards when there has been a duplication of services, excessive total time billed considering the lack of difficulty of the case, excessive time billed for particular tasks, the use of too many attorneys, or too much conferencing. *See, e.g., Ackerly Communications v. Sommerville*, 901 F.2d 170, 171-72 (1st Cir. 1990) (reducing the requested fee amount by half due to redundancy and overstaffing); *Clark v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (reducing the fee award due to the lack of complexity of the case, the minimal amount of discovery, the minimal scope of the trial, and the lack of any novel issue of law).

In his motion, Plaintiff seeks to recover $17,246.25 for time expended by Plaintiff's two attorneys in this matter, David Poston ("Mr. Poston") and Walter Blakeney ("Mr. Blakeney"). However, this amount is excessive as there are numerous examples of duplicative, excessive, and/or non-legal work included in Plaintiff's claimed attorney's fees.  For example, Mr. Poston initially assigned the drafting of Plaintiff's two responsive briefs to MDS's objections to Mr. Blakeney, an associate of Mr. Poston.  However, after Mr. Blakeney wrote each reply brief, Mr. Poston spent an almost equal amount of time re-writing those briefs because he was apparently not satisfied with Mr. Blakeney's work.

- 5 -

Specifically, Mr. Blakeney spent a total of 18.2 hours drafting and revising Plaintiff's first reply brief, at a total cost of $2037.50. *See* Exhibit 2, Plaintiff's Billing Records, 4/23/07-4/30/07 time entries by WB. Then, after determining that the "[d]raft needs some work",[2] Mr. Poston spent a total of 14.1 hours re-writing Mr. Blakeney's brief at a cost of $3525.00. *See* Exhibit 2, 4/27/07-4/30/07 time entries by DGP. Notably, Mr. Poston spent almost the same number of hours as Mr. Blakeney, at almost twice the cost, re-writing a brief addressing a relatively simple legal issue and analyzed under a relatively straightforward federal statute. MDS submits such charges are excessive, duplicative, and should be reduced significantly upon a proper exercise of billing discretion.

Further, an examination of the April 30, 2007 time entries for both Mr. Poston and Mr. Blakeney reveals billing for repetitive blue booking and shepardizing of the first reply brief. Both Mr. Poston and Mr. Blakeney reviewed the first brief separately to ensure that it was in proper blue book format and all cases were shepardized, at a total cost of $1950.00. Additionally, the bills also include charges for 1.2 hours during which Mr. Blakeney dictated a table of contents for the first brief, at a cost of $150.00. *See* Exhibit 2, 4/30/07 time entries by DGP and WB. MDS submits that ensuring case citations are shepardized and in proper blue book format, as well as the dictation and revision of a table of contents is the sort of work that can be done (and should be done) competently and efficiently by a paralegal or other legal assistant and which certainly does not require the time and effort of two attorneys. To expect to recover attorney's fees for such work is wholly inappropriate and these charges should be struck.

This same pattern of inefficient and repetitive legal work is seen again in the time entries reflecting the time Mr. Poston and Mr. Blakeney spent drafting Plaintiff's second reply brief in

---

[2] *See* Exhibit 2, 4/27/07 time entry by DGP.

response to MDS's objections. An examination of Plaintiff's billing records reveals that despite

assigning the second response brief to Mr. Blakeney, who expended 19.25 hours drafting the

brief at a cost of $1556.25, Mr. Poston once again spent an additional 10.05 hours re-drafting

Mr. Blakeney's brief, at a cost of $2512.50, because Mr. Poston "[was] not pleased with the

progress of this brief" and because he "[m]ade major revisions to the content of the brief." *See*

Exhibit 2, 5/31/07-6/15/07 time entries for WB and DGP. MDS should not be forced to pay for

admittedly inefficient and repetitive legal research and writing.

In addition to the time spent briefing the issues in this case, there are other examples of

inappropriate charges for time throughout Plaintiff's billing records. For example, on December

12, 2007, Mr. Poston spent .6 hours, at a cost of $150.00, dictating a motion to amend this

Court's December 4, 2007 judgment to include the Bankruptcy Court's previous award of

attorney's fees because Mr. Poston neglected to bring that to the Court's attention in any of the

prior briefs submitted by Plaintiff in this matter. *See* Exhibit 2, 12/12/07 time entry for DGP;

December 18, 2007 Order, p. 2. Had this prior judgment been brought to this Court's attention

by Plaintiff in one of the multiple briefs filed in this matter, this work would have been

unnecessary and therefore, should not be recoverable by Plaintiff. Mr. Poston also seeks to

recover for 2.7 hours spent reviewing the bills in this matter, at a cost of $675.00. *See* Exhibit 2,

12/11/07 and 12/14/07 time entries by DGP. Mr. Poston could not charge Plaintiff for this time

and therefore, it is inappropriate for Mr. Poston to charge MDS for the same.

Further, the billing records reflect that Mr. Poston spent 4.6 hours drafting this motion for

attorney's fees, at a cost of $1,150.00. *See* Exhibit 2, 12/17/07 time entry by DGP. However,

MDS submits that this is excessive, especially in light of the fact that this motion, and the legal

arguments and authority presented therein, are substantially similar and, at times, word-for-word

- 7 -

identical to those contained in prior motions for attorney's fees filed by Mr. Poston in other cases. *Compare* Exhibit 3, Plaintiff's Brief In Support Of Motion For Additional Attorney's Fees *with* Exhibit 4, Plaintiff's Reply Brief filed in case number 1:05-CV-938. While re-using prior legal work can provide an efficient way to practice law in many instances, MDS submits that in light of the lack of additional legal research by opposing counsel in drafting this motion for additional attorney's fees, spending 4.6 hours to merely amend a prior motion to the facts and circumstances of this case is unreasonable and should be reduced.

In sum, Plaintiff seeks to recover $17,246.25 in fees, which consists of 98.6 hours of work expended in this matter. In addition to the examples discussed above of the duplicative and unnecessary time expended by opposing counsel in this matter, the total time written off by opposing counsel in this matter amounts to only 7.65 hours, the majority of which consisted of writing-off .1 charges for reviewing electronic notifications of filings in this Court. *See generally* Exhibit 2. In truth, Plaintiff's bills have not been adjusted to reflect any sort of appropriate exercise of billing discretion. MDS submits that in light of the examples above and the relative simplicity of this matter, as well as opposing counsel's self-professed expertise and specialization in FDCPA matters, the amount of time allocated to this matter is excessive and should be reduced by this Court.[3]

## III.    CONCLUSION

Therefore, MDS respectfully requests that this Court forego determining Plaintiff's entitlement to fees due to the pending appeal in this matter before the Eleventh Circuit Court of

---

[3] Additionally, while Plaintiff asserts MDS never made a settlement offer in this matter, that is not accurate. Plaintiff and MDS engaged in several settlement discussions relating to a universal settlement of not only this matter, but also of 25 related matters pending in various Alabama federal courts. Plaintiff never proposed any settlement figure for this particular matter and when MDS would not agree to pay the requested universal settlement amount, negotiations stalled.

Appeals. In the alternative, should this Court determine that it may issue a judgment on

Plaintiff's motion for additional attorney's fees and costs, MDS respectfully requests this Court

exercise its discretion to reduce the plaintiff's requested fees due to duplicative work performed

and determine the appropriate lodestar amount in this matter by adjusting the number of hours

claimed by Plaintiff's counsel, in light of the issues discussed above.

Respectfully submitted this _10th_ day of January, 2008.


/s/ J. Kirkman Garrett
James C. Huckaby, Jr.
J. Kirkman Garrett

*Local Counsel for Medical Data
 Systems, Inc.*

CHRISTIAN & SMALL LLP
505 North 20th Street
Suite 1800
Birmingham, AL 35203
Tel. (205) 795-6588
Fax (205) 328-7234

John G. Parker
(Admitted *pro hac vice*)
Georgia Bar No. 562425
Stefanie H. Jackman
(Admitted *pro hac vice*)
Georgia Bar No. 335652
*Counsel for Medical Data Systems, Inc.*

Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia 30308
(Tel.) 404-815-2400
(Fax) 404-815-2424

## Certificate of Service

I hereby certify that on this __10th__ day of January, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

> Michael D. Brock, Esq.
> Cary Wyatt Stout, Esq.
> Walter Allen Blakeney, Esq.
> David Gerald Poston, Esq.
> BROCK & STOUT
> PO Drawer 311167
> Enterprise, AL 36331-1167

> /s/ J. Kirkman Garrett
> OF COUNSEL

- 10 -

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

December 21, 2007

**Appeal Number: 07-15883-BB**
Case Style: William C. Carn, III v. Medical Data Systems
District Court Number: 07-00369 CV-A-S

TO:   James C. Huckaby, Jr.

CC:   Debra P. Hackett

CC:   J. Kirkman Garrett

CC:   John G. Parker

CC:   Stefanie Helen Jackman

CC:   Russel A. McGill

CC:   David G. Poston

CC:   Gary Wyatt Stout

CC:   Michael D. Brock

CC:   Administrative File

# United States Court of Appeals
### Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

December 21, 2007

James C. Huckaby, Jr.
Christian & Small LLP
505 20TH ST N STE 1800
BIRMINGHAM AL 35203-4633

**Appeal Number: 07-15883-BB**
Case Style: William C. Carn, III v. Medical Data Systems
District Court Number:  07-00369 CV-A-S

**THIS CIVIL APPEAL IS GOVERNED BY <u>MORE STRINGENT</u> PROCEDURES FOR REQUESTING EXTENSIONS OF TIME TO FILE BRIEFS AND RECORD EXCERPTS. RULES PROVIDE FOR <u>DISMISSAL WITHOUT FURTHER NOTICE</u> WHEN A BRIEF OR RECORD EXCERPTS IS NOT FILED OR CORRECTED WITHIN THE TIME PERMITTED. PLEASE SEE THE CIRCUIT RULES AT <u>WWW.CA11.USCOURTS.GOV</u>.**

The referenced case was docketed in this court on December 20, 2007. Please use the appellate docket number noted above when making inquiries. An appeal may be dismissed for failure to comply with the Federal Rules of Appellate Procedure and the rules of this court. Motions for extensions of time to file a brief are frowned upon by the court.

Pursuant to 11th Cir. R. 12-1, the record in this appeal was deemed completed and filed on the date the appeal was docketed in this court. Eleventh Circuit Rule 31-1 requires that APPELLANT'S BRIEF AND RECORD EXCERPTS BE SERVED AND FILED WITHIN FORTY (40) DAYS FROM THE DATE THE APPEAL WAS DOCKETED IN THIS COURT. This is the only notice you will receive concerning the due date for filing briefs and record excerpts. (In cross-appeals pursuant to Fed.R.App.P. 28(h), the party who first files a notice of appeal is the appellant unless the parties otherwise agree.) See Fed.R.App.P. 28, 30, 31 and 32, and the corresponding circuit rules, for further information on preparing briefs and record excerpts.

In addition to providing the required number of paper copies of briefs, all parties (except pro se parties) are required, additionally, to provide briefs in electronic format as described in 11th Cir. R. 31-5 and the enclosed instructions. Electronic briefs must be in Adobe Acrobat® PDF file format. The electronic brief must be completely contained in one PDF file, i.e., cover page through and including the certificate of service. The address wrapper accompanying this letter contains counsel's individual identification number (EDF ID) for electronic brief uploading. When uploading a brief for the first time, you will be prompted to register and create a password known only by you for all future uploads.

We have not yet received the Certificate of Interested Persons and Corporate Disclosure Statement (CIP) required by FRAP 26.1 and the accompanying circuit rules. The rules provide that the certificate must be filed by every appellant [and cross-appellant] with this court within 10 days after the appeal is docketed in this court, or along with the filing in this court by any party of any motion, petition, or pleading, whichever occurs first. The rules further provide that on the same day a paper certificate is served, the party filing it must also complete the court's web-based certificate at the "Electronic Filing" link of the court's website, www.ca11.uscourts.gov, by electronically providing the information required for that form. Only the ticker symbols for publicly traded corporations that are listed on the paper CIP must be entered in the web-based

system. If your CIP does not include any publicly traded corporations, you are required to go to the website and simply click the button indicating that you have no publicly traded corporations to report. Pro se parties are not required or authorized to complete the web-based certificate.

You are hereby notified that the clerk is not authorized to submit to the court any brief (except for the reply brief of an appellant or cross-appellant), petition, answer, motion or response that does not contain the certificate, but may receive and retain the papers pending supplementation of the papers with the required certificate. You are also hereby notified that failure to submit the required certificate will result in your document(s) being returned unfiled which may ultimately result in dismissal of your appeal.

Attorneys who wish to participate in this appeal must be properly admitted either to the bar of this court or for this particular proceeding pursuant to 11th Cir. R. 46-1, et seq. An attorney not yet properly admitted must file an appropriate application for admission within fourteen (14) days from this date. In addition, all attorneys who wish to participate in this appeal must complete and return an appearance form within fourteen (14) days from this date. Application forms and appearance forms are available on the Internet at www.ca11.uscourts.gov. The clerk may not accept motions or other filings from an attorney until that attorney files an appearance form. See 11th Cir. R. 46-5.

