IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ) | |
| JAMES R. CAMBRON & ) | 1:07-CV-00369-WHA |
| WENDY L. CAMBRON, ) | |
| ) | 1:07-CV-00370-WHA |
| ) | |
| ) | CASE NO. 05-11879 |
| Debtors. ) | CHAPTER 7 |
| ------------------------------------------------- ) | |
| ) | |
| WILLIAM C. CARN, III., ) | |
| CHAPTER 7 TRUSTEE, ) | |
| ) | A.P. NO.: 06-1057 |
| Plaintiff, ) | |
| ) | |
| WILLIAM C. CARN, III., ) | |
| CHAPTER 7 TRUSTEE, ) | |
| ) | A.P. NO.: 06-1058 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MEDICAL DATA SYSTEMS, INC., ) | |
| d/b/a MEDICAL REVENUE SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR ADDITIONAL ATTORNEY FEES AND COSTS**

**INTRODUCTION**

On December 18, 2007, Plaintiff filed his Motion for Additional Fees and Costs (hereinafter, "Plaintiff's Motion"). On January 10, 2008, the Defendant filed its Response to the Plaintiff's Motion for Additional Attorney Fees and Costs (hereinafter, "Defendant's Response"). In its response, the Defendant presents legal arguments that are illogical, conclusory, and unsupported by controlling law. To summarize, the Defendant argues that this Court is without jurisdiction to rule

on the Plaintiff's Motion for Additional Attorney Fees based simply upon the Defendant filing its "Notice of Appeal" before the Plaintiff's Motion. That is, the Defendant believes its appeal, which is first in time, trumps the Plaintiff's post-trial motion for attorney fees. If this argument were true, all losing parties should immediately appeal thereby divesting the trial court of jurisdiction and staying the Court's decision on other collateral matters pending an appellate court review. Then, if the appealing party loses on appeal, the winning party can file a collateral motion which would also be subject to appellate review.

The remainder of the Defendant's Response focuses mainly on the reasonableness of the Plaintiff's attorney fees and costs. The Defendant goes to great lengths to attack the number of hours Plaintiff's counsel was forced to expend in order to litigate this matter. In reply, the Plaintiff will show that the Defendant's tactics throughout the litigation of this matter dictated the amount of time Plaintiff's counsel expended in prosecution of this case. The situation in which the Defendant finds itself is one of its own making.

I.  THE DEFENDANT'S FILING OF A NOTICE OF APPEAL DOES NOT DIVEST THIS COURT OF JURISDICTION TO HEAR THE PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

    A.    <u>Judicial Intent</u>

The Defendant argues that Fed. R. Civ. P. 58(e) mandates that "[a] Court may consider a Motion for Attorney Fees <u>only</u> if the motion has been made: (1) timely under Fed. R. Civ. P. 54(d)(2); and, (2) prior to the filing of a timely and effective Notice of Appeal." Def.'s Resp. at 1-2 (emphasis added). The Defendant's position is not supported by case law and does not comport with the legislative intent of Rule 58. The Defendant's argument, when taken to its illogical conclusion, results in nothing more than a race to the courthouse. Using the Defendant's argument, a losing party could stay an award of attorney fees under a fee-shifting statute by filing a Notice of Appeal prior to the prevailing party's Motion For Attorney Fees. In theory, a losing party could file its Notice of Appeal within minutes of a Court's final order, at which point the prevailing

party would wait on an appellate review to recover attorney fees at the trial level. The Defendant's argument stands in stark contrast to Fed. R. Civ. P. 54(d)(2), which allows a Motion For Attorney Fees to be filed within fourteen (14) days after the Entry of Judgment. Fed. R. Civ. P. 54(d)(2)(B). The Defendant's reading of Fed. R. Civ. P. 58(e) would nullify Fed. R. Civ. P. 54(d)(2)(B).

The legislative intent, contained in Rule 58 also defeats the Defendant's contention that Fed. R. Civ. P. 58(e) divests the District Court of jurisdiction upon the filing of a notice of appeal for collateral matters. The "Notes of Advisory Committee on 1993 Amendments" speak directly to this issue. The Advisory Committee notes state that "if the claim for fees involves substantial issues or is likely to be affected by the appellate decision, the District Court may prefer to defer consideration of the claim for fees until after the appeal is resolved." The Advisory Committee notes further state "[h]owever, in many cases it may be more efficient to decide fee questions before an appeal is taken so that appeals relating to the fee award can be heard at the same time as appeals relating to the merits of the case." It is clear, the legislative intent of Rule 58 does not require divesting the District Court of jurisdiction upon the filing of a Notice of Appeal.

