## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM C. CARN, III,**<br>**CHAPTER 7 TRUSTEE,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**MEDICAL DATA SYSTEMS, INC.,**<br><br>        **Defendant.** | **CASE NO. 1:07-CV-00369-WHA** |
| **WILLIAM C. CARN, III,**<br>**CHAPTER 7 TRUSTEE,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**MEDICAL DATA SYSTEMS, INC.,**<br><br>        **Defendant.** | **CASE NO. 1:07-CV-00370-WHA** |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO RECONSIDER

Defendant Medical Data Systems, Inc. ("MDS") respectfully submits this Reply Brief in support of Defendant's Motion For Reconsideration Of This Court's Order Granting Plaintiff's Motion To Alter Or Amend Judgment To Incorporate The Bankruptcy Court's Award Of Attorney's Fees And Costs ("MDS's Motion for Reconsideration"). In further support of that Motion, MDS shows the Court the following:

I.    **MDS FILED A TIMELY OBJECTION AS TO WHETHER MDS HAS ANY
      LIABILITY UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND
      THEREFORE MDS MAY CONTEST THE BANKRUPTCY COURT'S PRIOR
      FEE AWARD IN THIS COURT**

Plaintiff's claim that MDS failed to submit a timely objection with respect to MDS's

liability for attorney's fees entirely misses the scope and effect of the objection MDS filed on

April 20, 2007.  Plaintiff correctly asserts that Rule 9033 requires a party to file any objections

within ten days of a bankruptcy court's issuance of its proposed report and recommendation.

FED. BANKR. R. 9033(b).  Further, Rule 9033 does require that the district judge make a de novo

review of any portion of the bankruptcy judge's findings of fact or conclusions of law to which

"specific written objection has been made in accordance with this rule." FED. BANKR. R.

9033(d).  Also, the Fair Debt Collection Practices Act ("FDCPA") provides that "in the case of

any *successful* action to enforce the foregoing liability, [a party is liable for] the costs of the

action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. §

1692k(a)(3) (emphasis added).

In order for MDS to be liable to Plaintiff for any amount of attorney's fees, MDS must be

found liable for violating a specific section of the FDCPA.  In its proposed report and

recommendation, the Bankruptcy Court held that MDS violated §§ e(5) and e(10) of the FDCPA.

Additionally, as Plaintiff admitted in his response brief, "there is no doubt that [MDS] objected"

to the Bankruptcy Court's proposed report and recommendation. See Plaintiff's Response to

Defendant's Motion to Reconsider ("Plaintiff's Response"), p. 10.  Plaintiff also recognized that

MDS specifically objected to the Bankruptcy Court's finding the MDS was liable under §§ e(5)

and e(10) of the FDCPA. See Plaintiff's Response, p. 10.  Further, it is undisputed that MDS's

specific objection as to whether it had any liability under the FDCPA was timely under Rule

9033.  Therefore, under the express language of 15 U.S.C. § 1692k(a)(3), had MDS prevailed on

its objection to this Court, Plaintiff would no longer have been entitled to any attorney's fees because Plaintiff's action would no longer be "successful" as required by the FDCPA in order to recover those fees.[1]  Ordinary common sense dictates that an objection contesting any and all liability under the FDCPA necessarily includes an objection as to any liability for attorney's fees under that same statute, especially since the FDCPA would not impose such fees upon MDS as a matter of law if MDS did not violate the FDCPA.

The cases relied on by Plaintiff do not provide any actual support for his argument that this Court should interpret Rule 9033 to mean that despite the fact that MDS objected as to whether it had any liability under the FDCPA, that objection somehow did not include an objection regarding whether MDS must pay Plaintiff's attorney's fees and in what amount. Instead, the cases cited by Plaintiff, such as Infrastructure Service Company, LLC v. Firestone, 328 B.R. 804 (C.D. Cal. 2005), Citibank N.A. v. Dishman, 257 B.R. 780 (Bankr. E.D. Va. 2000), and In re Arbuckle, 988 F.2d 29 (5th Cir. 1993) deal with a situation in which a party failed to file any objections whatsoever within the time restrictions imposed by Rule 9033 and other specific bankruptcy rules.  These decisions absolutely did not address the issue of whether a timely, comprehensive objection as to all liability does not include within that objection any sub-issues relating to the scope of any potential liability.  Moreover, nothing in Rule 9033 or the applicable case law requires this Court to parse and interpret MDS's objection in the manner argued by Plaintiff.  The proper interpretation of the effect and scope of MDS's objection is simple and straightforward – MDS filed a timely objection as to the extent of any liability for any violation of the FDCPA.  MDS's overarching objection as to its liability for any violation of

---

[1] The same argument will hold true in the event MDS prevails on its appeal to the Eleventh Circuit.

the FDCPA necessarily included whether MDS even was liable for attorney's fees, and this is where the analysis should end.[2] By filing a specific, written, and timely objection as to whether MDS had any liability under the FDCPA, MDS also objected to its liability for attorney's fees and preserved that issue for review by this Court under Rule 9033.