11th Cir. R. 33-1(a)(1) requires appellant to file "with the clerk of the court of appeals, with service on all other parties, an original and one copy of a completed Civil Appeal Statement within 10 days after filing the notice of appeal in the district court." Civil Appeal Statement forms are available on the Internet at www.ca11.uscourts.gov and as provided by 11th Cir. R. 33-1(a)(4).

MEDIATION. If a Civil Appeal Statement is required to be filed, your appeal and all related matters will be considered for mediation by the Kinnard Mediation Center. The mediation services are free and the mediation process is confidential. You may confidentially request mediation by calling the Kinnard Mediation Center at 404-335-6260 (Atlanta) or 813-301-5530 (Tampa) or 305-714-1900 (Miami). See 11th Cir. R. 33-1.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Jan Camp/wl/404-335-6171

DKT-7-CIV (10-2007)

## Baty, Sarah

**From:** efile_notice@almd.uscourts.gov
**Sent:** Friday, December 21, 2007 11:25 AM
**To:** almd_mailout@almd.uscourts.gov
**Subject:** Activity in Case 1:07-cv-00369-WHA Carn v. Medical Data Systems, Inc. USCA Case Number

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### U.S. District Court

### Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 12/21/2007 at 10:25 AM CST and filed on 12/21/2007
**Case Name:**       Carn v. Medical Data Systems, Inc.
**Case Number:**     1:07-cv-369
**Filer:**
**WARNING: CASE CLOSED on 12/04/2007**
**Document Number:** 36

**Docket Text:**
USCA Case Number 07-15883-BB for [25] Notice of Appeal filed by Medical Data Systems, Inc. (dmn)

**1:07-cv-369 Notice has been electronically mailed to:**

Walter Allen Blakeney    walter@circlecitylaw.com, christal@circlecitylaw.com, david@circlecitylaw.com

Michael Derek Brock    brockstout@enter.twcbc.com

John Kirkman Garrett    jkgarrett@csattorneys.com

James Cicero Huckaby , Jr    jch@csattorneys.com, jle@csattorneys.com

Stefanie Helen Jackman    stefaniejackman@paulhastings.com, juliarodney@paulhastings.com

Russel A. McGill    rumcgi@sbswlegal.com

John Garrett Parker    johnparker@paulhastings.com, candaceboudreau@paulhastings.com, sarahbaty@paulhastings.com

David Gerald Poston    david@circlecitylaw.com, christal@circlecitylaw.com,

walter@circlecitylaw.com

Gary Wyatt Stout     brockstout@enter.twcbc.com, lesley@circlecitylaw.com

**1:07-cv-369 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1053018227 [Date=12/21/2007] [FileNumber=851296-0
] [07a60dcaa73ec0857cbdf0ff51b61dec987f753534b2d68af09fda2e238b6a2d0bb
9f7d2c14ae6a3e9fd4ddaba69538326f19897100081c434ce5f7f462feee5]]

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY  AL  36104-4055

_____ December 21, 2007 _____

**Appeal Number: 07-15882-A**
Case Style: William C. Carn, III v. Medical Data Systems, Inc.
District Court Number:  07-00370 CV-A-S

TO:    James C. Huckaby, Jr.

CC:    Debra P. Hackett

CC:    J. Kirkman Garrett

CC:    John G. Parker

CC:    Stefanie Helen Jackman

CC:    Russel A. McGill

CC:    David G. Poston

CC:    Gary Wyatt Stout

CC:    Administrative File

# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.

Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

December 21, 2007

James C. Huckaby, Jr.
Christian & Small LLP
505 20TH ST N STE 1800
BIRMINGHAM AL 35203-4633

**Appeal Number: 07-15882-A**
Case Style: William C. Carn, III v. Medical Data Systems, Inc.
District Court Number: 07-00370 CV-A-S

**THE COURT HAS IMPLEMENTED A PROGRAM IN THIS DISTRICT REQUIRING PARTIES IN THIS APPEAL TO FILE EXPANDED RECORD EXCERPTS. PLEASE READ THE ENCLOSED INSTRUCTIONS FOR PREPARING EXPANDED RECORD EXCERPTS. THE ADDITIONAL REQUIREMENTS OF THE PROGRAM ARE MANDATORY AND NOT OPTIONAL.**

**THIS CIVIL APPEAL IS GOVERNED BY <u>MORE STRINGENT</u> PROCEDURES FOR REQUESTING EXTENSIONS OF TIME TO FILE BRIEFS AND RECORD EXCERPTS. RULES PROVIDE FOR <u>DISMISSAL WITHOUT FURTHER NOTICE</u> WHEN A BRIEF OR RECORD EXCERPTS IS NOT FILED OR CORRECTED WITHIN THE TIME PERMITTED. PLEASE SEE THE CIRCUIT RULES AT <u>WWW.CA11.USCOURTS.GOV</u>.**

The referenced case was docketed in this court on December 20, 2007. Please use the appellate docket number noted above when making inquiries. An appeal may be dismissed for failure to comply with the Federal Rules of Appellate Procedure and the rules of this court. Motions for extensions of time to file a brief are frowned upon by the court.

Pursuant to 11th Cir. R. 12-1, the record in this appeal was deemed completed and filed on the date the appeal was docketed in this court. Eleventh Circuit Rule 31-1 requires that APPELLANT'S BRIEF AND RECORD EXCERPTS BE SERVED AND FILED WITHIN FORTY (40) DAYS FROM THE DATE THE APPEAL WAS DOCKETED IN THIS COURT. This is the only notice you will receive concerning the due date for filing briefs and record excerpts. (In cross-appeals pursuant to Fed.R.App.P. 28(h), the party who first files a notice of appeal is the appellant unless the parties otherwise agree.) <u>See</u> Fed.R.App.P. 28, 30, 31 and 32, and the corresponding circuit rules, for further information on preparing briefs and record excerpts.

In addition to providing the required number of paper copies of briefs, all parties (except pro se parties) are required, additionally, to provide briefs in electronic format as described in 11th Cir. R. 31-5 and the enclosed instructions. Electronic briefs must be in Adobe Acrobat® PDF file format. The electronic brief must be completely contained in one PDF file, i.e., cover page through and including the certificate of service. The address wrapper accompanying this letter contains counsel's individual identification number (EDF ID) for electronic brief uploading. When uploading a brief for the first time, you will be prompted to register and create a password known only by you for all future uploads.

We have not yet received the Certificate of Interested Persons and Corporate Disclosure Statement (CIP) required by FRAP 26.1 and the accompanying circuit rules. The rules provide that the

certificate must be filed by every appellant [and cross-appellant] with this court within 10 days after the appeal is docketed in this court, or along with the filing in this court by any party of any motion, petition, or pleading, whichever occurs first. The rules further provide that on the same day a paper certificate is served, the party filing it must also complete the court's web-based certificate at the "Electronic Filing" link of the court's website, www.ca11.uscourts.gov, by electronically providing the information required for that form. Only the ticker symbols for publicly traded corporations that are listed on the paper CIP must be entered in the web-based system. If your CIP does not include any publicly traded corporations, you are required to go to the website and simply click the button indicating that you have no publicly traded corporations to report. Pro se parties are not required or authorized to complete the web-based certificate.

You are hereby notified that the clerk is not authorized to submit to the court any brief (except for the reply brief of an appellant or cross-appellant), petition, answer, motion or response that does not contain the certificate, but may receive and retain the papers pending supplementation of the papers with the required certificate. You are also hereby notified that failure to submit the required certificate will result in your document(s) being returned unfiled which may ultimately result in dismissal of your appeal.

Attorneys who wish to participate in this appeal must be properly admitted either to the bar of this court or for this particular proceeding pursuant to 11th Cir. R. 46-1, et seq. An attorney not yet properly admitted must file an appropriate application for admission within fourteen (14) days from this date. In addition, all attorneys who wish to participate in this appeal must complete and return an appearance form within fourteen (14) days from this date. Application forms and appearance forms are available on the Internet at www.ca11.uscourts.gov. The clerk may not accept motions or other filings from an attorney until that attorney files an appearance form. See 11th Cir. R. 46-5.

11th Cir. R. 33-1(a)(1) requires appellant to file "with the clerk of the court of appeals, with service on all other parties, an original and one copy of a completed Civil Appeal Statement within 10 days after filing the notice of appeal in the district court." Civil Appeal Statement forms are available on the Internet at www.ca11.uscourts.gov and as provided by 11th Cir. R. 33-1(a)(4).

MEDIATION. If a Civil Appeal Statement is required to be filed, your appeal and all related matters will be considered for mediation by the Kinnard Mediation Center. The mediation services are free and the mediation process is confidential. You may confidentially request mediation by calling the Kinnard Mediation Center at 404-335-6260 (Atlanta) or 813-301-5530 (Tampa) or 305-714-1900 (Miami). See 11th Cir. R. 33-1.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Deborah Owens (404) 335-6180

## Baty, Sarah

**From:** efile_notice@almd.uscourts.gov
**Sent:** Thursday, December 20, 2007 5:12 PM
**To:** almd_mailout@almd.uscourts.gov
**Subject:** Activity in Case 1:07-cv-00370-WHA Carn v. Medical Data Systems, Inc. USCA Case Number

This is an automatic e-mail message generated by the CM/ECF system. Please **DO NOT RESPOND** to this e-mail because the mail box is unattended.
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### U.S. District Court

### Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 12/20/2007 at 4:11 PM CST and filed on 12/20/2007
**Case Name:**       Carn v. Medical Data Systems, Inc.
**Case Number:**     1:07-cv-370
**Filer:**
**WARNING: CASE CLOSED on 12/05/2007**
**Document Number:** 34

**Docket Text:**
USCA Case Number 07-15882-A for [23] Notice of Appeal filed by Medical Data Systems, Inc. (dmn)

**1:07-cv-370 Notice has been electronically mailed to:**

Walter Allen Blakeney    walter@circlecitylaw.com, christal@circlecitylaw.com, david@circlecitylaw.com

Michael Derek Brock    brockstout@enter.twcbc.com

John Kirkman Garrett    jkgarrett@csattorneys.com

James Cicero Huckaby , Jr    jch@csattorneys.com, jle@csattorneys.com

Stefanie Helen Jackman    stefaniejackman@paulhastings.com, juliarodney@paulhastings.com

Russel A. McGill    rumcgi@sbswlegal.com

John Garrett Parker    johnparker@paulhastings.com, candaceboudreau@paulhastings.com, sarahbaty@paulhastings.com

David Gerald Poston    david@circlecitylaw.com, christal@circlecitylaw.com,

walter@circlecitylaw.com

Gary Wyatt Stout    brockstout@enter.twcbc.com, lesley@circlecitylaw.com

**1:07-cv-370 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1053018227 [Date=12/20/2007] [FileNumber=850813-0
] [7042751e15f97c388ea27b3c7168f5180f5bd229b511acbfbf84e03ed6aee1cdb9e
ac7aba60b3444b0291cc1ab6349b2a63c51470fc79b9815ff37fbdd95746f]]

BROCK & STOUT LLC
P. O. DRAWER 311167
ENTERPRISE, AL  36331-1167

James and Wendy Cambron
P.O. Box 464
Daleville AL 36322

December 18, 2007

In Reference To:  Cambron vs. Medical Revenue Services
                  AP # 06-01057, ALMD Case No.: 1:07-cv-369
                  AP # 06-01058, ALMD Case No.: 1:07-cv-370

Invoice #10303

       Professional Services

|  |  | Hrs/Rate |  | Amount |
|---|---|---|---|---|
| 4/17/2007 | Reviewed and made changes to final detailed billing. | 2.00 250.00/hr | DGP | 500.00 |
|  | Finalized and made changes to motions and fee affidavits. Filed same. | 0.30 75.00/hr | CAR | NO CHARGE |
| 4/18/2007 | Transcribed letter to clients providing update. | 0.20 75.00/hr | CAR | NO CHARGE |
|  | Dictated letter to clients providing update. | 0.20 250.00/hr | DGP | 50.00 |
| 4/20/2007 | Reviewed Defendant's objection to proposed findings of fact and conclusions of law. | 0.75 250.00/hr | DGP | 187.50 |
| 4/21/2007 | Began reading the cases cited in Defendant's Objection. Also began preparing outline for Plaintiff's response to Defendant's objection and counter arguments. | 3.44 250.00/hr | DGP | 860.00 |
|  | Reviewed Rule 9033(d). Researched rule 9033(d) on Lexis | 0.60 250.00/hr | DGP | 150.00 |
|  | Dictated memo to Walter to begin preparing response to Defendant's objection. Provided him my rough outline and advised him to print all cases cited in Defendant's objection. | 0.20 250.00/hr | DGP | 50.00 |
| 4/23/2007 | Assignment from David to begin Plaintiff's response. Initial review of Defendant's objection. Began research of 1692e; e(10) and e(5) case law. Printed off the cases cited in Medical Data's brief. | 4.80 125.00/hr | WB | 600.00 |