The Defendant's position is also contrary to the judicial intent of the Federal Rules of Appellate Procedure. Rule 4(a)(4)(b)(i) clearly states that "if a party files a Notice of Appeal after the Court announces or enters judgment - but before it disposes of **any motion listed in Rule 4(a)(4)(A)** - the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered (emphasis added)." Fed. R. App. P. 4(a)(4)(B)(i). Rule 4(a)(4)(A)(iii) includes motions for attorney fees under Rule 54. Id. The notes of Advisory Committee on 1993 Amendments to Rule 4 provide further insight. Specifically, Note to subdivision a(4), states that "the 1997 amendment of this paragraph created a trap for an unsuspecting litigant who files a Notice of Appeal before a post trial motion, or while a post trial motion is pending." Id. at note to subdivision a(4). The Committee goes on to state "the 1979

amendment requires a party to file a new Notice of Appeal after the motion to disposition." Id. The note continues, "[because] a Notice of Appeal will likely ripen into an effective appeal upon disposition of a post- trial motion, in some instances there will be an appeal from a judgment that has been altered substantially because the motion was granted in whole or in part." Id. Further, the Committee stated that:

> "the amendment provides that a Notice of Appeal filed before the disposition of a post trial tolling motion is sufficient to bring the underlying case as well as any orders specified in the original notice, to the Court of Appeals." Continuing on, "if the judgment is altered upon disposition or post trial motion, however, and party wishes to appeal from the disposition of the motion, the party must amend a notice to so indicate."

Id.

The Committee notes plain language allows the District Court to hear post-trial motions. Otherwise, the Advisory Committee would not waste time explaining the need for the appealing party to amend the Notice of Appeal to include the disposition of the motion in question. Therefore, it is clear that the Advisory Committee intended the District Court's retain its ability to rule on post trial motions even if a notice of appeal is filed before such ruling.

B.  Case Law

The Defendant cites only one case in support of its argument. Kirkland v. McDermott & Company, 568 F. 2d. 1166 (5th Cir. 1978). Although Kirkland states "after a Notice of Appeal has been filed, the District Court no longer has jurisdiction," the Eleventh Circuit Court of Appeals clarified its position regarding attorney fees in cases which appeals have been filed. In Briggs v. Briggs, 2007 U.S. App. LEXIS 29712 (11th Cir. 2007), the Eleventh Circuit Court of Appeals stated "the District Court may retain jurisdiction to consider motions that are collateral to the matters on appeal." Id. at 2 ("Nor does it prevent the Court from entertaining motions on matters collateral to those at issue on appeal") (citing Mahone v. Ray 326 F.3d 1176, 1179 (11th Cir. 2003)); Doe v.

Bush, 261 F.3d 1037, 1064-1065 (11th Cir. 2001) ("[The filing of a Notice of Appeal] may not divest the District Court of jurisdiction over collateral matters not affecting the questions presented on appeal."). The Eleventh Circuit Court of Appeals goes even further by stating that, "we have held that the District Court may entertain a Motion For Attorney Fees after a Notice of Appeal has been filed in the underlying case." Briggs at 2; see also Rothenberg v. Security Management Co., 677 F.2d 64, 64-65 (11th Cir. 1982) ("[I]t is well settled in this Circuit that costs may be taxed after Notice of Appeal has been filed."). The Supreme Court also held that attorney fees are collateral matters. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (U.S. 1988) ("As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain."). Despite the Defendant's notice of appeal, controlling law in this circuit clearly vests jurisdiction over collateral matters, such as attorney fees, in the District Court. If the Defendant is unhappy with the attorney fee award, its remedy is to amend the appeal to include any subsequent award. See LaChance v. Duffy's Draft House, 146 F.3d 732, 838 (11th Cir. 2006); Muegge v. Heritage Oaks Golf & Country Club, Inc., 209 Fed. Appx. 936, 941 (11th Cir. 2006); Beven v. Lee County SO, 213 Fed. Appx. 824, 830 (11th Cir. 2007).