## II.    THE BANKRUPTCY COURT DID NOT HAVE JURISDICTION TO RENDER ITS ORDER AWARDING A SPECIFIC AMOUNT OF FEES TO PLAINTIFF AFTER MDS FILED ITS OBJECTION

When MDS filed its objection under Rule 9033, MDS divested the Bankruptcy Court of jurisdiction to render any subsequent orders in this matter relating to MDS's pending objection before this Court. "It is a fundamental tenet of federal civil procedure that – subject to certain, defined exceptions – the filing of a notice of appeal from the final judgment of a trial court divests the trial court of jurisdiction and confers jurisdiction upon the appellate court. In re Transtexas Gas Corp., 303 F.3d 571, 578-79 (5th Cir. 2002). This rule applies with equal force to bankruptcy cases. Id.; accord In re Serve-Em.Com, Inc., 2007 Bankr. LEXIS 3607 (Bankr. S.D. Fla. Oct. 16, 2007) (holding that in light of the fact that the movant filed various notices of appeal concurrently with motions to reconsider, the bankruptcy court did not have jurisdiction to consider any motions bearing on the same subject matter as the notices of appeal). While the court in In re Transtexas Gas Corp. recognized that concepts of finality tend to be more flexible

---

[2] Additionally, an examination of the timing established by the Bankruptcy Court's Order for submitting the Rule 9033 objections and affidavits for fees reveals that even the Bankruptcy Court did not contemplate requiring what Plaintiff argues MDS should have done in order to preserve its ability to contest this issue. It would have been impossible for MDS to include an objection to any specific amount of fees claimed by Plaintiff within Rule 9033's time restrictions since MDS only had until April 20, 2007 to file its Rule 9033 objections, which was the exact same day that Plaintiff's affidavit for a specific amount of fees was due. See the Bankruptcy Court's April 5, 2007 Report and Recommendation, attached as "Exhibit 1" and the Bankruptcy Court's corresponding April 5, 2007 Order, attached as "Exhibit 2."

in bankruptcy matters for reasons of efficiency and other pragmatic concerns, "[s]uch pragmatic concerns cannot outweigh a jurisdictional defect." In re Transtexas Gas Corp., 303 F.3d at 580 (internal citations omitted). The Fifth Circuit Court of Appeals ultimately concluded that the bankruptcy court did not have jurisdiction to enter a supplemental order after a party filed a notice of appeal from the original order that the court subsequently modified. Id. at 582.

The Bankruptcy Court's August 10, 2007 Order[3] determining the appropriate amount of attorney's fees owing to Plaintiff was improper due to a lack of jurisdiction.[4] MDS filed its objection under Rule 9033 on April 20, 2007. The Bankruptcy Court's Report and Recommendation and corresponding Order constituted "final orders" in the sense that they left nothing else for the Bankruptcy Court to determine – they included both a finding of liability under the FDCPA and assessed liability for specific statutory penalties and for general attorney's fees. See Exhibits 1 and 2. Applying the general principle that an appeal divests the lower court of jurisdiction to decide any remaining issues relating to that appeal, as of April 20, 2007, the Bankruptcy Court no longer retained jurisdiction to determine any subsequent issues relating to MDS's liability under the FDCPA.[5]

---

[3] This Order is attached as "Exhibit 3."

[4] That award also was improper as a matter of law because, as discussed in MDS's Motion for Reconsideration, the Bankruptcy Court did not apply established law or analyze required factors in rendering its decision as to the reasonableness of Plaintiff's requested attorney's fees.

[5] While objections filed under Rule 9033 are not "appeals" per se, they operate in substantially the same manner as a formal appeal and should be regarded as an appeal for jurisdictional purposes. For example, just like an appeal under 28 U.S.C. § 1291 or other applicable procedural statutes governing appeals, Rule 9033 establishes a specific procedure for seeking review of a bankruptcy court's proposed order and the failure to abide by the specific procedure provided by Rule 9033 can prove fatal to a party's ability to obtain subsequent review. See generally FED. BANKR. R. 9033; see also In re United States Abatement Corp., 39 F.3d 563, 567 (5th Cir. 1994) (implying that a "final" order under Rules 9020 and 9033 can be treated as an appeal for jurisdictional purposes but declining to find that the disputed contempt order was a
(continued...)