James and Wendy Cambron                                                        Page    2

|  | Hrs/Rate | | Amount |
|---|---|---|---|
| Highlighted those portions of the cases cited by Defendant. Reviewed trial brief prepared by David Poston. | | | |
| 4/23/2007 Reviewed Med Data's Objection to Judge Sawyer's Report and Recommendation. Discussion with David as to how we will proceed. David and Walt will prepare response. | 0.50 250.00/hr | MDB | NO CHARGE |
| Telephone call from Mike regarding the Defendant's Objection. Advised him that Walt and I have begun preparing a response in accordance with Judge Sawyer's time deadlines. | 0.10 250.00/hr | DGP | 25.00 |
| 4/24/2007 E-mail notice that the Defendant has ordered a transcript. | 0.10 250.00/hr | DGP | NO CHARGE |
| Research and writing. Began drafting reply brief. Met with David as to format of brief and the arguments to emphasize. | 4.30 125.00/hr | WB | 537.50 |
| Meetingt with Walt regarding reply brief. We need to prepare reply in same format as required by Bankruptcy Rule 8010. Also discussed the arguments to emphasize in the reply. | 0.60 250.00/hr | DGP | 150.00 |
| 4/25/2007 Research & brief preparation. Continued preparing response brief due next week. Also continued research for other cases necessary to complete brief. | 2.30 125.00/hr | WB | 287.50 |
| Brief Preparation. Additional work on brief to be turned in next week. | 0.60 125.00/hr | WB | 75.00 |
| 4/26/2007 Brief Preparation. Continued to work on response brief. | 0.50 125.00/hr | WB | 62.50 |
| 4/27/2007 Completed rough draft of Response to Defendant's Objection. Gave to David for review. | 3.10 125.00/hr | WB | NO CHARGE |
| Meeting with Walter regarding plaintiff's response. Walt has completed rough draft but is having difficulty formulating arguments based on Defendant's objection. Defendant argues that e(10) and e(5) are linked. Suggested that he continue to re-focus on issues rather than responding to the disjointed argument provided by Defendant. | 0.50 250.00/hr | DGP | 125.00 |
| Reviewed rough draft of Plaintiff's response. Began making revisions Plaintiff's response. Draft needs some work. | 3.60 250.00/hr | DGP | 900.00 |
| 4/29/2007 Continued revisions to Plaintiff's Response. | 3.50 250.00/hr | DGP | 875.00 |
| 4/30/2007 Reviewed documents transmitted from Bankruptcy Court to District Court. | 0.20 250.00/hr | DGP | 50.00 |

James and Wendy Cambron                                                    Page    3

|  |  | Hrs/Rate |  | Amount |
|---|---|---|---|---|
| 4/30/2007 | Meeting with Christal. Asked her to contact Bankruptcy Court to advise that we would file a response to the Defendant's objection. It appears that record was transmitted to District Court before time for filing Plaintiff's response. | 0.10 250.00/hr | DGP | 25.00 |
|  | Further revisions to Plaintiff's Reply to Defendant's Objection. Brief is not in correct format pursuant to Rule 8010. Also dictated citation format as required by 8010. Met with Walter and requested that he Shepardize all cases cited in brief. | 3.10 250.00/hr | DGP | 775.00 |
|  | Reviewed revised reply brief as changed by David Poston. Also shepardized all cases to make sure all were good law. Reviewed all citations to make certain cites were in correct blue book format. Gave Brief to David for final approval. | 2.60 125.00/hr | WB | 325.00 |
|  | Made final changes to substantive content in Plaintiff's response to Defendant's objections to findings of fact and conclusions of law. After receiving final draft, Walt and I re-read brief for any errors to make certain all citations were in correct blue book format and in accordance with Bankruptcy Rule 8010. | 3.40 250.00/hr | DGP | 850.00 |
|  | Final preparation for filing. I reviewed and dictated table of contents to indicate the page numbers for all citations in brief. David Poston signed without any further revisions. | 1.20 125.00/hr | WB | 150.00 |
| 5/11/2007 | Received notice indicating that the transcript has been filed regarding the trial on March 15, 2007. | 0.10 250.00/hr | DGP | NO CHARGE |
| 5/15/2007 | Email Notification; Received and reviewed Transcript of Proceedings filed by the U.S. District Court. | 0.10 250.00/hr | DGP | NO CHARGE |
|  | Email Notification; Received and reviewed Transcript of Proceedings filed by the U.S. District Court. | 0.10 125.00/hr | WB | NO CHARGE |
| 5/29/2007 | Defendant filed a response to Plaintiff's response. The Defendant's pleading is filed outside of time. Reviewed Defendant's response. Highlighted points made. I had a difficult time understanding Defendant's argument. Began review of cases cited in response. | 2.20 250.00/hr | DGP | 550.00 |
|  | Read and reviewed trial transcript regarding questioning of Gary Ball. Highlighted relevant sections including those answers wherein Ball indicated that the Defendant did not check for automobile ownership or real property ownership. | 1.75 250.00/hr | DGP | 437.50 |
|  | Received and reviewed Defendant's Response In Opposition To Plaintiff's Response To Defendant's Objections To Report And Recommendations. | 0.40 125.00/hr | WB | NO CHARGE |
|  | Dictated Plaintiff's Leave to File Reply to Defendant's Second Response. | 0.60 250.00/hr | DGP | 150.00 |

James and Wendy Cambron                                                      Page    4

| | Hrs/Rate | | Amount |
|---|---|---|---|
| 5/30/2007 Reviewed Plaintiff's motion for leave to respond. | 0.20<br>125.00/hr | WB | NO CHARGE |
| Email Notification; Received and reviewed Order Granting Motion For Leave To File Response To Defendant's Last Response. | 0.10<br>125.00/hr | WB | NO CHARGE |
| Reviewed Order Granting Motion For Leave To File Response To Defendant's Last Response. | 0.10<br>250.00/hr | DGP | NO CHARGE |
| Meeting with David & Christal. Discussed filing of motion for leave to respond to Defendant's last response, as well as a brief to follow within 15 days. | 0.10<br>125.00/hr | WB | NO CHARGE |
| Finalized and filed Motion For Leave To File Response To Defendant's Last Response. | 0.20<br>75.00/hr | CAR | NO CHARGE |
| Executed notice of appearance in this case. | 0.10<br>125.00/hr | WB | NO CHARGE |
| 5/31/2007 Meeting with Walter regarding response brief to be filed. Walter will conduct further research and prepare rough draft. I will polish up when complete. Discussed points made by Defendant in second response. Defendant seems to be focusing on the word "may." Advised Walter about the Brown case where the court of appeals shot down the "may" word. Also told Walter to focus on the FTC commentary. | 0.40<br>250.00/hr | DGP | 100.00 |
| Read and familiarized myself with Brown v. Card Services Center prior to beginning response brief. | 0.75<br>125.00/hr | WB | 93.75 |
| Conducted additional research in preparation for response brief. Focused on FTC commentary. | 2.40<br>125.00/hr | WB | 300.00 |
| 6/5/2007 Research regarding e10 and e5 violations being separate or interrelated. | 1.00<br>125.00/hr | WB | 125.00 |
| 6/8/2007 Continued research for reply brief to Defendant's response. | 1.00<br>125.00/hr | WB | 125.00 |
| 6/12/2007 Began outlining Plaintiff's reply brief and points to make. | 1.00<br>125.00/hr | WB | 125.00 |
| Began drafting response brief. | 1.20<br>125.00/hr | WB | 150.00 |
| 6/13/2007 Continued work on second reply brief. | 5.10<br>125.00/hr | WB | 637.50 |
| 6/14/2007 Finalized rough draft of Plaintiff's second reply brief. | 2.50<br>125.00/hr | WB | NO CHARGE |

James and Wendy Cambron

Page    5

|  | | Hrs/Rate | | Amount |
|---|---|---|---|---|
| 6/14/2007 | Made revisions to rough draft of second reply brief. | 0.80<br>125.00/hr | WB | NO CHARGE |
| 6/15/2007 | Made additional revisions and corrections to second response brief. | 1.30<br>125.00/hr | WB | NO CHARGE |
|  | Reviewed Walt's finalized draft of second response. Met with Walter regarding second reply brief. I am not pleased with the progress of this brief. Advised Walt to redraft and make changes as indicated. | 0.75<br>250.00/hr | DGP | 187.50 |
|  | Worked on re-drafting brief. | 2.20<br>125.00/hr | WB | NO CHARGE |
|  | Reviewed redrafted second reply brief prepared by Walter Blakeney. The brief still needs work. Made major revisions to the content of the brief. This brief was in response to the Defendant's response. | 7.00<br>250.00/hr | DGP | 1,750.00 |
|  | Reviewed and made final changes to brief. | 2.30<br>250.00/hr | DGP | 575.00 |
| 6/18/2007 | Dictated Conflict Disclosure Statement. | 0.20<br>250.00/hr | DGP | 50.00 |
| 6/19/2007 | Reviewed Defendant's latest response and Motion for Leave to File. Reviewed the response. It makes no new points. I will object | 0.75<br>250.00/hr | DGP | 187.50 |
|  | Telephone call to Mike Brock. Advised him of Defendant's third filing regarding Judge Sawyer's Report and Recommendation. We agreed that I would file no further responses if District Court overrules our objection. | 0.20<br>250.00/hr | DGP | 50.00 |
| 6/20/2007 | E-mail notification from court of Defendant's motion for leave to respond to Plaintiff's second response brief. | 0.10<br>125.00/hr | WB | 12.50 |
|  | Reviewed Defendant's motion for leave as well as accompanying response. | 0.30<br>125.00/hr | WB | 37.50 |
|  | Researched case cited in Defendant's motion for leave. | 0.20<br>125.00/hr | WB | 25.00 |
|  | Conference with Walter Blakeney. Advised him to draft objection to Defendant's latest brief. | 0.10<br>250.00/hr | DGP | 25.00 |
|  | Dictated objection to Defendant's motion for leave to respond. | 0.30<br>125.00/hr | WB | 37.50 |
| 6/22/2007 | Dictated changes to Plaintiff's Objection to Defendant's Motion for Leave to Respond. | 0.20<br>125.00/hr | WB | 25.00 |

James and Wendy Cambron                                                    Page      6

|  |  | Hrs/Rate |  | Amount |
|---|---|---|---|---|
| 6/26/2007 | Email Notification;  Received and reviewed Motion For Leave To File Documents Out Of Time by Russel A. McGill. | 0.10 125.00/hr | WB | NO CHARGE |
|  | Telephone call from Russ McGill.  Russ asked that I consent to him filing documents in the Wendy Cambron case.  Apparently, all of the other documents had been only filed in the James Cambron case.  Because the two are related, I consented to him filing the documents asking the court to deem the other documents filed in the Wendy Cambron case. | 0.20 250.00/hr | DGP | 50.00 |
|  | Reviewed motion for leave to file by Medical Data.  This is in accordance with my discussion with Russ McGill. | 0.10 250.00/hr | DGP | 25.00 |
| 7/2/2007 | Telephone call to John G. Parker's office (404) 815-2222.  He is the attorney who has filed the briefs in District Court.  I was transferred to Stephanie Jackman's office.  Discussed the Cambron case.  Russ McGill called her Friday at 5:00 P.M. to advise about the settlement document that is due today.  She e-mailed Mr. Parker and is also attempting to reach Gary Ball.  She will discuss resolution of all Medical Data cases and the possibility of opening up settlement discussions.  She will call me before the close of business. | 0.20 250.00/hr | DGP | 50.00 |
| 7/3/2007 | Email Notification;  Received and reviewed Motion To Appear Pro Hac Vice. | 0.10 250.00/hr | DGP | NO CHARGE |
|  | Email Notification;  Received and reviewed Motion To Appear Pro Hac Vice. | 0.10 125.00/hr | WB | NO CHARGE |
|  | Reviewed order granting John Parker's motion to appear Pro Hac Vice. | 0.10 250.00/hr | DGP | 25.00 |
|  | Reviewed order granting defendant's motion to file documents out of time. | 0.10 250.00/hr | DGP | 25.00 |
| 7/17/2007 | Telephone call from Stephanie Jackman.  Her firm will be taking over defense of the Medical Data cases.  She reviewed the docket and noticed that there was an unopposed motion for summary judgment.  We discussed effect of unopposed summary judgment motion.  We discussed staying all of the Federal Court cases.  Advised her of the pending summary judgment motions in the bankruptcy court which were stayed by Judge Williams pending resolution of the Cambron matter.  Discussed the motion to deem facts admitted that was filed in the Toney case.  Ultimately, I agreed that I would not oppose a motion to extend time for her to file a response to the summary judgment motion, but delayed a decision on the motion to stay proceedings pending a review of her draft.  She will e-mail me a proposed motion to stay proceedings. She will contact the judge's law clerks in the Andrews and Cambron matter to ascertain whether Judge Albritton is working on an opinion in Cambron and whether Judge Thompson is close to a decision in Andrews.  She will contact me tomorrow to discuss in | 0.47 250.00/hr | DGP | 117.50 |