II. THE PLAINTIFF IS THE PREVAILING PARTY IN THIS CASE AND THE AMOUNT OF FEES REQUESTED BY THE PLAINTIFF IS REASONABLE

    A. <u>The Defendant rests its argument solely on the hope that the Plaintiff will not remain a prevailing party.</u>

Nowhere in the Defendant's Response does it dispute that the Plaintiff is the prevailing party. In fact, many of the Defendant's cited cases support the Plaintiff's status as a prevailing party. E.g. Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S. Ct. 1835 (2001) (defining a prevailing party as ("[a] party in whose favor a judgment is rendered, . . . – Also termed successful party.")). In the instant case, the Plaintiff has a judgment in its favor.

The Defendant correctly argues that "obtaining a favorable ruling that does not stand on appeal is not a victory for prevailing party purposes." Def.'s Resp. at 3. The Defendant bases its contention on Dougan v. Moore, 2000 U.S. Dist. LEXIS 22662 at 10, 11 (M.D. Fla. 2000), (quoting Webb v. Ada County, Idaho, 195 F.3d 524, 527 (9th Cir. 1999)). In both Dougan and Webb, the respective Courts found that each party was not entitled to attorney fees because they ultimately "failed to achieve [their] purpose." Webb at 527; and, Dougan at 10, 11. Contrasted to the instant case, the Plaintiff has never "failed to achieve [its] purpose." (emphasis added). On the contrary, the Plaintiff has succeeded at every stage of litigation. Therefore, there is no legal or factual basis to find the Plaintiff as anything other than a "prevailing party."

While the Defendant has the utmost confidence in its ability to prevail on appeal, the course of action the Defendant requests this Court take is simply illogical. The Defendant requests this Honorable Court wait until a decision is reached by the Eleventh Circuit Court of Appeals prior to even addressing the Plaintiff's Motion For Additional Attorney Fees. The Defendant even goes so far as to opine that "this course of action risks no prejudice to the Plaintiff." It is hard to imagine how the Plaintiff is not prejudiced by having to wait on a decision from the Eleventh Circuit of Appeals before executing on its judgment.

Even assuming this Court delays its decision on the attorney fees, relevant statistics indicate a high probability that the Eleventh Circuit Court of Appeals will affirm this Court's decision[1]. Using the Defendant's logic, once the decision is affirmed, the Plaintiff must return to this Honorable Court seeking not only the additional attorney fees set forth in the Plaintiff's motion, but also attorney fees stemming from the continued and unnecessary litigation. If this Court awards the

---

[1] The percentage of cases reversed by the Eleventh Circuit Court of Appeals is 9.1%. The percentage of cases of a similar nature to the instant case reversed by the Eleventh Circuit Court of Appeals is 11.1%. Administrative Office of The United States Courts, Statistics Division, Federal Judicial Caseload Statistics, http://www.uscourts.gov/caseload2007/tables/B05Mar07.pdf (Mar. 31, 2007).

Plaintiff his requested attorney fees, it seems reasonably clear the Defendant will appeal the attorney fee order. The Defendant has shown a proclivity to appeal well-reasoned decisions in the face of insurmountable odds. As the Defendant has appealed every decision entered in this action thus far, there is no reason to believe this trend would not continue. As such, the Plaintiff would be forced to wait through a second appeal to the Eleventh Circuit before being awarded the attorney fees to which he is entitled. Despite the Defendant's opinion, such a circumstance would, in fact, prejudice the Plaintiff.

This Honorable Court should currently address the Plaintiff's Motion for Additional Attorney Fees and thereby provide the greatest judicial efficiency in this matter. A ruling on Plaintiff's Motion would allow this Court to fully adjudicate this matter before any portion of the litigation is heard on appeal. Any order issued by this Honorable Court can then be included with the issues already on appeal, thereby allowing The Eleventh Circuit Court of Appeals to review all aspects of the instant case. Such an order would effectively end all litigation in this matter at the District Court level leaving no need for this Court to further address ancillary issues at a later date. This course of action would also avoid needless hours of subsequent litigation as well as the increased attorney fee to which the Defendant would object. Both parties will benefit from all issues being presented to the Eleventh Circuit Court of Appeals.