Further, as discussed in the previous section, if this Court had reversed the Bankruptcy Court, MDS would not be liable for any attorney's fees as a matter of law.[6] MDS does not contest that Plaintiff may recover reasonable attorney's fees if Plaintiff ultimately is successful in establishing that MDS violated the FDCPA. However, the issue of whether MDS will be found liable for violating the FDCPA and, therefore, also be liable for attorney's fees has remained unresolved since April 20, 2007 when MDS objected to the Bankruptcy Court's Report and Recommendation.[7] Since the issue of the scope of MDS's liability under the FDCPA was the express subject of MDS's Rule 9033 objection, the Bankruptcy Court did not have jurisdiction to render a subsequent order relating in any way to this issue four months after MDS filed its Rule 9033 objection. Since the Bankruptcy Court did not have jurisdiction to render its subsequent order, it is void.

**III.    IN THE ALTERNATIVE, SHOULD THIS COURT NOT AGREE THAT MDS SUBMITTED TIMELY OBJECTIONS OR THAT THE BANKRUPTCY COURT LACKED JURISDICTION, THIS COURT MAY STILL EVALUATE THE REASONABLENESS OF THE FEES AWARDED TO PLAINTIFF BY THE BANKRUPTCY COURT UNDER RULE 9033**

Despite Plaintiff's claim to the contrary, MDS did not misinterpret the scope and effect of Rule 9033's requirements under the circumstances of this case. Significantly, the Committee

---

"final" order because it did not assess any sanctions, a necessary element of holding a party in contempt under Rule 9020).

[6] While Plaintiff claims that MDS and its counsel should have checked the Bankruptcy Court's docket to ascertain the status of Plaintiff's claim for attorney's fees, in addition to the fact that MDS did not hire current counsel to handle any issues pending in the Bankruptcy Court, the fact that MDS had no knowledge of former counsel's repeated inaction in this and the 25 related matters, and due to the assumption that the Rule 9033 objections would moot the fee issue due to a lack of jurisdiction, there is a reasonable explanation for why MDS's current counsel did not check the docket of the Bankruptcy Court.

[7] This issue still remains unresolved in light of MDS's pending appeal before the Eleventh Circuit.

Notes to Rule 9033 state that this Rule is modeled on Rule 72 of the Federal Rules of Civil

Procedure, which establishes a similar system of de novo review of magistrate decisions referred

by district court judges. See FED. BANKR. R. 9033, Committee Notes. Unquestionably,

Congress intended for decisions relating to Rule 72 to provide guidance and influence on how

courts interpret and apply Rule 9033. See id.

      Recently, despite recognizing that other circuits have reached differing conclusions, the

Eleventh Circuit expressly held that it does not constitute an abuse of discretion for a district

court to consider issues that were not raised before the magistrate judge under Rule 72. Stephens

v. Tolbert, 471 F.3d 1173, 1176-77 (11th Cir. 2006).[8] Specifically, the Eleventh Circuit held that

"[e]ven if no objections to the findings or recommendations [of the magistrate] have been filed,

the district court may undertake 'further review ..., *sua sponte* or *at the request of a party*, under

a de novo or any other standard.'" Id. at 1176 (citing Thomas v. Arn, 474 U.S. 140, 154, 106 S.

Ct. 466, 474, 88 L. Ed. 2d 435 (1985)) (emphasis added); accord Collier on Bankruptcy, 15th ed.

revised, P 9033.10 (2007) (stating that despite disagreement between the circuits, under Rule

9033 "[i]f no objections to a bankruptcy judge's recommendations are filed, the district court

may, but need not, afford *de novo* review.").

      In reaching its decision, the Eleventh Circuit commented extensively on the limitations

imposed upon magistrate judges and how any rulings on dispositive motions referred from the

district court to the magistrate court can always be reviewed by the district court before

becoming final and binding. Stephens, 471 F.3d at 1176. These restrictions stem from the fact

that a district court's referral of a case to the magistrate court is appropriate under Article III of

---

[8] The Court did not address whether a district court must consider an argument that was not
presented or raised in the magistrate court. See Stephens, 471 F.3d at 1176.

LEGAL_US_E # 78049993.2

the Constitution only if the "entire process takes place under the district court's total control and jurisdiction, and the [district] judge exercises the ultimate authority to issue *an appropriate order*." Id. (emphasis added).  Therefore, the Eleventh Circuit concluded that it was not an abuse of discretion for a district court to consider and accept argument on matters not raised or argued before the magistrate court based on the broad discretion that the district court exercises over the final status of the magistrate court's report and recommendation.  Id. at 1176-77.

In the event this Court does not agree with MDS's first argument that MDS filed a timely objection regarding whether MDS was liable for any amount of attorney's fees or MDS's second argument that the Bankruptcy Court did not have jurisdiction to render the subsequent order, this Court should exercise its discretion to permit MDS to object as to the reasonableness of the fees requested by Plaintiff for the following five reasons.