James and Wendy Cambron                                                    Page    7

|  |  | Hrs/Rate |  | Amount |
|---|---|---|---|---|
|  | more detail. This conversation lasted 1 hour and 20 minutes. The time indicated herein is distributed pro rata amongst Andrews, Cambron and Toney. |  |  |  |
| 7/17/2007 | Meeting with Walter. Asked him to research Rule 42 and consolidation of all Medical Data cases as with Cambron. | 0.10 250.00/hr | DGP | 25.00 |
| 7/18/2007 | Researched the issue pertaining to consolidating all of our Medical Data cases in accordance with F.R.C.P. 42 and other such provisions of law. | 0.40 125.00/hr | WB | 50.00 |
|  | Meeting with Mike Brock. Discussed conversation with Ms. Jackman. His opinion is that we should not agree to any stay or extension of time. His opinion is that this matter has gone on too long. He asked me to contact Stephanie Jackman and advise her that we would oppose any judgment for extension of time and that we would oppose any stay of the matters. We can easily write a brief on appeal if we obtain a favorable summary judgment motion. He also advised that he would speak with her concerning this matter. The meeting lasted approximately 45 minutes. The time reflected herein is a pro rata distribution of hours amongst Andrews, Cambron, and Toney. | 0.25 250.00/hr | DGP | 62.50 |
| 7/19/2007 | Email Notification from District Court; Received and reviewed Notice of Appearance by John K. Garrett. | 0.10 250.00/hr | DGP | NO CHARGE |
|  | Email Notification; Received and reviewed Notice of Appearance by John K. Garrett. | 0.10 125.00/hr | WB | NO CHARGE |
| 7/20/2007 | Email Notification; Received and reviewed Notice of Deficiency requiring filing of Corporate Disclosure / Conflict Statement directed to Defendant.. | 0.10 125.00/hr | WB | NO CHARGE |
|  | Email Notification from District Court notifying Defendant of Deficiency requiring filing of Corporate Disclosure / Conflict Statement. | 0.10 250.00/hr | DGP | NO CHARGE |
|  | Email Notification; Received Docket Text entry adding James Huckaby, Jr. as attorney for Defendant. | 0.10 125.00/hr | WB | NO CHARGE |
|  | Email Notification from District Court; Received Docket Text entry adding James Huckaby, Jr. as attorney for Defendant. | 0.10 250.00/hr | DGP | NO CHARGE |
|  | Email Notification from District Court notifying me that Corporate/Conflict Disclosure Statement was filed. | 0.10 250.00/hr | DGP | NO CHARGE |
| 8/10/2007 | Reviewed Judge Sawyer's Order granting Motion For Attorney Fees. | 0.10 250.00/hr | DGP | 25.00 |
|  | Email Notification; Received Order granting Motion For Attorney Fees. | 0.10 125.00/hr | WB | NO CHARGE |

James and Wendy Cambron                                                    Page    8

|  |  | Hrs/Rate |  | Amount |
|---|---|---|---|---|
| 12/4/2007 | Email Notification;  Received and reviewed District Court Memorandum Opinion and Judgment. | 0.20<br>125.00/hr | WB | NO CHARGE |
|  | Reviewed District Court Memorandum Opinion and Judgment. Judge Albritton overruled Defendant's objection. | 0.40<br>250.00/hr | DGP | 100.00 |
| 12/11/2007 | Began first review of time slip entries with eye toward billing discretion. | 2.20<br>250.00/hr | DGP | 550.00 |
|  | Telephone call to Jerry Templeton.  Forwarded all pleadings and asked him to review.  Provided history of District Court Review and asked him to provide affidavit.  After reviewing, he will call if any questions. | 0.40<br>250.00/hr | DGP | 100.00 |
| 12/12/2007 | Research regarding Fed R. Civ. Pro. 54(d)(2)(B). | 0.40<br>250.00/hr | DGP | 100.00 |
|  | Research regarding Fed R. Civ. Pro. 59(e). | 0.10<br>250.00/hr | DGP | 25.00 |
|  | Reviewed Judge Sawyer's Report and subsequent Order regarding attorney fees. | 0.40<br>250.00/hr | DGP | 100.00 |
|  | Dictated Motion To Alter or Amend requesting Judge Albritton incorporate Judge Sawyer's Order on attorney fees in the final judgment. | 0.60<br>250.00/hr | DGP | 150.00 |
|  | Preparation of pleadings--Transcribed Motion To Alter or Amend Judgment. | 0.30<br>75.00/hr | CAR | NO CHARGE |
|  | Telephone call to Nick Wooten.  Discussed fee application and history of case.  Inquired as to his hourly rate and whether he would prepare affidavit.  He wants to see history and pleadings in case.  Will review and provide affidavit. | 0.40<br>250.00/hr | DGP | 100.00 |
| 12/13/2007 | Telephone call from Ed Wayland.  He was returning my call. Questioned him about his Consumer experience and legal experience.  Discussed market rate for the Middle District. Discussed history of the Cambron case and its current posture.  He agreed to review the history and prepare affidavit for me. | 0.30<br>250.00/hr | DGP | 75.00 |
|  | Telephone call from Christy Crow.  She was returning my call. Questioned her about her hourly rate in consumer cases.  Most of her consumer work is on a pure contingency where she doesn't keep up with hours.  Her firms hourly rate in Bullock County is $300 to $350.  I may need to get an affidavit for hourly rates generally. | 0.30<br>250.00/hr | DGP | 75.00 |
| 12/14/2007 | Final review of bill. | 0.50<br>250.00/hr | DGP | 125.00 |

James and Wendy Cambron                                                  Page    9

|  |  | Hrs/Rate |  | Amount |
|---|---|---|---|---|
| 12/14/2007 | Research case law regarding award of attorney fees for appeal work and for defending fee application. | 2.80 250.00/hr | DGP | 700.00 |
| 12/17/2007 | Reviewed Affidavit submitted by Ed Wayland | 0.10 250.00/hr | DGP | 25.00 |
|  | Reviewed Affidavit submitted by Nick Wooten | 0.20 250.00/hr | DGP | 50.00 |
|  | Telephone call from Jerry Templeton.  He is attempting to send his affidavit by email.  Not going through. | 0.10 250.00/hr | DGP | NO CHARGE |
|  | Dictated brief in support of motion for attorney fees. | 4.60 250.00/hr | DGP | 1,150.00 |
|  | For professional services rendered |  | 98.31 | $17,246.25 |
|  | Balance due |  |  | $17,246.25 |

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| | ) | |
| JAMES R. CAMBRON & | ) | 1:07-CV-00369-WHA |
| WENDY L. CAMBRON, | ) | |
| | ) | 1:07-CV-00370-WHA |
| | ) | |
| | ) | CASE NO. 05-11879 |
| Debtors. | ) | CHAPTER 7 |
| -------------------------------------------------- | )- | |
| | ) | |
| WILLIAM C. CARN, III., | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | A.P. NO.: 06-1057 |
| Plaintiff, | ) | |
| | ) | |
| WILLIAM C. CARN, III., | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | A.P. NO.: 06-1058 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC., | ) | |
| d/b/a MEDICAL REVENUE SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR ADDITIONAL ATTORNEY FEES

### I. INTRODUCTION

In accordance with Rule 54(d)(2)(B), Fed. R. Civ. Proc. and the Fair Debt Collection

Practices Act (hereinafter, "FDCPA"), 15 U.S.C. § 1692k(a)(3), the Plaintiff requests an award of

additional attorney fees in an amount determined reasonable by this Honorable Court.

Although the Plaintiff sought only statutory damages in this matter, the Defendant has

defended its position throughout this entire litigation.  Now that the Plaintiff has successfully

prosecuted his claims, the FDCPA requires the Defendant pay the undersigned attorney fees. In addition, the Defendant must also pay the undersigned attorney fees for defending this matter on appeal and for preparing the additional fee application. The Fifth Circuit Court of Appeals (now the Eleventh Circuit) stated, "the [Plaintiff's] counsel did not inflate this small case into a large one; its protraction resulted from the stalwart defense. Although Defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost. *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981).

## II.  HISTORY OF CASE

Pursuant to Fed. R. Evid. 201, the Plaintiff requests this Honorable Court take judicial notice of the following facts contained on the record of the Clerks of Court, United States District Court and United States Bankruptcy Court, Middle District of Alabama; the pleadings contained therein, and the evidence submitted at trial and reviewed *de novo* by this Honorable Court. The following facts are relevant to this motion:

1.    On April 18, 2006, James Cambron filed the instant lawsuit against Medical Data Systems, Inc.

2.    On April 18, 2006, Wendy Cambron filed the instant lawsuit against Medical Data Systems, Inc.

3.    The Plaintiff's complaints asserted that the Defendant's form debt collection letter, identified as the PL1 letter, violated various provisions of the FDCPA.

4.    On March 15, 2007, the Honorable William R. Sawyer held a trial on the merits of the Plaintiff's complaints.

5.    On April 5, 2007, the Honorable William R. Sawyer entered a Report And Recommendation finding liability against the Defendant pursuant to 15 U.S.C. §§ 1692e(5) & e(10).

6.   As part of the Report And Recommendation, Judge Sawyer also awarded the undersigned a reasonable attorney fee. Judge Sawyer ordered the undersigned to file a fee petition and affidavit within fifteen (15) days of the recommendation. The Defendant was also permitted an additional fifteen (15) days to lodge an objection to the undersigned's attorney fees.

7.   On April 17, 2007, the undersigned submitted his attorney fee application and affidavit.

8.   The Defendant did not respond to the attorney fee application and affidavit.

9.   On April 30, 2007, the Bankruptcy Court Clerk of Court transmitted the record of the proceedings below to this Honorable Court.

10.  On May 29, 2007, the Defendant filed a reply to the Plaintiff's response to the Defendant's objection.

11.  On May 30, 2007, the Plaintiff filed a motion for leave to reply to Defendant's response.

12.  On May 30, 2007, this Honorable Court granted Plaintiff leave to reply to Defendant's response.

13.  On June 15, 2007, the Plaintiff filed a second reply to Defendant's response.

14.  On June 19, 2007, the Defendant filed a motion for leave to file a reply to Plaintiff's second response.

15.  On June 22, 2007, the Plaintiff objected to the Defendant's motion for leave to file a reply to the Plaintiff's second response.

16.  On July 3, 2007, this Honorable Court entered an order denying the Defendant's motion for leave to file a reply to Plaintiff's second response.

17.  On August 10, 2007, Judge William R. Sawyer entered an order awarding attorney fees and costs in the amount of $29,536.78 for professional services rendered through April 12, 2007.

18.  Since Judge Sawyer entered his Report And Recommendation, this case has been

vigorously defended by the Defendant, including its objection to the Report And
Recommendation along with two replies to the Plaintiff's responses.

19.    Likewise, this case was vigorously prosecuted by the Plaintiff in an effort to prove that the
Defendant's form debt collection letter violated the FDCPA.

20.    On December 4, 2007, this Honorable Court entered its Memorandum Opinion adopting
Judge Sawyer's Report And Recommendation. Further, this Honorable Court entered a
Judgment in favor of the Plaintiff, in both actions, for the maximum statutory damages,
attorney fees, and costs for prosecuting this case.

### III. LEGAL ARGUMENTS

A.    The judgment in Plaintiff's favor constitutes a "successful action." Therefore, Plaintiff is
entitled to an award of attorney fees and costs.

The FDCPA specifically mandates an award of attorney fees and costs of "any successful
action to enforce [FDCPA] liability...." 15 U.S.C. § 1692k(a)(3). Several courts noted that the
FDCPA fee shifting provision was enacted to provide Plaintiff an ability to retain able counsel.
*Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997); *Tolentino v.
Friedman*, 46 F.3d 645, 652 (7th Cir. 1995).

B.    Attorney fees are mandatory for successful litigants.

15 U.S.C. § 1692k(a)(3) states that "any debt collector who fails to comply with [the
FDCPA] with respect to any person is liable to such person in an amount equal to the sum of...a
reasonable attorney's fee as determined by the Court." In propounding the FDCPA, Congress made
clear that successful litigants were entitled to a recovery of attorney fees from the offending
Defendant. In the present case, the Defendant was found liable to the Plaintiff for the maximum
amount requested in the complaints. Because the Plaintiff only sought statutory damages, the
award of $1,000.00, in each case, represents the entire amount prayed for in the Plaintiff's

complaint. The plain meaning of the FDCPA mandates an award of attorney fees. *Emanuel v. American Credit Exchange*, 870 F. 2d 805, 809 (2d Cir. 1989); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F. 2d 22, 28 (2d Cir. 1989); *Joe v. Payco-General Am. Credits*, 1994 U.S. App. LEXIS 23900 (9th Cir. 1994); *Carroll v. Wolpoff & Abramson*, 53 F. 3d 626, 628-29 (4th Cir. 1995); *Graziano v. Harrison*, 950 F. 2d 107, 114 & n.13 (3d Cir. 1991); *Zagorski v. Midwest Billing Svc.*, 128 F. 3d 1164 (7th Cir. 1997).

Attorney fees are discretionary only to the extent of reasonableness. In defining reasonableness, and performing the requisite lodestar analysis, the record presents ample evidence of the defense presented in this case. As was its right, the Defendant chose to seek this Honorable Court's *de novo* review of the Bankruptcy Court's Report And Recommendation. The undersigned's additional fee request represents the required labor expended in responding to the Defendant's objections and responses. Furthermore, the Plaintiff was highly successful, and the Plaintiff's attorney fees and costs should be awarded as requested. This case, like any Federal litigation, was not simple or easy. This litigation was time consuming and labor extensive. Plaintiff's counsel is entitled to compensation for their fees and expenses submitted in this matter.