    B.    <u>Plaintiff's requested fees are reasonable</u>.

The Defendant attempts to blame the Plaintiff for the Defendant's tactical indiscretions during this litigation. Unfortunately for the Defendant, it is now responsible for its actions. <u>See</u> <u>Perkins v. New Orleans Athletic Club</u>, 429 F. Supp. 661, 667 (D. La. 1976) ("Those who elect a militant defense in the face of a statute allowing attorney's fees if they are defeated must take into account the time and effort they exact from their opponents."); <u>see also</u> <u>Wolf v. Frank</u>, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition, the more time that would be required so that counsel received their compensation for the extra effort thus required.")

1)   <u>Defendant's position is inconsistent</u>.

In summarizing its position, the Defendant characterizes the Plaintiff's billing discretion as insufficient because of "the relative simplicity of this matter . . . ." Ironically enough, the Defendant took the opposite position when attempting to stay the matter of <u>Toney v. Medical Data</u>, 2:06-cv-949, M.D. AL, which is currently pending before the Honorable Ira DeMent. In <u>Toney</u>, which involves the same PL1 debt collection letter, the Defendant stated that "the issue of whether the language of MDS' letter violates the FDCPA can fairly be characterized as bordering on an issue of first impression in this circuit." Defendant's Motion to Stay, <u>Toney v. Medical Data</u>, 2:06-cv-949, Docket Entry 40, p. 4. If this matter is relatively simple, why does the Defendant attempt to convince Judge DeMent that it involves an issue of "first impression?" In <u>Toney</u>, the Defendant even goes so far as to mention this Court's decision in the instant case as containing an "utter lack of authoritative and guiding case law." <u>Id.</u> at 3. It is difficult for the Plaintiff to fathom the "relative simplicity of this matter" when the Defendant points out this Honorable Court's "lack of citation to any significant case law . . . let alone any binding case law from the circuit." <u>Id.</u> at 4.

2)   <u>Billing Discretion</u>

As is required, the undersigned exercised tremendous billing discretion in deleting apparent duplication of work product and "no charging" other attorney time. The Defendant makes light of Plaintiff's 7.65 hours of "no charge" attributing the deletion to review of electronic notifications from the Court. Such general conclusions are somewhat confusing to address. The undersigned and his co-counsel wonder whether they should ignore the electronic notices from this Honorable Court or whether the Defendant implies that their time spent reviewing such notices is not really labor spent in prosecution of this case. Apparently the electronic notices from the Court are not particularly important to the Defendant as it previously neglected to, or chose not to, object to the Plaintiff's first request for attorney fees. Instead, the blame is shifted to the feet of the Defendant's

first attorney. Alternatively, is the Defendant suggesting that its current counsel does not bill the Defendant when it receives electronic notifications from the Court?

As is its custom, the Defendant contorts facts or opinions to fit its arguments. The Defendant objects to .6 hours expended in preparing the Motion to Alter or Amend to include a prior award of attorney fees. Once again, the Defendant fails to mention that it did not object at the trial level to the first award of attorney fees. Hence, while this case was under Rule 9003 *de novo* review, the undersigned had no cause to argue in favor of an award of attorney fees because the Defendant did not object as required by Bankruptcy Rule 9033. Instead, in a prior pleading, the Defendant lays the blame squarely on Defendant's first attorney for failing to object (1:07-cv-369, Docket entry 38) to the Plaintiff's first request for attorney fees but never once admitting its failure to review the Bankruptcy Court docket despite the appearance of two additional law firms and four attorneys.

In yet another twist of facts, the Defendant urges this Honorable Court to cut the undersigned's 4.6 hour time spent on preparing the Motion for Additional Attorney Fees and the Brief in support thereof. As grounds for cutting the fees, the Defendant suggests that the undersigned used a prior pleading as a template for the supporting brief. The Defendant cites to the case of Thompson v. D.A.N. Joint Venture III., L.P. (civil action number 1:05-cv-938) and attaches the undersigned's brief filed in that action. In a giant leap of faith, the Defendant, while acknowledging that "re-using prior legal work" is efficient, summarily states that 4.6 hours was "unreasonable." The Defendant again neglects to mention that the Thompson brief, which was admittedly used as a template, took 22.5 hours to prepare from scratch.