First, the Bankruptcy Court expressly acknowledged in its August 10, 2007 Order that Plaintiff's fees appeared to be excessive, given the relative complexity of this case.  See Exhibit 3.  Second, as discussed in detail in MDS's motion to reconsider, the Bankruptcy Court failed to engage in any appropriate review of Plaintiff's claimed fees as required by the law in this circuit and in spite of the fact that MDS did not file further objections.  Third, the policy of allowing a district court to review a magistrate court's decision as expressed in Stephens is designed to prevent the district court from merely rubber stamping void or otherwise improper decisions rendered by a bankruptcy court.  This is the exact circumstance confronting this Court.  Plaintiff asks this Court to "rubber stamp" the Bankruptcy Court's order on the appropriate amount of fees owing to Plaintiff from MDS, despite the fact that the Bankruptcy Court's order is void on

its face.[9]  Fourth, Rule 60(b)(4) of the Federal Rules of Civil Procedure expressly authorizes this

Court to vacate the Bankruptcy Court's order because it is void.[10]  Finally, MDS is not asking

this Court to hold that MDS is not liable for any attorney's fees in the event that MDS is

unsuccessful on appeal.  Instead, MDS only requests the opportunity to ensure that the fees

awarded at each phase of this litigation are reasonable and recoverable under federal law.

Therefore, MDS submits that in light of the circumstances of this case and applicable law and

policy, it would be a proper exercise of this Court's discretion to permit MDS to contest the

reasonableness of Plaintiff's claimed fees to ensure that any final fee award to Plaintiff and

approved by this Court is appropriate under federal law.

## IV.    CONCLUSION

MDS respectfully requests that this Court grant MDS's motion for reconsideration and

vacate the Bankruptcy Court's order awarding specific attorney's fees to Plaintiff.  Additionally,

MDS requests this Court afford MDS the opportunity to submit a brief objecting to the

reasonableness of the fees requested by Plaintiff whenever this Court determines it is

appropriate, in light of MDS's pending appeal, to address this issue.

---

[9] In the interest of brevity and avoiding unnecessary duplication, MDS will not reiterate that argument in this reply brief and refers this Court to MDS's argument on this issue in MDS's Motion for Reconsideration.

[10] Additionally, Rule 60(b)(1) permits this Court to do the same upon finding excusable neglect. Again, in the interest of brevity, MDS refers this Court to MDS's Motion for Reconsideration for a more detailed argument explaining why MDS believes there is excusable neglect in this case to justify vacating the Bankruptcy Court's order under Rule 60(b)(1).

Respectfully submitted this 25th day of January, 2008.


/s/ J. Kirkman Garrett
James C. Huckaby, Jr.
J. Kirkman Garrett

*Local Counsel for Medical Data Systems, Inc.*

CHRISTIAN & SMALL LLP
505 North 20th Street
Suite 1800
Birmingham, AL 35203
Tel. (205) 795-6588
Fax (205) 328-7234

John G. Parker
(Admitted *pro hac vice*)
Georgia Bar No. 562425
Stefanie H. Jackman
(Admitted *pro hac vice*)
Georgia Bar No. 335652
*Counsel for Medical Data Systems, Inc.*

Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia 30308
(Tel.) 404-815-2400
(Fax) 404-815-2424

**Certificate of Service**

I hereby certify that on this 25th day of January, 2008, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to:

> Michael D. Brock, Esq.
> Cary Wyatt Stout, Esq.
> Walter Allen Blakeney, Esq.
> David Gerald Poston, Esq.
> BROCK & STOUT
> P.O. Drawer 311167
> Enterprise, AL 36331-1167

*J. Kirkman Garrett*
J. Kirkman Garrett

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

JAMES R. CAMBRON and
WENDY L. CAMBRON,

     Debtors.

Case No. 05-11879
Chapter 7

WILLIAM C. CARN, III,
BANKRUPTCY TRUSTEE,

     Plaintiff,

  v.

MEDICAL DATA SYSTEMS, INC.,

     Defendant.

Adv. Pro. 06-1057

WILLIAM C. CARN, III,
BANKRUPTCY TRUSTEE,

     Plaintiff,

  v.

MEDICAL DATA SYSTEMS, INC.,

     Defendant .

Adv. Pro. 06-1058

## REPORT AND RECOMMENDATION OF THE UNITED STATES BANKRUPTCY JUDGE WILLIAM R. SAWYER

These consolidated Adversary Proceedings came before the Court for trial on March 15,

2007. Plaintiff William C. Carn, III, the Trustee in bankruptcy, was present by counsel David G.

Poston and Michael Brock. Defendant Medical Data Systems, Inc., was present by its Chief

Operating Officer Gary Ball and by counsel Russell McGill. The parties have filed briefs which

the undersigned has found helpful. (Adv. Pro. No. 06-1057, Docs. 30, 32). The Court heard

evidence and the arguments of counsel and took the matter under advisement.