C.     Plaintiff is entitled to an award of additional attorney fees for post trial labor.

A prevailing Plaintiff in a fee shifting case is entitled to an award of reasonable attorney's fees and related expenses incurred in defending a favorable judgment on appeal. *Villano v. City of Boynton Beach*, 254 F. 3d 1302, 1310 (11th Cir. 2001) ("post judgment advocacy may generally be included in a Section 1988 award."). "The relevant inquiry for determining whether fees should be awarded for an appeal is simply whether the party seeking compensation substantially prevailed at the appellate level." *Evans v. City of Evanston*, 941 F.2d 473, 475 (7th Cir. 1991)(quotation and citation omitted); *accord, In the Matter of Pine*, 705 F.2d 936, 939 (7th Cir. 1983); *de Jesus*

v. Banco Popular de Puerto Rico, 918 F.2d 232, 235-236 (1st Cir. 1990); Chemical

Manufacturers Association v. U.S. Environmental Protection Agency, 885 F.2d 1276, 1279-1280

(5th Cir. 1989); Lattimore v. Oman Construction, 868 F.2d 437, 440 (11th Cir. 1989); Varner v.

Century Finance Company, Inc., 738 F.2d 1143, 1149 (11th Cir. 1984).

Although the Bankruptcy Court's Report And Recommendation was not an appeal pursuant

to Rule 8001(a), Fed. R. Bankr. Proc., the Bankruptcy Court's findings were reviewed de novo

pursuant to Rule 9033 in a manner substantially similar to an appeal. See generally Fed. R. Bankr.

Proc. 9033. As such, Plaintiff's counsel should be compensated for its various responses at the

District Court level. In addition to the time spent defending its favorable result, Plaintiff's counsel

must also be awarded their time spent litigating this additional fee claim. Thompson v. Pharm.

Corp. of Am., Inc., 334 F.3d 1242, 1245-1246 (11th Cir. 2003). As the Honorable Judge Posner

stated, "the entry of judgment is not the end of the litigation; in this case, it may not even be the

beginning of the end. It would make no more sense to deny attorney's fees for efforts to collect a

judgment than it would to deny them for efforts to defend a judgment on appeal." Free v. Briody,

793 F.2d 807, 809 (7th Cir. 1986). "Any other approach would defeat the Congressional purpose

in awarding fees by diluting an award of fees by the possible costs imposed on attorneys for

extensive uncompensated litigation to secure their fees." Balark v. Curtin, 655 F.2d 798, 803 (7th

Cir. 1981).

D.    Attorney fees are calculated according to a three step process

As enunciated by the Eleventh Circuit Court of Appeals, attorney fees are decided by a

three-step process. Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000). First,

this Honorable Court must look to the Plaintiff's successful result. That is, the Plaintiff is a

prevailing party as to obtaining the maximum statutory damages. Dillard 213 F.3d at 1353.

Therefore, the first prong is satisfied insomuch as the Plaintiff is a prevailing party. Second, "the

court calculates the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in

the legal work on the case multiplied by a reasonable market rate in the local area. *Id.* at 1353

*citing ACLU v. Barnes*, 168 F.3d 423 (11th Cir. 1999); *Duckworth v. Whisenant*, 97 F.3d 1393,

1396 (11th Cir. 1996). The final step in the process is the adjustment of the 'lodestar' to account

for other considerations...not yet figured in the computation, the most important being the relation

of the results obtained to the work done." *Dillard* at 1347 *citing Hensley v. Eckerhart*, 461 U.S.

424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

      1.     Plaintiff was the Prevailing Party

The first prong of the attorney fee analysis is the easiest for this Honorable Court. At the

Bankruptcy Court, below, Judge Sawyer issued a Report And Recommendation finding the

Defendant liable for its form debt collection letter. On *de novo* review, this Honorable Court also

found that the Defendant's form debt collection letter violated the FDCPA and affirmed the

Bankruptcy Court's award of $1,000.00 in each case. Because the complaint sought only

statutory damages, the award of $1,000.00 per case was the maximum amount requested. As

such, the Plaintiff was clearly the prevailing party.

      2.     Calculation of Lodestar

In calculating the "lodestar" figure, this Honorable Court multiplies the hours reasonably

expended times an allowed hourly rate. See *Hensley v. Eckerhart*, 103 S.Ct. 1933, 1939 (1983)

(viewing an award of fees under 42 U.S.C. §1988). Plaintiff's counsel bears the burden of proving

that the fee request is reasonable, with a strong presumption that the lodestar amount represents a

fair and appropriate fee award. *Hensley*, 103 S.Ct. at 1941.

Although the Supreme Court decided *Hensley* in the context of a civil rights case, the

lodestar analysis applies to all cases involving an attorney fee shifting statute. The Supreme Court has "stated in the past that fee shifting statutes [with] similar language is 'a strong indication' that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 109 S. Ct. 2732, 105 L. Ed.2d 639 (1989) (*quoting Northcross v. Memphis Bd. Of Education*, 412 U.S. 427, 428, 93 S. Ct. 2201, 2202, 37 L. Ed.2d 48 (1973).) *See also City of Burlington v. Dague*, 112 S. Ct. 2638, 2641 (1992) (clean water act case applying lodestar analysis); *Simpson v. Sheahan*, 104 F.3d 998, (7th Cir. 1997) (civil rights case); *DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending case); *Piekarski v. Home Owners Savings Bank*, F.S.B., 755 F. Supp. 859, 863 (D. Minn 1991) (retaliatory discharge case).

The hourly rate is derived from the prevailing market rate with consideration for the attorneys years of experience and expertise. *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). The determination of the allowable hours rests with the sound discretion of the trial court. *Hensley*, 103 S. Ct. at 1941.

### 3.    Adjustment of Lodestar Due to Other Considerations

In the final prong of the attorney fee determination, this Honorable Court has the discretion "to adjust the lodestar to account for other considerations that have not yet figured in the computation...." *Dillard* at 1353. It is notable that the Eleventh Circuit Court of Appeals found the "relation of the results obtained to the work done" as an important factor. *Id.*

### E.    Plaintiff's attorney charged a reasonable hourly rate.

The undersigned counsel's current hourly rate of $250 per hour is reasonable. The undersigned successfully resolved hundreds of consumer litigation cases since devoting himself to representing consumers in 1992. After completing law school, the undersigned immediately

focused on consumer bankruptcy by clerking for respected United States Bankruptcy Judges. Upon entering private practice, in 1992, the undersigned devoted himself to representing consumers in the majority of the cases he filed. By its very nature, consumer rights work is statutory intensive and is primarily conducted in the Federal arena. In 2004, the undersigned further refined his practice to focus more on the area of consumer rights and consumer litigation. The undersigned has handled hundreds of consumer cases through trial, settlement, or demand to protect consumer rights for violations of the various consumer law statutes.

On April 1, 2006, the undersigned left his successful bankruptcy practice to oversee a newly formed Consumer Rights Litigation Department at the law firm of Brock and Stout. Since that time, the undersigned has devoted himself completely to consumer rights and litigation.

This counsel respectfully asserts that given the depth and breadth of his expertise in the area of FDCPA litigation, his hourly rate of $250 is entirely reasonable for this market. In fact, as evidenced by the affidavits, the undersigned's requested hourly rate appears to be at the lower end of the spectrum for the current market rate in the Middle District of Alabama. And, in the end, it is difficult to argue the excellent results obtained by counsel.

F.    The proportion of attorney fees to Plaintiff's actual recovery is irrelevant

Proportionality refers to the amount of attorney fees in comparison to the amount of damages awarded Plaintiff. The issue of proportionality was rejected by the Supreme Court in *Riverside v. Riviera*, 477 U.S. 561, 574 (1986)("We reject the proposition that fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.") Instead, the issue of proportionality has no bearing on the instant case. As was its right, the Defendant chose to object to the bankruptcy Court's Report And Recommendation and defend its position the end. In response to the Defendant's strategy, Plaintiff's counsel expended great labor in addressing and countering the Defendant's objections

and arguments. It was, after all, the Defendant's objections and responses which resulted in the

labor expended by Plaintiff's counsel.

In the context of a similar Consumer Credit Protection Act statute, the Fair Credit Reporting

Act, ("FCRA"), the Fourth Circuit stated:

> Proportionality of attorneys' fees to the amount recovered is not
> required in every action brought pursuant to the FCRA. Since there
> will rarely be extensive damages in an FCRA action, requiring that
> attorney's fees be proportionate to the amount recovered would
> discourage vigorous enforcement of the Act.

*Yoyay v. City of Alexandria Employees Credit Union, Inc.* 827 F.2d 967, 974 (4th Cir. 1987).

Under the FDCPA, the Seventh Circuit noted that the "cumulative effect of petty violations ...

may not be petty" and thus a case involving a small amount of damages is no justification to deny

attorney fees. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997)

(*quoting*) *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997).

An exception to the bar against proportionality arises on the recovery of nominal damages.

*See*, e.g. *Farrar v. Hobby*, 506 U.S. 103 113 (1992) (Plaintiff demanding $17 million dollars but

recovering nominal damage of $1.00 is entitled to no attorneys fees under civil rights statute);

*Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 630 (4th Cir. 1995)(FDCPA Plaintiff seeking

$1,000.00 statutory damages but recovering $50.00 in statutory damages, had attorney fee

request for $10,000.00 reduced to $500.00); *but see Zagorski v. Midwest Billing Services, Inc.*,

128 F.3d 1164 (7th Cir. 1997)(trial court's denial of attorney fees, after Plaintiff's recovery of

$100.00 statutory damages, constituted an abuse of discretion).

Nevertheless, an inadequate or nominal recovery is simply not an issue in the case at hand.

The Plaintiff received the full extent of the requested relief. This amount cannot reasonably be

construed as nominal damages, and the Plaintiff's attorneys are therefore entitled to a full attorney

fee award. Courts have encountered many examples of fee awards disproportionate to damage

awards. *See City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed.2d 466 (1986)

($245,456.25 in attorney fees, $33,350.00 in damages); *Building Service Local 47*, 46 F.3d

1392 (6th Cir. 1995) (ERISA case, $70,185.95 in attorney fees, $25,598.71 in damages);

*Northwest Women's Center v. McMonagh*, 889 F.2d 466 (3rd Cir. 1989)(RICO case, over

$60,000.00 in attorney fees, $2,661.00 damages); *Duval v. Midwest Auto City, Inc.*, 578 F.2d

721, 726 (8th Cir. 1978) (Federal Odometer case, over $14,000 attorney fees, $3,000 in

damages); *Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) (FDCPA case, $10,110 in attorney

fees, $1,200 damages).

In 2002, the Court for the District of Minnesota found that an attorney fees and costs

award of $44,655.29 was reasonable in an FDCPA case where the Plaintiffs statutory recovery was

$1,000.00. *Armstrong v. Rose Law Firm, P.A.* - Court File 00-2287 (MJD/SRN), 2002 WL

31050583. "The Court finds that Plaintiff's attorneys' fees and costs [of $44,655.29] are

reasonably proportional. While they far exceed the [$1,000] statutory damages award in the

present case, Plaintiff did not choose to create this disparity. Defendant aggressively defended this

case, as was its right. ... This defense produced a large amount of litigation, and significantly

increased the number of hours Plaintiffs attorney committed to this case." *Id*.

The issue before this Court is no different than that which the *Armstrong* court confronted.

That is, a Defendant that vigorously fights, even after being held liable, over the inevitable damage

award occasioned by violations of the FDCPA, must stand ready to accept the fee awards inevitably

occasioned by such a defense.

G.    Plaintiff's attorneys exercised sound discretion in deleting and "no charging" appropriate
      amounts of time prior to their application for additional fees to this Court

Since the inception of this litigation, Plaintiff's counsel maintained "contemporaneous time

records" for labor expended in prosecuting the Plaintiff's cause of action. In addition, Plaintiff's

counsel is under mandate to exercise billing discretion. In keeping with this mandate, the

undersigned "no charged" $1,912.50 of attorney and paralegal time. The undersigned attorney has
meticulously reviewed and deleted all apparent duplication and questionable work product.

H.   The Defendant's litigation strategy led to higher attorney fees and costs for the Plaintiff

Even after the Bankruptcy Court determined the Defendant's form debt collection letter

violated the FDCPA, the Defendant chose to object and seek this Honorable Court's *de novo* review.

By continuing in its conviction that the form debt collection letter did not violate the FDCPA, the

Defendant cannot complain about the extent of hours expended by Plaintiff's counsel in responding

to the Defendant's objection to the Bankruptcy Court's Report And Recommendation. The Fifth

Circuit Court of Appeals (now the Eleventh Circuit Court of Appeals), in *McGowan v. King*, Inc., 661

F.2d 48, 51 (5th Cir. 1981), laid bear the ugly practicalities of consumer litigation when it held:

> The borrower's counsel did not inflate this small [truth-in-lending]
> case into a large one; its protraction resulted from the stalwart
> defense. And although Defendants are not required to yield an inch
> or to pay a dime not due, they may by militant resistance increase
> the exertions required of their opponents and thus, if unsuccessful,
> be required to bear the cost.

Over the years, various courts have addressed those Defendants who erect a "stallingrad"

defense in the face of litigation. See *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 667

(D. La. 1976).

The Defendant cannot be heard to complain about the requested additional attorney fees

after two (2) courts have found the Defendant's form debt collection letter as violating the FDCPA.

Furthermore, the Defendant has never taken any action to limit the damages, attorneys' fees and

expenses of this litigation. See *Thiebes v. Wal-Mart Stores, Inc.*, 2007 U.S. App. LEXIS 4063 (9th

Cir. 2007)("When a defendant employs a scorched earth strategy, unreasonably increasing a

plaintiff's litigation expenses, the defendant can expect to pay for the attorney fees it forces the

plaintiff to incur."); *Copeland v. Marshall*, 205 U.S. App. D.C. 390 (D.C. Cir. 1980)("The

government cannot litigate tenaciously and then be heard to complain about the time necessarily

spent by the plaintiff in response."); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir.