The Plaintiff can only imagine the cries and moans coming from the Defendant's camp if the undersigned had created another brief from scratch regarding his attorney fees. For that matter, the Thompson brief was filed only six months earlier. Why re-invent the wheel when the Defendant

here is taking the same attitude about fees that the Defendant took in <u>Thompson</u>? Indeed, 4.6 hours is minuscule for brief preparation. Preparing such brief necessarily requires yet another review of the case file with a focus on the history of the case and the justification for requesting the fees. The undersigned also included additional case citations to support its request for attorney fees on appeal. Unfortunately, the undersigned admits that he did not memorize the cases cited in <u>Thompson</u> and was forced to review the holding in many of the cases to make certain that the law was applicable to the instant case.

To bring the full brunt of its fury, the Defendant finally attacks the undersigned and his associate by criticizing and nit-picking every minute of time spent responding to the Defendant's Objection and in preparing the surreply to the Defendant's response which was filed in circumvention of Bankruptcy Rule 9033(b). The Defendant argues that the undersigned and his associate duplicated work in responding to the Defendant's objection and in replying to the Defendant's response. The Defendant takes issue with the undersigned redrafting his newly hired associate's work product and raises the specter of duplication and redundancy.

        3)    <u>The Defendant's tactics are to blame for the Plaintiff's billable hours.</u>

The Defendant argues that the Plaintiff took too long in preparing its surreply to the Defendant's response. In objecting to the labor expended, however, the Defendant neglects to mention one single important fact. While it complains about the labor spent in replying to its response, the Defendant's Response exceeded the "the number of filings provided for under Rule 9033(b)." Mem. Op. at 3. That is, the labor for which the Defendant complains was of its own making. The history of this case reveals that the Defendant undertook to carpet bomb Judge Sawyer's Opinion with one objection and two responses. The first response exceeded the filings contemplated by Rule 9033, and "[r]ather than strike Defendant's Reply," this Honorable Court permitted the Plaintiff to file a surreply. Mem. Op. at 3-4. Now the Defendant, in its usual 'take no

prisoner' style, attempts to attack every time entry by arguing that the labor was somehow duplicative or "inefficient." Noticeably absent is the Defendant's admission that its failure to comply with Bankruptcy Rule 9033(b) caused the increased labor. Instead, the Defendant simply objects to the labor expended on the Plaintiff's surreply without mentioning that had the Defendant not filed its response, the Plaintiff would have had no cause to submit his surreply. The labor expended in preparing Plaintiff's surreply accounts for approximately 30 hours. Of this, the undersigned excised 6.8 hours. It cannot be stated as unreasonable that the Plaintiff seeks compensation for approximately 23 hours for preparing to conclusion an 11-page brief with citations.

        4)      <u>The Defendant's mischaracterizations of fact and law caused the Plaintiff to expend additional hours</u>.

The reality is that the Plaintiff put forth a good work product that addressed every illogical argument tossed out by the Defendant. In its Objection to Judge Sawyer's Report and Recommendation, the Defendant misquoted and mischaracterized Judge Sawyer's holding. The Plaintiff, in its Response to the Objection, took issue with the Defendant's mischaracterization of Judge Sawyer's holding. The Defendant could not let well enough alone, and continued with its contextually inaccurate reading of Judge Sawyer's Report.

The reality of brief writing is that such writing is both tedious and time consuming. To make matters even more difficult, the Defendant cited cases that did not apply to the facts of the instant case and mischaracterized Judge Sawyer's holding in the Report and Recommendation. The Plaintiff had to read over every inch of the Defendant's pleading to make certain that the pleading comported with the events of the underlying lawsuit. Such work is very time consuming. Even in responding to the Plaintiff's request for additional attorney fees, the Defendant misstates the amount of hours excised in billing discretion. The Defendant alleges that the "total time written off .

. . amounts to only 7.65 hours . . . ." Resp. at 8. Incredibly, the Defendant then goes so far as to say, "[i]n truth, Plaintiff's bills have not been adjusted . . . ." Truth, of course, is a concept in which the Defendant has a difficult grasp. The truth is that the Plaintiff wrote off 14.2 hours. See Def.'s Ex. 2.