## I. PROPOSED FINDINGS OF FACT

On April 19, 2005, Medical Revenue Services, a unit of Defendant Medical Data

Systems, Inc., wrote James R. Cambron a letter demanding payment of medical bills totaling

$1,875.59. (Pl.'s Ex. A).[1] Two of the five individual debts allegedly owed were for services

rendered at Flowers Hospital in March of 1997, more than eight years prior to the date of the

letter. This is significant in that the statute of limitations to collect an unsecured debt in

Alabama is only six years. Thus, of the $1,875.59 allegedly owed, $1,694.23 was uncollectible

because the statute of limitations had expired.

On May 24, 2005, Medical Revenue Services wrote Wendy L. Cambron an almost

identical collection letter as that sent to James Cambron. The letter addressed to Wendy

Cambron demanded payment of a $175.00 medical bill. (Pl.'s Ex. B). The debt was for services

allegedly rendered at Flowers Hospital on August 27, 2003.

Both letters contained the same opening paragraph. The first paragraph states as follows:

> Medical Revenue Service is a collection agency, retained to represent
> the below named creditor. Since you have failed to pay this
> obligation in full, we now must determine your ability to repay this
> debt. The information we may be seeking, if available, to determine
> what further collection effort to take is:
>
> 1.) Real estate ownership/equity    4.) Your source of income
> 2.) Personal property assets        5.) Automobile ownership
> 3.) Savings, checking balances      6.) Verification of employment

---

[1] The full text of the letters are provided in an Appendix to this Memorandum.

(Pl.'s Exs. A, B).

The Plaintiff contends that this communication is misleading in that it implies that nonpayment of the bill will result in the seizure of property or garnishment of wages. As the creditor had not obtained judgment on the debts in question, and as the debts were unsecured obligations, the creditor had no immediate right to take any action with respect to the Cambrons' wages or property. Indeed, about 90% of the amount allegedly owed was more than six years old and therefore, uncollectible as a matter of law. With respect to the 10% of the debt which was not stale, the evidence showed that Medical Data had no intention to take that action. Indeed, the evidence is clear that it was the intention of Medical Data to attempt to make telephonic contact with the Cambrons and press them to pay these debts. If those efforts were unsuccessful, the debt was referred back to the original creditor, which in this case was Flowers Hospital.

Medical Data has its principal office in Sebring, Florida, and describes itself as a "secondary" debt collector. That is, it does not receive referrals of debts until collection has first been attempted by another agency. Its efforts to collect debts appear to consist of two things. First, it sends a letter and then it follows up with telephone calls. Gary Ball, Medical Data's Chief Operating Officer, testified that they would not send the letters unless it was required by the Fair Debt Collection Practices Act, as he feels that the most effective means of collecting debts is by way of the telephone.

In response to questions about collecting a debt after expiration of the statute of limitations, Ball testified that he felt that the debtors have a moral obligation to repay a debt which survives the statute of limitations. Ball does not believe that he has any obligation to

-3-

disclose the fact that the debts he is attempting to collect are beyond the statute of limitations. Nor apparently, does he believe that he must tell debtors that he may not seize their property until after he takes judgment, an action he has no intention to take.

The question of whether the first paragraph of the letters in question is deceptive is a close one. There is nothing in the letters that is demonstrably false. Ball's claim that information on the debtors' wages and property is needed to evaluate further collection efforts is not, in and of itself, wholly implausible. However, there are several troublesome facts here. Medical Data did not order credit reports or consult property records, state motor vehicle records, or other sources which would have provided the same information. In the experience of the undersigned, financially stressed individuals frequently do not voluntarily provide such information unless legally obligated to do so. Moreover, when such information is provided by an uncounseled debtor, the information is frequently incomplete or inaccurate. Ball testified that Medical Data mails approximately 1.8 million such letters each year. However, Medical Data provided no evidence as to how often debtors respond to such letters with accurate information. Given the evidence adduced at trial, it strains credibility to believe that the true purpose of the language in question is to obtain accurate information on a debtors' assets and wages. Rather, it appears that the purpose, and surely the effect of these letters, is to coerce payment by giving a false impression that the debtors' wages and assets are in jeopardy.

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Procedural Setting

This is an action under the Fair Debt Collection Practices Act.  15 U.S.C. § 1692k.  The

Plaintiff seeks damages in the amount of $1,000.00 in each Adversary Proceeding, plus

attorney's fees and costs.  15 U.S.C. § 1692k(a).

James R. Cambron and Wendy L. Cambron filed a joint petition in bankruptcy pursuant

to Chapter 7 of the Bankruptcy Code on September 8, 2005.  (Case No. 05-11879, Doc. 1).  The

claims of James and Wendy Cambron are property of their bankruptcy estates.  11 U.S.C. § 541.