1977)("Obviously, the more stubborn the opposition the more time would be required, so that

counsel received their compensation for the extra effort thus required."); *State Farm Fire &*

*Casualty v. Palma*, 555 So.2d 836, 837 (Fla. 1990)("It appears State Farm decided to 'go to the

mat' over the bill . . . . Having chosen to stand and fight over this charge, State Farm, of course,

made a business judgment for which it should have known a day of reckoning would come should it

lose in the end.").

## CONCLUSION

From the onset of this litigation, the Defendant chose to vigorously defend this lawsuit even

through two (2) Court Opinions finding the Defendant's form PL1 debt collection letter as violating

the FDCPA. Even to this day, the Defendant contests the finding of liability. The Defendant's

course of action has dictated the Plaintiff's staunch prosecution of this matter. Now, Plaintiff's

counsel requests this Honorable Court fairly and adequately compensate them for their successful

efforts.

For all of the foregoing reasons, the Plaintiff's respectfully request this Court order the

Defendant to pay Plaintiffs' counsels at a minimum, the requested attorney fees and costs

submitted on their fee application dated December 18, 2007;

Find that the prevailing market rate between $250 and $300 per hour for the undersigned

attorney fees;

Find $125.00 per hour for the associate attorney's work; and,

Such other amount as the Court may deem appropriate.

Respectfully submitted,

BROCK & STOUT

David G. Poston, Esq.
Walter A. Blakeney, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon Stefanie H. Jackman, Esq., and J. Kirkman Garrett, Esq., Attorneys for Defendant, via electronic mail at stefaniejackman@paulhastings.com and jkgarrett@csattorneys.com, this 18th day of Dec. , 2007.

David G. Poston

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALBERT THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    CASE #: 1:05-CV-938 |
| | ) |
| D.A.N. JOINT VENTURE III, L.P., | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S REPLY BRIEF IN RESPONSE TO DEFENDANT'S OBJECTION TO ATTORNEY FEES

### I. INTRODUCTION

In accordance with the Fair Debt Collection Practices Act (hereinafter, "FDCPA"), 15 U.S.C. § 1692k(a)(3), the Plaintiff requests an award of attorney fees in an amount determined reasonable by this Honorable Court.

The Plaintiff, Albert Thompson, submits this Response to Defendant's Objections to Plaintiff's Motion for Award of Attorney Fees and Costs.

Throughout this litigation, even in the face of liability for violating the FDCPA, the Defendant has conceded no point and given no quarter. Indeed, the majority of the labor expended is of the Defendant's own making. Certainly, the Defendant is entitled to fight to the end. That is its right. But surely, the Defendant knows that it is responsible for the end result. Now, the Defendant objects to the requested attorneys' fee based on two theories: (1) The Plaintiff did not need two lawyers; and (2) The Plaintiff's lawyers, most notably, the undersigned, expended too many hours in obtaining a highly effective result. Indeed, a brief trip down memory lane shows this Defendant fighting over every square inch of sand. Even the Plaintiff can attest to the Defendant's "scorched earth policy." Mr. Thompson and his wife have dealt with this Defendant for over three years. Now

the Court is faced with a disingenuous argument that the attorney fees should be substantially reduced because the Plaintiff only needed one lawyer to handle such a routine, non-complex matter such as this.

As though somehow foreseeing the future, the Fifth Circuit Court of Appeals in 1981 stated, "The [Plaintiff's] counsel did not inflate this small case into a large one; its protraction resulted from the stalwart defense. Although Defendant is not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost. *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981).

## II. HISTORY OF CASE

Pursuant to Fed. R. Evid. 201, the Plaintiff requests this Honorable Court take judicial notice of the following facts contained on the record of the Clerk of Court, the pleadings, and un-controverted and un-rebutted evidence submitted at trial. The following facts are relevant to this motion: (Doc cites from a review of the Docket report in this matter on some items)

1.  On October 3, 2005, the Plaintiff, Albert Thompson, filed the instant lawsuit against D.A.N. Joint Venture, III, LLP.

2.  The genesis of the Plaintiff's complaint allege that the Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* (hereinafter "FDCPA") by filing a time-barred collection action in the Alabama State Court.

3.  On October 11, 2005, the Defendant was duly served with the summons and complaint.

4.  The undersigned attorney prepared and filed the complaint.

5.  On October 27, 2005, co-counsel, Gerald A. Templeton, entered his appearance on behalf of the Plaintiff.

6.   On November 10, 2005, the Defendant filed an Answer to the Plaintiff's Complaint and
     denied that the Alabama State Court action was filed outside of the statute of limitations.

7.   On January 3, 2006, this Honorable Court ordered an "in-person" scheduling conference for
     January 25, 2006, at 10:00 A.M. in Montgomery, Alabama.

8.   On January 25, 2006, Plaintiff's counsel attended the in-person scheduling conference in
     Montgomery, Alabama.

9.   At the in-person scheduling conference, this Honorable Court ordered the Plaintiff to file a
     written notice of any objective damages and further directed the Plaintiff to itemize any
     objective damages.  On February 28, 2006, pursuant to this court's order, the Plaintiff filed
     his statement of objective damages.

10.  On March 8, 2006, this Honorable Court entered an order to show cause as to why the
     dispute between the Plaintiff and Defendant cannot be resolved on submission of briefs on
     the issue of the applicablility of the statute of limitations.

11.  On March 21, 2006, the Plaintiff responded to the order to show cause.

12.  On May 1, 2006, the Plaintiff filed a reply brief in response to the Defendant's response
     regarding the order to show cause.

13.  On May 25, 2006, this Honorable Court entered an order directing the parties to proceed
     with this lawsuit.

14.  On June 26, 2006, Plaintiff served Defendant with discovery requests consisting of
     interrogatories, request for admissions, and request for production of documents.

15.  On December 29, 2006, the Plaintiff filed a motion for partial summary judgment.  In
     support of his motion, the Plaintiff also drafted and filed a memorandum of law.

16. On January 31, 2007, the Plaintiff and Defendant conducted a face-to-face settlement conference. At the conference, the Plaintiff made an initial demand of $70,000 and indicated a willingness to negotiate the resolution. The Defendant made no counteroffer. Indeed, the Defendant has never made a counteroffer.

17. On February 13, 2007, this Honorable Court issued an order granting partial summary judgment in favor of the Plaintiff. The court further held that the only remaining issues "pertained exclusively to damages, attorney fees, and costs of litigation."

18. On February 26, 2007, this Honorable Court granted the parties' joint motion to withdraw the jury demand.

19. Throughout the course of this litigation, the parties engaged in extensive discovery efforts.

20. Besides reviewing the extensive Rule 26 disclosures provided by the Defendant, interrogatories and production of documents, discovery also consisted of three factual depositions in Ohio and three factual deposition in Alabama. The Plaintiff also issued third-party subpoenas.

21. This litigation also produced two expert opinion reports and numerous investigative searches, by the Plaintiff, in an attempt to narrow the scope of damages and prove the extent of the Plaintiff's injury. Ultimately, the Plaintiff concluded that the Plaintiff's expert could not qualify and quantify the actual damages sustained by the plaintiff. The expert relied on the interest rate available before the Defendant's judgment was reported on the Plaintiff's credit report and an interest rate available after the judgment was reported. As a point in fact, the Plaintiff could not obtain credit after the judgment was reported in any manner. The Plaintiff's inability to obtain credit was supported by the un-rebutted testimony of Tanya Newsome and the Plaintiff at trial. As such, the Plaintiff's expert was not called.

22.  This case was vigorously defended by the Defendant, including its opposition to summary judgment, its opposition to a motion to compel various documents, and its opposition to an award of damages. Now, the Defendant is vigorously objecting to an award of attorney fees.

23.  Likewise, this case was vigorously prosecuted by the Plaintiff in an effort to prove that the Defendant's action in filing a time-barred lawsuit proximately caused the Plaintiff's injuries. Further, Plaintiff vigorously prosecuted this lawsuit to prove actual injuries suffered by the Plaintiff. In fact, until the time this Honorable Court rendered a verdict, the Defendant denied that the Plaintiff suffered any damages. See Pretrial Order Doc. 48 and Defendant's Trial Brief Doc. 57.

24.  Prior to rendering its verdict, this Honorable Court urged the parties to once again engage in settlement negotiations.

25.  Prior to rendering a verdict, but after the close of the trial, the Defendant finally made a counteroffer wherein it proposed to "discuss" the satisfaction of the judgment against the Plaintiff's wife, Wendy Thompson, in satisfaction of all of Mr. Thompson's claims. This was and continues to be the extent of the Defendant's counteroffer, if in fact it was one at all.

26.  On May 21, 2007, trial was commenced before this Honorable Court.

27.  On May 21, 2007, at the close of Plaintiff's evidence, the Defendant moved for a directed verdict. This Honorable Court took the Defendant's motion under advisement.

28.  On May 22, 2007, a two-day trial was concluded before this Honorable Court.

29.  On May 22, 2007, this Honorable Court denied the Defendant's motion for directed verdict.

30.  On May 22, 2007, this Honorable Court entered a judgment in favor of the Plaintiff consisting of actual damages of $38,000 and statutory damages consisting of $1,000.

31.   On May 23, 2007, this Honorable Court ordered the Plaintiff to submit a motion, and

supporting evidence, regarding reasonable costs and attorney fees.

32.   On June 5, 2007, Plaintiff's counsel submitted their motion for an award of attorney fees

and costs.

33.   On June 11, 2007, the Defendant filed its objection to Plaintiff's motion for award of

attorney fees.

### III. LEGAL ARGUMENTS

A.    The verdict in Plaintiff's favor constitutes a "successful action." Therefore, Plaintiff is
      entitled to an award of attorney fees and costs.

The FDCPA specifically mandates an award of attorney fees and costs of "any successful

action to enforce [FDCPA] liability...." 15 U.S.C. § 1692k(a)(3). As noted by the Defendant's

response, Plaintiff retained able and competent counsel to prosecute the instant case. Several

courts noted that the FDCPA fee shifting provision was enacted to provide Plaintiff an ability to

retain able counsel. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir.

1997); *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995).

B.    Attorney fees are mandatory for successful litigants.

15 U.S.C. § 1692k(a)(3) states that "any debt collector who fails to comply with [the

FDCPA] with respect to any person is liable to such person in an amount equal to the sum of...a

reasonable attorney's fee as determined by the Court." In propounding the FDCPA, Congress made

clear that successful litigants were entitled to a recovery of attorney fees from the offending

Defendant. In the present case, the Defendant was found liable to the Plaintiff for actual damages

of $38,000 and the maximum statutory damages of $1,000. In its response, however, the

Defendant now alludes to overkill for the Plaintiff's use of two lawyers. Because of this, the

Defense urges a substantial reduction of attorney fees. Although the Defendant, with great

liberality, interjects its opinion, the plain meaning of the FDCPA mandates an award of attorney

fees. *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989); *Pipiles v. Credit

Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Joe v. Payco-General Am. Credits,* 1994

U.S. App. LEXIS 23900 (9th Cir. 1994); *Carroll v. Wolpoff & Abramson*, 53 F. 3d 626, 628-29

(4th Cir. 1995); *Graziano v. Harrison*, 950 F. 2d 107, 114 & n.13 (3d Cir. 1991); *Zagorski v.

Midwest Billing Svc.*, 128 F. 3d 1164 (7th Cir. 1997).

Attorney fees are discretionary only to the extent of reasonableness. In defining

reasonableness, and performing the requisite lodestar analysis, this Honorable Court should

remember the numerous opportunities available to the Defendant to settle the claims and avoid

most (substantially all) of the required labor expended by Plaintiff's counsel. Although the

complaint presented a pure FDCPA cause of action, the Plaintiff was highly successful and the

Plaintiff's attorney fees and costs should be awarded as requested.

Defendant's counsel should have known and realized, not only from the very first hearing

with Judge McPherson on January 25, 2006, (to which the courtroom proceeding minutes will

attest) but clearly after the issuance of the order on Partial Summary Judgment, that damages and

attorney fees and costs would be owed to the Plaintiff. Defendant chose not to engage in

settlement discussions. They also chose to proceed to trial where their own testimony admitted the

correctness of this court's decision on summary judgment as well as the lack of policies and

procedures to check the statute of limitations before filing this time-barred lawsuit.

In effect, Defendant's counsel was right in one abstract point or argument in the opposition

to this fee petition. This case was simple from the standpoint that Defendant only had two things

wrong in their case. One was that Defendant was guilty of violating the FDCPA, and the second is

that Plaintiff's counsel could prove it for their client. Really, there was also a third thing that was

wrong. Defendant knew it was guilty, knew the Plaintiff could prove damages and chose, like is

their apparent routine, to defend anyway. The case, like any litigation, was not simple or easy. It is

litigation and it is time consuming and expensive in this day and age. It is litigation under a federal

statute and a cause of action in an area with an ongoing and dynamically developing body of

Federal Common Law. Plaintiff's counsel is entitled to compensation for their fees and expenses

submitted in this matter. Not only as a message to the Defendant to change their conduct, but

also it is the law.