When the Plaintiff filed his first response to the Defendant's Objection, the undersigned and his associate spent approximately 34 hours to completing the finished product. Of this, the Plaintiff excised 3.1 hours. The finished product consisted of 11 pages with a table of authorities. The Defendant suggests this simply took too long. The Defendant, however, proffered no evidence other than generalized accusations that the Plaintiff spent too much time. The Defendant could have offered proof about the time spent by its attorneys in filing the brief supporting its objection. This would have offered the Court an alternative to the amount of time necessary to successfully complete a supporting brief. In a case similar to the Defendant's attack on the attorney fees, the predecessor to the Eleventh Circuit Court of Appeals stated:

> "The affidavits of other lawyers, uncontradicted and accepted without objection, showed that they had personally reviewed the pleadings, briefs, and papers in the case. Each stated the opinion that the itemized services of [Plaintiff's] two lawyers, ... , were "reasonable and necessary to the successful prosecution of this case" and that the hours claimed were "reasonable and not excessive" for attorneys having similar skill, experience, and competence. The defendant did not dispute plaintiff's affidavits or make any showing that time claimed was not actually expended by [Plaintiff's] lawyers, nor did defendant present any evidence or affidavits that other lawyers would have required less time to perform the services shown."

McGowan v. King, Inc., 661 F.2d 48, 51 (5th Cir. 1981).

III.   DEFENDANT NEVER MADE A SETTLEMENT OFFER IN THIS MATTER

In a rather sarcastic footnote, the Defendant accuses the undersigned of misleading this Honorable Court regarding settlement negotiations. See Def.'s Resp. at footnote 3. Once again the Defendant presents half truths and contextually inaccurate facts. The Defendant's current

attorneys never entered their appearance at the trial phase of this litigation and apparently did not communicate with prior counsel regarding settlement discussions. Instead, Defendant's current counsel simply states that settlement discussions only occurred on a global basis. What the Defendant again neglected to mention was that the Plaintiff, on July 5, 2006, initially communicated with Defendant's first attorney in an attempt to negotiate settlement of the Cambron matter. The undersigned stated that the Plaintiff "would put forth a settlement offer if his client desired to entertain it." Instead of settling the cases on an individual basis, **the Defendant** requested the undersigned put forth a global settlement offer.

In keeping with the Defendant's request, the undersigned offered to settle all Medical Data cases on a global basis for $3,750 per case, inclusive of attorney fees. This offer also extended to Cambron. Without any counteroffer whatsoever, the undersigned telephoned the Defendant's first attorney on January 23, 2007, and advised him that the Defendant needed to settle the instant case individually before trial. The Defendant's first attorney stated that he had nothing to offer. For the Defendant to state that the Plaintiff only wanted to settle globally is to state that the Plaintiff was merely making an offer which the Defendant requested. Furthermore, the Defendant never responded to the Plaintiff's offer of January 23, 2007. Now having lost in two forums, the Defendant complains that the Plaintiff has never made a settlement offer.

## CONCLUSION

In its Response, the Defendant dedicates one (1) paragraph to support its contention that the Plaintiff's Motion for Additional Attorney Fees and Costs is not timely and that this Honorable Court "no longer has jurisdiction." See Def.'s Resp. at 1-2. As argued, supra, it is clear that current law vests jurisdiction in this Honorable Court regarding the collateral issue of attorney fees. The Defendant's argument that the Plaintiff "may not remain a prevailing party" is also unfounded and irrelevant.

The four (4) pages the Defendant dedicates to attacking the undersigned's billing of this matter is indicative of the Defendant's "scorched earth" policy throughout the entirety of this litigation. First, the Defendant proceeds to take actions that necessitate additional attorney fees, then the Defendant complains because the additional attorney fees are billed. The Defendant's argument that this Honorable Court should withhold any decision on the matter is likewise illogical and could potentially lead to numerous additional attorney fees[2], a point which the Defendant fails to address.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court to grant the Plaintiff's Motion for Additional Attorney Fees and Costs and for all other relief that is just.

Respectfully submitted this **25th** day of January, 2008.

BROCK & STOUT

David G. Poston, Esq.
Walter A. Blakeney, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon Stefanie H. Jackman, Esq., and J. Kirkman Garrett, Esq., Attorneys for Defendant, via electronic mail at stefaniejackman@paulhastings.com and jkgarrett@csattorneys.com, this day of **25th**, January, 2008.

David G. Poston

---

[2] It should be noted that the Plaintiff intends to file a subsequent Motion for Additional Attorney Fees for fees incurred since the filing of its previous motion.