As these claims are property of the estate, this Court has jurisdiction to hear these Adversary

Proceedings pursuant to 28 U.S.C. § 1334.  These claims are "related to" the Cambrons'

bankruptcy filing.  William C. Carn, III, the Chapter 7 Trustee, has been substituted as named

Plaintiff for James and Wendy Cambron.[2]

In general terms, an action is a core proceeding if it is one that could not be brought but

for the existence of a bankruptcy case.  28 U.S.C. § 157(b); see also, The Whiting-Turner

Contracting Co. V. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises,

Inc.), __ F.3d __, 2007 WL 548781 (11th Cir. Feb. 23, 2007) (holding that a proceeding is core

"if the proceeding is one that would arise only in bankruptcy").  As these Fair Debt Collection

Practices Act claims do not depend on a bankruptcy filing for their existence, these are not core

proceedings.  As these are non-core proceedings, the undersigned Bankruptcy Judge makes

_____

[2]  The Court conditionally dismissed Adversary Proceeding No.06-1057 on the grounds
that it had not been brought by the proper party in interest.  (06-1057, Docs. 9, 10).  In response,
the Chapter 7 Trustee William C. Carn, III, entered the case as Plaintiff.  (06-1057, Doc. 11).  As
the same reasoning applies to Adversary Proceeding No. 06-1058, Trustee Carn is likewise
substituted as named Plaintiff in Adversary Proceeding No. 06-1058.

proposed findings of fact and conclusions of law in accordance with the provisions of 28 U.S.C. § 157(c)(1) and directs the Clerk of the Bankruptcy Court to file the same with the District Court. By way of a separate order, a schedule for the filing of objections pursuant to Rule 9033, FED. R. BANKR. P. is established.

### B. FDCPA Claims

The Plaintiff makes claims under both 15 U.S.C. § 1692e(5) and (10). While the same set of facts support each claim, the undersigned with analyze the claims separately. Although the Court concludes that the Plaintiff has established both claims, it will discuss the e(10) claim first because, in its view, it is the stronger claim.

#### 1. The § 1692e(10) Claim[3]

Congress has determined that "there is abundant evidence of the use of abusive, deception, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, of the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress further stated that "it is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). In furtherance of this purpose, Congress enacted the "Fair Debt Collection Practices Act," which provides, in part, as follows:

---

[3] For purposes of clarity, the claims made pursuant to 11 U.S.C. § 1692e(10) will be referred to as the e(10) claims, and the claims made pursuant to 11 U.S.C. § 1692e(5) will be referred to as the e(5) claims. The e(5) claims are considered in Part II(B)(2) below.

> A debt collector may not use any false, deception, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

The issue here is whether the letters in question are deceptive. The United States Court of Appeals for the Eleventh Circuit has held that courts making this determination should use the "least sophisticated consumer" standard. <u>Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168 (11th Cir. 1985).

> That law was not "made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous," and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.

<u>Id.</u> at 1172-73 (internal citations omitted); <u>see also</u>, <u>Kimber v. Fed. Financial Corp.</u>, 668 F.Supp. 1480, 1487-89 (M.D. Ala. 1987) (Thompson, J.) (holding that bringing suit to collect a debt barred by the statute of limitations was deceptive within the meaning of the Fair Debt Collection Practices Act); <u>Thompson v. D.A.N. Joint Venture III, L.P.</u>, 2007 WL 496754 (M.D. Ala. Feb. 13, 2007) (Moorer, Mag. J.) (to same effect).

The Plaintiff argues that the language in question is deceptive because it falsely implies that the debtors' assets and wages may be in jeopardy. They argue that the purpose of this language is to unlawfully coerce payment. Gary Ball testified that the purpose of this language

was to attempt to obtain information on the debtors, reasoning that debtors who are employed and have assets are more likely to pay their debts. The undersigned finds that the language in question is deceptive and that the explanation advanced by Medical Data is unconvincing. An unsophisticated consumer would be deceived by the language in the letters.

A debtor with competent counsel would know that a debt is uncollectible if the statute of limitations has run. A counseled debtor would also know that the holder of an unsecured claim may not seize property until judgment has been taken in a court of law. Thus, the ambiguity in the first paragraph of the collection letters would cause no harm to a properly counseled debtor. However, the law is clear that the Court, in determining whether a given communication is misleading, for purposes of an e(10) claim, must apply the "least sophisticated consumer" standard. Applying that standard here, the Court finds that the communication from Medical Data is misleading. An unsophisticated consumer would conclude that his wages and property are in jeopardy and for that reason, would be coerced into paying the debt in violation of the Fair Debt Collection Practices Act.