C.    Attorney fees are calculated according to a three-step process.

As enunciated by the Eleventh Circuit Court of Appeals, attorney fees are decided upon

through a three-step process. *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir.

2000). First, this Honorable Court must look to the Plaintiff's successful result. That is, the

Plaintiff is a prevailing party both as to actual and statutory damages. *Dillard*, 213 F.3d at 1353.

That is, the first prong is satisfied insomuch as the Plaintiff is a prevailing party. Second, "the court

calculates the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in the

legal work on the case multiplied by a reasonable market rate in the local area. *Id.* at 1353 *citing*

*ACLU v. Barnes*, 168 F.3d 423 (11th Cir. 1999); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396

(11th Cir. 1996). The final step in the process is the adjustment of the 'lodestar' to account for

other considerations...not yet figured in the computation, the most important being the relation of

the results obtained to the work done." *Dillard* at 1347 *(citing Hensley v. Eckerhart*, 461 U.S. 424,

103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

1)    Plaintiff was the Prevailing Party

The first prong of the attorney fees analysis is the easiest for this Honorable Court. At the

close of evidence, the court issued a verdict, in favor of the Plaintiff, for $38,000 of actual

damages and the maximum $1,000 statutory damages. As such, the Plaintiff was clearly the prevailing party.

    2)    Calculation of Lodestar

In calculating the "lodestar" figure, this Honorable Court multiplies the hours reasonably expended times an allowed hourly rate. See *Hensley v. Eckerhart,* 103 S.Ct. 1933, 1939 (1983) (viewing an award of fees under 42 U.S.C. §1988). Plaintiff's counsel bear the burden of proving that the fee request is reasonable, with a strong presumption that the lodestar amount represents a fair and appropriate fee award. *Hensley,* 103 S.Ct. at 1941.

Although the Supreme Court decided *Hensley* in the context of a civil rights case, the lodestar analysis applies to all cases involving an attorney fee shifting statute. The Supreme Court has "stated in the past that fee shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 109 S. Ct. 2732, 105 L. Ed.2d 639 (1989) (quoting *Northcross v. Memphis Bd. Of Education,* 412 U.S. 427, 428, 93 S. Ct. 2201, 2202, 37 L. Ed. 2d 48 (1973). *See also City of Burlington v. Dague,* 112 S. Ct. 2638, 2641 (1992) (clean water act case applying lodestar analysis); *Simpson v. Sheahan,* 104 F.3d 998, (7th Cir. 1997) (civil rights case); *DeJesus v. Banco Popular de Puerto Rico,* 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending case); *Piekarski v. Home Owners Savings Bank,* F.S.B., 755 F. Supp. 859, 863 (D. Minn 1991) (retaliatory discharge case).

The hourly rate is derived from the prevailing market rate with consideration for the attorney's years of experience and expertise. *Dillard v. City of Greensboro,* 213 F.3d 1347, 1353 (11th Cir. 2000); *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996). The determination of the allowable hours rests with the sound discretion of the trial court. *Hensley,* 103 S. Ct. at 1941.

    3)   <u>Adjustment of Lodestar Due to Other Considerations</u>

In the final prong of the attorney fee determination, this Honorable Court has the discretion "to adjust the lodestar to account for other considerations that have not yet figured in the computation...." Dillard at 1353. It is notable that the Eleventh Circuit Court of Appeals found the "relation of the results obtained to the work done" as an important factor. *Id.*

D.   <u>Plaintiff's attorneys charged a reasonable hourly rate.</u>

Although the Defendant battled the Plaintiff, from pillar-to-post, the Defendant did not object to the Plaintiff's attorneys' hourly rate. This may stem from Defendant's counsel's standing, as well as being a highly qualified attorney, and his recognition that a battle over the hourly rate range is not even arguable as it is presumptively correct. Indeed, the Defendant admits both of Plaintiff's counsel are "competent, and highly qualified to represent the Plaintiff in this matter." Defendant's objection at paragraph 15. Without objection, both attorneys' rates are reasonable for this market. Notwithstanding the excellent results obtained, the work performed by Plaintiff's counsel was of the Defendant's own making.

Attorney Templeton's current hourly rate of $250 is reasonable, and is below market, considering his vast litigation history and the affidavit evidence submitted on his behalf. Starting in 1991, he has many years of Federal trial litigation experience. One of his Federal trials lasted over nine years. To say the least, Mr. Templeton is an accomplished litigator. There is no doubt as to why he was asked to assist as co-counsel in this case. Mr. Templeton's past and present experience speaks for itself. He is determined to continue in his quest to represent consumers in matters such as the FDCPA. He is a valuable advocate for otherwise under-represented consumers in Alabama. Un-rebutted affidavits filed in support of his fee petition place his market rate between $275 per hour up to $325 an hour, along with a range of rates applicable in the Middle District

from $250 to $350 per hour. The rate to be applied to Mr. Templeton is $300 per hour based upon these un-rebutted affidavits and the materials submitted on his behalf. Mr. Templeton works in a small law firm where the litigation under a contingency basis is a very difficult decision. Any attorney in this day and age has to consider the delay in payment, fronting of expenses and ongoing requirements in all cases before taking a case on a contingency. This case was no exception.

The undersigned counsel's current hourly rate of $250 per hour is likewise reasonable. The undersigned has litigated, settled, and resolved hundreds of consumer litigation cases since devoting himself to representing consumers in 1991. Since exiting law school, the undersigned immediately focused on consumer bankruptcy by clerking for two highly respected United States Bankruptcy judges. Since entering private practice, the undersigned has devoted himself to representing consumers in over 98% of the cases he has filed. By its very nature, consumer rights work is extremely code intensive and is primarily conducted in the Federal arena. In 2004, the undersigned further refined his practice to focus even more in the area of consumer rights and consumer litigation. The undersigned has handled hundreds of consumer cases through trial, settlement, or demand to protect consumer rights for violations of the various consumer law statutes.

On April 1, 2006, the undersigned left his successful bankruptcy practice to oversee a newly formed Consumer Rights Litigation Department at the law firm of Brock and Stout. Since that time, the undersigned has devoted himself completely to consumer rights and litigation.

In more complex cases such as the one before this court, the undersigned typically litigates with co-counsel as a means to present a clear and concise work product. This counsel respectfully asserts that given the depth and breadth of his expertise in the area of FDCPA litigation, his hourly rate of $250 is entirely reasonable for this market. In fact, as evidenced by the affidavits, the

undersigned's requested hourly rate appears to be at a rate that is below market. And, in the end, it is difficult to argue the excellent results obtained by both attorneys.

E.    Plaintiff's use of two attorneys was reasonable, efficient, and effective in achieving excellent results for the Plaintiff.

From the onset of this litigation, the Defendant has doggedly refused to concede any portion of this litigation. Since the onset of this case, when the Defendant's employee (not an attorney) threatened the undersigned with F.R.C.P. Rule 11 sanctions, the Defendant has steadfastly refused to admit its wrongdoing. Even after this Honorable Court entered a judgment for liability, thereby leaving open only the damage question, the Defendant declined to put forth or discuss any settlement offer whatsoever to resolve this matter.

Now, the Defendant argues that two lawyers handling this litigation was excessive and downplays the results as an "uncomplicated matter." Defendant's objection at paragraph 15. The Defendant's arguments, however, are not substantiated by the facts and history of this litigation. Furthermore, because of the scarcity of experienced FDCPA practitioners, long distance co-counseling relationships are commonplace in consumer rights' litigation. The premier legal organization for consumer lawyers, the National Association of Consumer Advocates, lists only 419 FDCPA lawyers in the United States with advanced or experienced knowledge. Furthermore, only 15 of those lawyers are located within the state of Alabama.[1] This relative scarcity of qualified FDCPA lawyers makes long distance co-counseling relationships both necessary and inevitable.

Involving a second attorney is common in a federal matter, and was certainly prudent in this matter. *E.g.*, *Bouman v. Block*, 940 F.2d 1211, 1236 (9th Cir. 1991); *Lenihan v. City of New York*, 640 F. Supp. 822, 825 (S.D.N.Y. 1986); *Pierce v. F.R. Tripler & Co.*, 770 F. Supp. 118, 122

---

[1]    Source: http://www.naca.net "Find a Lawyer"

(S.D.N.Y. 1991). Indeed, it is an abuse of discretion to limit fees to only one attorney. *A.J. By L.B. v. Kierst*, 56 F.3d 849, 863-64 (8th Cir. 1995); *Ramos v. Lamm*, 713 F.2d 546, 554 n.4 (10th Cir. 1983) (the norm at trial and settlement conferences is two attorneys). In reality, the presence of multiple counsel is not necessarily duplicative and is often justifiable. Only time spent on clearly meritless arguments or motions, and time spent on unnecessarily uncooperative or contentious conduct may be deducted. *Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997); *Clanton v. Allied Chemical Corp.*, 416 F. Supp. 39 (E.D. Va. 1976).

Plaintiff's counsel submits that a good professional relationship with Defendant's legal counsel and clean advocacy was the norm in this matter. No argument was raised by the Defendant that time was spent on uncooperative or contentious conduct. Plaintiff's counsel can not recall any time spent on clearly meritless arguments or motions. Discovery matters are broader than trial evidence presentation. Research into the numerous other lawsuits against the Defendant for similar conduct was not improper discovery and as such is not disallowed from the work performed by legal counsel in this matter. Defendant's arguments on this point are without any basis.

In the instant case, Attorney Templeton and the undersigned made extensive use of e-mail, electronic document handling, phone conferences, facsimiles and the conventional mail to efficiently handle a very complex case. Plaintiff should not be disadvantaged by being restricted to one lawyer when two efficient lawyers can effectively work together to get him a better result. The question is not one of how many lawyers, but rather of the relative productivity of those lawyers and the resultant success.

This Plaintiff's attorneys used sound discretion in eliminating duplicative and unproductive time and costs. The results achieved for this Plaintiff under the FDCPA speak for themselves.

Plaintiff's counsels carefully divided the work on this case between them and did not double-bill for their efforts. Frankly, there is no reason for two attorneys to do what one attorney can - and no sense in one lawyer not joining another for a complex case in an esoteric area of the law like the FDCPA. It is natural and sensible for co-counsel to confer and strategize between themselves, as was done extensively in this case, because this approach necessarily makes for a better result. There is nothing inherently wrong, duplicative or wasteful about "taking-a-partner" in an FDCPA case. Federal question litigation is the most complex area of law that exists. The effective and efficient use of two attorneys in a single complex case is neither impractical nor unusual. It is prudent. The use of two attorneys in litigating this case was reasonable and prudent, and therefore the Court should award the full amount of attorney fees and costs requested by this Plaintiff.

F.    Plaintiff's attorneys charged below market hourly rates.

With no objections, the "prevailing market rate" is clearly established by the affidavit testimony of the third-party attorneys. In its own words, the Defendant admits the Plaintiff's counsel are "highly qualified." The third-party affidavit testimony provides that the usual, customary market rate to be applied as part of the lodestar calculation for Plaintiff's counsel is in the range of $250 to $350 per hour. Because of Plaintiff's counsels' expertise and experience, the requested hourly rate falls in the low end of the range suggested by the supporting affidavits. With no attempt to argue the rates suggested are unreasonable, for this District, Plaintiff's counsels submit that the final rate to be applied per hour, as part of the calculation of the lodestar, should be $300 per hour. This is the midway point of the ranges on the now competent and unrebutted evidence before the court. See generally Dillard v. City of Greensboro, 213 F.3d 1347 (11th Cir. 2000) (lodestar determined by "market rate in the local area") Id. at 1353; Duckworth v. Whisenant, 97 F.3d 1393 (11th Cir. 1996) ("prevailing market rate") Id. at 1396; Copeland v. Marshall, 205 U.S.

App. D.C. 390 (D.C. Cir. 1980) (attorneys are compensated "for the market value of services rendered") *Id.* at 894.

G.    Attorney Poston should be compensated at the current prevailing market rate for all work in this matter.

In submitting his fee application, the undersigned used a tiered approach wherein he initially charged a current hourly rate of $200 per hour through December 31, 2005. Beginning January 1, 2006, the undersigned raised his hourly rate to $215 per hour. Beginning on August 1, 2006, the undersigned raised his current hourly rate to the present rate of $250 per hour. Rather than charging a straight $250 per hour from the inception, the undersigned submitted his time records based on the above-referenced tiered hourly rate. The Supreme Court, however, addressed this issue and held that the undersigned's hourly rate may be adjusted upward to compensate him for the "market rate" rather than the historic hourly rate. *Missouri v. Jenkins*, 491 U.S. 274, 284, (1989). Because this litigation has been pending for almost two years, the undersigned is entitled, at a minimum, to a fee enhancement to compensate him for the delay in payment of his attorney fees. The Supreme Court recognized that the "delay in payment may deter other willing attorneys from accepting fee shifting cases." *Missouri*, 491 U.S. at 284 (1989). In the instant case, it stands to reason that the undersigned should be compensated, at a minimum, at the current requested rate of $250 per hour.