Medical Data advanced an argument that the language in question is not deceptive. Ball testified that the information as to wages and property is useful to Medical Data in its determination as to what further action to take. If a debtor has a job and property, he is more likely to pay the debt and for that reason should be further pressed to pay. This reasoning is circular. A debtor without income and without property would not feel coerced to pay as he has nothing to lose. Indeed, it is only those debtors with jobs and property who Medical Data would seek to mislead.

-8-

The Plaintiff argues that Medical Data's claim–that they need the information for their collection purposes–is without merit. Ball admitted that they had not consulted credit reports or property records, nor had they consulted any other records which might have provided the information requested in the first paragraph of the letter in question. That Medical Data had not taken any such action suggests that their claim is a pretext and that their true purpose was to unlawfully coerce payment.

### 2. The § 1692e(5) Claim

Plaintiff also alleges a violation of 15 U.S.C. § 1692e(5), which prohibits a debt collector from threatening to take action which cannot legally be taken. As the letters in question do not, strictly speaking, threaten anything, there is no express violation of this provision. However, the overarching problem here is one of deception and not of express threats to take action. For this reason, the undersigned is of the view that the claims are better considered under e(10) than under e(5). It should also be noted that the Eleventh Circuit does not apply the "least sophisticated consumer" standard to e(10) claims and for this reason, the Plaintiff's burden is somewhat heavier for an e(5) claim than is the case for an e(10) claim.

While the undersigned is of the view that the Plaintiff's claims here are best cast in terms of e(10), the question remains whether the Plaintiff has also made out a claim under e(5). There is case law for the proposition that deceptive language in a collection letter which suggests that such action will be taken may constitute such a violation. Mailloux v. Arrow Financial Services, LLC, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001) (certifying class status where a collection letter deceptively implied that collection action which could not lawfully be taken would be taken and finding a violation of § 1692e(5)). The facts in Mailloux are similar to the facts here in that the

-9-

letter inquired into the debtor's income, checking account balances, employment, real estate ownership, and automobile ownership. The court in Mailloux found that letter, which was very similar to the letters here, to be in violation of e(5). Therefore, the undersigned concludes, in the alternative, that the evidence establishes a violation of § 1692e(5), as well as a violation of e(10).

### C. Damages

Having found violations of the Fair Debt Collection Practices Act, the Court should next consider an award of damages. As the Plaintiff does not request actual damages, none are awarded. See 15 U.S.C. § 1692k(a)(1) (allowing an award of actual damages). In addition, the Court may award "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). Having heard the evidence and having considered the arguments of counsel, the Court is of the view that an award of damages in the amount of $1,000.00 for each claim is appropriate, for a total of $2,000.00. In other words, the claim originally held by James Cambron and the claim originally held by Wendy Cambron are allowed separately. It further appears that an award of attorney's fees is appropriate. See 15 U.S.C. § 1692k(a)(3).

### III. CONCLUSION

Having considered the evidence, the undersigned finds that the language in question in the letters, applying the least sophisticated consumer standard, is deceptive within the meaning of § 1692e(10). The effect of the subject language is to create apprehension that the debtors' assets and wages are in jeopardy and thereby unlawfully coerce payment of a debt. It is recommended that judgment be entered in favor of the Plaintiff in the amount of $1,000.00 each for each of two claims, for a total of $2,000.00 In addition, it is further recommended that

-10-

Plaintiff be awarded attorney's fees.  The undersigned will order Plaintiff's counsel to file an

Affidavit in support of their claim for attorney's fees within 15 days.  Defendant will be given 15

days to respond.


       Done this the 5th day of April, 2007.


                          /s/ William R. Sawyer
                          United States Bankruptcy Judge

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

| | |
|---|---|
| **Reference** | **Total Amount Due** |
| F9708100109 | $1874.59 |
| **Toll Free Number** | |
| (800) 315-6050 | |

**RETURN SERVICE REQUESTED**
04/19/2005

| CHECK CARD USING FOR PAYMENT | | |
|---|---|---|
| MasterCard ☐   VISA ☐   ☐ | | |
| CARD NUMBER | | |
| AMOUNT | | EXP. DATE |
| SIGNATURE | | |

med9axA12DP0A107KE·014004

JAMES R CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

**MAKE CHECK PAYABLE AND REMIT TO:**

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149



☐ CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Page 1 of 1
▼ DETACH HERE ▼ AND RETURN TOP PORTION WITH YOUR PAYMENT

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances

4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F9708500163 | Flowers Hospital | 03/26/1997 | 307.68 | Lehr, Timmy J |
| F9708100109 | Flowers Hospital | 03/22/1997 | 1386.55 | Lehr, Timmy J |
| F0307000545 | Flowers Hospital | 03/13/2003 | 58.77 | Cambron, James R |
| F0402500112 | Flowers Hospital | 01/25/2004 | 55.74 | Cambron, James R |
| F0402400129 | Flowers Hospital | 01/24/2004 | 65.85 | Cambron, James R |