H.    The proportion of attorney fees to Plaintiff's actual recovery is irrelevant.

Proportionality refers to the amount of attorney fees in comparison to the amount of damages awarded Plaintiff. The issue of proportionality was rejected by the Supreme Court in *Riverside v. Riviera*, 477 U.S. 561, 574 (1986) ("We reject the proposition that fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.") As such, the issue of proportionality has no bearing on the case

at bar.  In this case, the Defendant was provided every opportunity to settle and avoid the

continued accumulation of attorney fees. Instead, as was its right, the Defendant chose to defend

to the bitter end.  In response to the defense strategy, the Plaintiff's attorneys expended great labor

in prosecuting and trying this action.  Even more ironic than objecting to the number of hours

expended is the Defendants' strategy to nit-pick and second guess almost every aspect of the

attorney fee application.  It is, after all, the Defendant's strategy and now its objections which

resulted in the extensive labor expended by the Plaintiff's attorneys.

In the context of a similar Consumer Credit Protection Act statute, the Fair Credit Reporting

Act, ("FCRA"), the Fourth Circuit stated:

> Proportionality of attorneys' fees to the amount recovered is not
> required in every action brought pursuant to the FCRA.  Since there
> will rarely be extensive damages in an FCRA action, requiring that
> attorney's fees be proportionate to the amount recovered would
> discourage vigorous enforcement of the Act.

*Yoyay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987).

Under the FDCPA, the Seventh Circuit noted that the "cumulative effect of petty violations ...

may not be petty" and thus a case involving a small amount of damages is no justification to deny

attorney fees. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997)

(*quoting*) *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997).

An exception to the bar against proportionality arises on the recovery of nominal damages.

*See, e.g. Farrar v. Hobby*, 506 U.S. 103 113 (1992) (Plaintiff demanding $17 million dollars but

recovering nominal damage of $1.00 is entitled to no attorneys' fees under civil rights statute);

*Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 630 (4th Cir. 1995) (FDCPA Plaintiff seeking

$1,000.00 statutory damages but recovering $50.00 in statutory damages, had attorney fee

request for $10,000.00 reduced to $500.00); *but see Zagorski v. Midwest Billing Services, Inc.*,

128 F.3d 1164 (7th Cir. 1997) (trial court's denial of attorney fees, after Plaintiff's recovery of $100.00 statutory damages, constituted an abuse of discretion).

Nevertheless, an inadequate or nominal recovery is simply not an issue in the case at hand. The Court is well aware of its total verdict of $39,000. This amount cannot reasonably be construed as nominal damages, and the Plaintiff's attorneys are therefore entitled to a full attorney fee award. Courts have encountered many examples of fee awards disproportionate to damage awards. *See City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) ($245,456.25 in attorney fees, $33,350.00 in damages); *Building Service Local, 47*, 46 F.3d 1392 (6th Cir. 1995) (ERISA case, $70,185.95 in attorney fees, $25,598.71 in damages); *Northwest Women's Center v. McMonagh*, 889 F.2d 466 (3rd Cir. 1989) (RICO case, over $60,000.00 in attorney fees, $2,661.00 damages); *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 726 (8th Cir. 1978) (Federal Odometer case, over $14,000 attorney fees, $3,000 in damages); *Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) (FDCPA case, $10,110 in attorney fees, $1,200 damages).

In 2002, the Court for the District of Minnesota found that an attorney fees and costs award of $44,655.29 was reasonable in an FDCPA case where the Plaintiff's statutory recovery was $1,000.00. *Armstrong v. Rose Law Firm, P.A.* - Court File 00-2287 (MJD/SRN), 2002 WL 31050583. "The Court finds that Plaintiff's attorneys' fees and costs [of $44,655.29] are reasonably proportional. While they far exceed the [$1,000] statutory damages award in the present case, Plaintiff did not choose to create this disparity. Defendant aggressively defended this case, as was its right.... This defense produced a large amount of litigation, and significantly increased the number of hours Plaintiff's attorney committed to this case." *Id.*

The issue before this Court is no different than that which the *Armstrong* court confronted.

That is, a Defendant that vigorously fights, even after being held liable, over the inevitable damage

award occasioned by violations of the FDCPA, must stand ready to accept the fee awards inevitably

occasioned by such a defense.

I.      Plaintiffs' attorneys exercised sound discretion in deleting and "no billing" appropriate
        amounts of time prior to their application for fees to this Court.

In its objection, the Defendant deems "outrageous" the time billed for preparing the fee

application. In paragraph 11 of its objection, the Defendant characterizes the time spent in

preparing the fee application as "an outrageous request." Ironically, the Defendant expends 78

words to explain this objection. On the other hand, the Plaintiff's attorneys submitted 114 pages in

the fee application process. As a point in fact, both attorneys kept "contemporaneous time

records" throughout the course of this litigation. The Court should be mindful that this litigation

proceeded for over two years. The Defendant would suggest that the Plaintiff may simply press a

button to magically produce 114 pages. In reality, the Plaintiff's attorneys bear the burden of

proving their requested market rate which necessarily entails contact with other attorneys. In

addition, the Plaintiff's attorneys are under mandate to exercise billing discretion. Both attorneys

meticulously reviewed their contemporaneous time records and deleted all apparent duplication

and questionable work product. Two attorneys reviewing two years worth of records took great

effort. For example, Mr. Templeton expended a full day in obtaining third-party attorney affidavits

and scrutinizing his attorney bill. The undersigned, however, utilized a paralegal and associate

attorney for some of the work and scrutinized the bill over a period of several days.

The reality of time records necessarily entails that superfluous and extraneous information

are entered into time records. In many cases, because a matter settles, the time records are not

thoroughly scrutinized for duplication or non-billable time. To the contrary, in this case, the

Plaintiff's attorneys were required to "comb over" almost two years of records. This detailed

analysis necessarily entailed deletion of duplicated efforts which, in the billing discretion of the

Plaintiff's attorneys, would have resulted in a reduction of fees. Again, this Honorable Court should

not lose sight of the progression concerning this litigation. Even as late as June 5, 2007, Attorney

Templeton attempted to negotiate a settlement of this matter, even after the Court rendered its

verdict, to avoid a further expenditure of attorney labor. See attached Exhibit "1" letter dated June

5, 2007, from Gerald Templeton to defense counsel. The point being that the Defendant has never

made so much as a whisper regarding the Plaintiff's initial demand of $70,000 to settle this case in

total. Instead, the Defendant expends great energy in attempting to characterize this as

"uncomplicated."

J.     The costs incurred in litigating this matter were reasonable and necessary to enforce the
       Defendant's liability under the FDCPA, and reflect good judgment on the part of Plaintiffs'
       attorneys.

The FDCPA permits an award of the "costs of the action" in the case of a successful action

to enforce liability under its provisions.  15 U.S.C. § 1692k(a)(3).

The costs in this case were reasonable and necessarily incurred in litigating this case. Travel was

kept to a minimum and good judgment was used to minimize flight, hotel, and accommodation

costs. In addition, Plaintiff's attorneys did not charge unnecessary amounts for copies, postage,

facsimiles, or exorbitant travel expenses.

The factual depositions taken by the Plaintiff were essential in proving damages and the

Defendant's lack of any procedure in filing state court collection lawsuits. Those costs are therefore

recoverable from the Defendant. These depositions would have undoubtedly been used at trial for

impeachment purposes and would have preserved important testimony in the event of a witness's

unavailability. Moreover, the depositions were necessary to establish the Defendant's business

systems and to lock the individual debt collector into his version of the facts.

The Plaintiff also requests reimbursement for an expert retained to prove damages to the Plaintiff's credit. Unfortunately, the Defendant's $20,000 judgment made Mr. Thompson unworthy for credit of any sort. As such, the expert was not called because she had no basis to prove an interest rate variation between the credit Mr. Thompson could have gotten before the $20,000 was reported and the interest available after the judgment was reported. Simply put, Mr. Thompson cannot obtain credit with a $20,000 judgment on his credit. The Plaintiff's inability to obtain credit was supported by the testimony of Tanya Newsome from Ironwood Homes. The Plaintiff's attorneys, who paid for the expert, should not be penalized in their attempt to prove concise and calculable damages. Furthermore, the Plaintiff's attorneys' time should not be reduced in discussing calculable damages with the retained expert. Damages were the central point of this litigation. Because the deposition, travel, expert report, and other costs incurred in successfully litigating this case were reasonable and necessary, the costs should be fully awarded by this Court.

K.     The Defendant's litigation strategy led to higher attorney fees and costs for the Plaintiff.

Even in the face of a liability determination with the trial only on damages, the Defendant continued in its conviction to litigate this matter through a trial on damages. With its dogged determination to litigate this matter fully, the Defendant cannot be heard to complain about the extent of hours expended by Plaintiff's attorneys in trying the case through to a successful conclusion. The Fifth Circuit, in *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981), laid bear the ugly practicalities of consumer litigation when it held:

> The borrower's counsel did not inflate this small [truth-in-lending] case into a large one; its protraction resulted from the stalwart defense. And although Defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear the cost.

Over the years, various courts have addressed those Defendants who erect a "Stalingrad" defense in the face of litigation. See *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 667 (D. La. 1976).

In the instant case, it proceeded over the course of almost two years with Plaintiff's counsels fronting all expenses and time to successfully prosecute the claims on the Plaintiff's behalf. At the end of the day, the Defendant must now pay the piper. The Plaintiff's attorney fee petition should be viewed in light of the highly successful results of this litigation which include the following facts:

a)    That the Defendant never offered to settle this matter at any time before trial, even following the Court's determination of FDCPA liability;

b)    The Defendant's corporate representative admitted, at trial, that the Defendant filed a time-barred lawsuit in violation of the FDCPA;

c)    That the Defendant never responded to the settlement offer initiated by the Plaintiff at the settlement conference on January 31, 2007;

d)    The Defendant is legally responsible for the multiple damages awarded to Plaintiff;

e)    The Plaintiff's attorneys obtained an excellent result on the Plaintiff's behalf based upon the Defendant's wrongful conduct and actions. Certainly the Defendant makes its own business decisions, but it is now solely responsible for the large attorney fees and expenses incurred in this matter which required a full trial on the issue of damages.

The Defendant cannot be heard to complain of a large attorney fee and expense award after the Court issued damages to the Plaintiff and which the Defendant admitted its culpability in harming the Plaintiff. Furthermore, the Defendant has never taken any action to limit the damages,

attorney fees and expenses of this litigation. See *Thiebes v. Wal-Mart Stores, Inc.*, 2007 U.S. App.

LEXIS 4063 (9th Cir. 2007) ("When a defendant employs a scorched earth strategy, unreasonably

increasing a plaintiff's litigation expenses, the defendant can expect to pay for the attorney fees it

forces the plaintiff to incur."); *Copeland v. Marshall*, 205 U.S. App. D.C. 390 (D.C. Cir. 1980) ("The

government cannot litigate tenaciously and then be heard to complain about the time necessarily

spent by the plaintiff in response."); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977)

("Obviously, the more stubborn the opposition the more time would be required, so that counsel

received their compensation for the extra effort thus required."); *State Farm Fire & Casualty v.*

*Palma*, 555 So.2d 836, 837 (Fla. 1990) ("It appears State Farm decided to 'go to the mat' over

the bill... Having chosen to stand and fight over this charge, State Farm, of course, made a

business judgment for which it should have known a day of reckoning would come should it lose in

the end.").

## CONCLUSION

From the onset of this litigation, the Defendant chose to vigorously defend this lawsuit all

the way through the Court's final verdict of $39,000. Even to this day, the Defendant contests the

award of attorney fees referring to this litigation as "an uncomplicated matter." In turn, the defense

dictated the Plaintiff's staunch prosecution. Even after a finding of liability, the Plaintiff continued

to battle by taking and defending factual depositions and ultimately proving the extent of the

Plaintiff's harm. It was only through a solid foundation, thorough preparation, and ultimately

litigation, that the Plaintiff's attorneys obtained an excellent result. Now, Plaintiff's counsel simply

request this Honorable Court fairly and adequately compensate them for their successful efforts.

For all of the foregoing reasons, the Plaintiff respectfully requests this Honorable Court order

the following:

Require the Defendant to pay Plaintiff's counsel at a minimum, the requested attorney fees and costs submitted on their fee application dated June 5, 2007;

Find that the prevailing market rate is $300 per hour for each lead attorney in this matter and order the Defendant pay the requested and documented hours for both the attorneys and legal staff submitted in the fee petition;

Order the Defendant to Pay all costs and expenses shown in the fee petition filed in this matter;

Retain jurisdiction of this matter for an award of any interim or supplemental attorney fees and expenses incurred in the collection of the judgment entered in this matter from the Defendant; and,

Such other amounts as the Court may deem appropriate.

Respectfully submitted,

David G. Poston, Esq.
BROCK & STOUT
Post Office Drawer 311167
Enterprise, Alabama 36330
Tel: (334) 671-5555
Fax: (334) 671-2689
Email: christal@circlecitylaw.com


Gerald A. Templeton, Esq.
The Templeton Group, PC
1000 Providence Park, Suite 200
Birmingham, Alabama 35242
Tel: (205) 408 0048
Fax: (205) 408 0041
Email: jerry@ttgpc.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon Jack R. Thompson, Jr., Attorney for Defendant, KRACKE & THOMPSON, LLP., 2204 Lakeshore Drive, Suite 306, Birmingham, Alabama 35209, by placing a copy of same in the U.S. Mail, postage prepaid and properly addressed or by electronic mail at jthompson@ktlegal.com, this the ___15th day of June, 2007:

David G. Poston