**TOTAL BALANCE: $1874.59**

PLAINTIFF'S
EXHIBIT
14

PL1

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

| Reference | Total Amount Due |
|---|---|
| F0323900637 | $175.00 |

**Toll Free Number**
(800) 315-6050

CHECK CARD USING FOR PAYMENT

☐     ☐     ☐

CARD NUMBER

AMOUNT                    EXP. DATE

SIGNATURE

**RETURN SERVICE REQUESTED**
05/24/2005

medPaxA130XCA10DJV.00773b
WENDY L CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

MAKE CHECK PAYABLE AND REMIT TO:

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149



CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Page 1 of 1

DETACH HERE ▼ AND RETURN TOP PORTION WITH YOUR PAYMENT

---

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances
4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F0323900637 | Flowers Hospital | 08/27/2003 | 175.00 | Cambron, Wendy L |

TOTAL BALANCE: $175.00



PLAINTIFF'S EXHIBIT
B

PL1

# EXHIBIT 2

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

JAMES R. CAMBRON and
WENDY L. CAMBRON,

       Debtors.

Case No. 05-11879
Chapter 7

WILLIAM C. CARN, III,
BANKRUPTCY TRUSTEE,

       Plaintiff,

   v.

MEDICAL DATA SYSTEMS, INC.,

       Defendant.

Adv. Pro. 06-1057

WILLIAM C. CARN, III,
BANKRUPTCY TRUSTEE,

       Plaintiff,

   v.

MEDICAL DATA SYSTEMS, INC.,

       Defendant .

Adv. Pro. 06-1058

### ORDER

    It is ORDERED that the parties are DIRECTED to file any objections to the Report and

Recommendation on or before the close of business on April 20, 2007.  Any objections filed

must be specific.  Frivolous, conclusive or general objections will not be considered by the

District Court.  The parties are advised that the Report and Recommendation is not a final order

of the Court and, therefore, it is not appealable.

Failure to file written objections to the proposed finding and recommendations in the

Report and Recommendation shall bar the party from a *de novo* determination by the District

Court of issues covered in the report and shall bar the party from attacking on appeal factual

findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.

It is further ORDERED that counsel for the Plaintiffs shall file an Affidavit in support of

their claims for attorneys' fees and costs on or before the close of business on April 20, 2007.

The Defendant shall file any objections to the Plaintiff's request for attorney's fees and costs on

or before the close of business on May 4, 2007.


Done this the 5th day of April, 2007.


/s/ William R. Sawyer
United States Bankruptcy Judge

2

# EXHIBIT 3

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 05-11879
                                                         Chapter 7
JAMES R. CAMBRON and
WENDY L. CAMBRON,

        Debtors.


WILLIAM C. CARN, III,                                    Adv. Pro. No. 06-1057
BANKRUPTCY TRUSTEE,

        Plaintiff,

    v.

MEDICAL DATA SYSTEMS, INC.,

        Defendant.


WILLIAM C. CARN, III,                                    Adv. Pro. No. 06-1058
BANKRUPTCY TRUSTEE,

        Plaintiff,

    v.

MEDICAL DATA SYSTEMS, INC.,

        Defendant .


## ORDER

        These consolidated adversary proceedings are before the Court upon the Plaintiff's

request for attorney's fee. Pursuant to this Court's order of April 5, 2007, counsel for the

Plaintiff was to file their Affidavit in support of their claim for attorney's fees by April 20, 2007,

and the Defendant was to respond by May 4, 2007. (Doc. 34). The Plaintiff's counsel filed

timely applications seeking a total of $29,536.78. (Docs. 35, 36, 37, 40). The Defendant did not

file a response.

Notwithstanding the lack of an objection from the Defendant, the Court has reviewed the bill submitted by counsel for the Plaintiff. The Court notes that the amount requested, relative to the complexity of the matter litigated appears, at first glance, to be high. However, review of these proceedings provides context. For example, in their Answer, the Defendant "denied each and every material allegation of the Complaint and demands strict proof thereof." (Doc. 17). It is hard to believe that the Defendant was honestly of the belief that absolutely nothing in the complaint was true. Having engaged in "scorched earth" litigation, the Defendant will not be heard to complain that the Plaintiff's attorney's fees are excessive. Indeed, they have made no such claim here. The Court finds that the amount requested was reasonable in the context of these proceedings and allows the fees as filed. It is

ORDERED, that the Plaintiff is awarded attorney's fees in the amount of $29,536.78, in addition to damages previously awarded.

Done this the 10th day of August, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge